UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

Case No.: 1:05-CV-11486

LAWRENCE SHUTZER,
PLAINTIFF

V.

S. ROTHSCHILD & CO., INC. ET AL

---

**PLAINTIFF'S MEMORANDUM OF LAW AND FACTS
IN OPPOSITION TO DEFENDANTS' MOTION
TO DISMISS AND/OR TRANSFER VENUE**

---

LAWRENCE M. SLATER, ESQ.
270 UNION ST., STE. 202
Lynn, MA 01901
781-592-0216
ATTORNEY FOR PLAINTIFF

Neng v. Board of Trustees of Boston Univ.
    (1998) 693 NE 2d 183 44 Mass. App Ct. 650......................................5

**FEDERAL STATUTES**

28 U.S.C. § 1404 (a)............................................................................7,8

**MASSACHUSETTS STATUTES**

G.L. c. 259 § 1.5.................................................................................4

G.L. c. 260 § 2....................................................................................6

**FEDERAL RULES**

Fed. R. Civ. Proc. 12(b)(6)....................................................................4

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

Case No.: 1:05-CV-11486 MLW

LAWRENCE SHUTZER,
   PLAINTIFF

V.

S. ROTHSCHILD & CO., INC. ET AL

**PLAINTIFF'S MEMORANDUM OF LAW AND FACTS
IN OPPOSITION TO DEFENDANTS' MOTION
TO DISMISS AND/OR TRANSFER VENUE**

SUMMARY OF FACTS[1]

In 1999 the Plaintiff, Lawrence Shutzer ("Shutzer"), met Mark Friedman ("Friedman"), President of S. Rothschild & Co., Inc. ("SRC"). Shutzer had fifty years of experience in the design, manufacture, and sales of mens outerwear. Shutzer at the time was working for a family owned business, Mimco, Inc. ("Mimco") which owned the registered trademarks "William Barry™." and "Boston Outfitters™"." Mimco was experiencing cash flow problems which prevented it from filling orders it had previously received, as well as potential new business. SRC was primarily in the business of selling boys, girls and women's outerwear. It maintained a small men's clothing division under the name "Galleon." SRC hoped to expand its men's clothing business. Friedman

---

[1]   The facts are all contained in the affidavit of Lawrence Shutzer contemporaneously filed herewith which, in turn, incorporates paragraphs 9-22 of the Complaint.

advised Shutzer of his interest in combining somehow with Mimco to the mutual benefit of both parties.

Extensive negotiations ensued between Shutzer and Friedman, both face-to-face and on the telephone and between Shutzer's Boston attorney and SRC's New York attorney. Several face-to-face meetings occurred in New York City. One meeting was attended by the parties and their respective counsel, and there were several ancillary discussions solely between Shutzer and Friedman. The bulk of the negotiations took place in conference calls wherein Shutzer (and his attorney) were in Massachusetts and Friedman (and his attorney) were in New York. In addition, telephone negotiations took place between Shutzer's attorney in Massachusetts and Friedman's attorney in New York. Calls and correspondence relative to the deal issued both from New York and Massachusetts.

As a result of the discussions, two draft agreements were produced: a draft Asset Purchase Agreement, and a draft Employment Agreement. Pending the discussions, the parties went ahead with implanting the transaction, notwithstanding that the agreements were never signed.

The parties agreed to the following:

(a) That SRC or a new entity to be formed would purchase Mimco's assets, including all patterns, samples, customer lists, and Mimco's advantageous lease on its New York showroom. This was, in fact, accomplished despite the fact that the Asset Purchase Agreement remained unsigned. Defendants have not, however, paid for all of the assets received.

(b) That all of Mimco's employees would become employees of a new entity to be formed and owned by SRC. This was likewise done. Shutzer and the other Mimco employees (including employees in Mimco's New York City showrom) became RMC employees.

(c) That Shutzer would oversee and manage the new entity from Mimco's Marblehead, MA office which would become the sales and executive office of the new entity, responsible for sales, quality control, pricing, design, sourcing, and handling customer complaints and questions. This was likewise done.

(d) That SRC would be responsible for the financing of orders (letters of credit, etc) and would handle invoicing and collections, and distribution of the finished goods to customers. This was likewise done.

(e) Shutzer was to receive, in addition to a salary and expenses, a bonus consisting of a percentage of the pre-tax profits from the sales generated by the new company. RMC paid only a small percentage of the bonus and has refused to pay the remainder. Shutzer, in fact, generated approximately $19 million in sales and was paid only a portion of what was due him. Again, there was performance by Shutzer even though a contract was not signed.

The parties, therefore, in fact, put their oral agreements into place; i.e. a new entity was formed; Mimco's New York showroom was transferred to the new entity at a very advantageous rent; all Mimco employees became RMC employees; Shutzer was successful in closing sales for RMC in the amount of approximately $19 million; and Defendants arranged for the financing of orders. Accordingly, the parties undertook the transaction despite having never signed the written contracts.

3

## ARGUMENTS

A.  STANDARD ON A MOTION TO DISMISS

Fed. R. Civ. Proc. 12(b)(6) states that a Complaint may be dismissed where the plaintiff fail(s) to state a claim upon which relief can be granted. Dismissal under Rule 12 (b)(6) is predicated upon a finding that the plaintiff can prove no set of facts in support of his claim which would entitle the plaintiff to relief. See, e.g. Conley v. Gibson, 355 US 41 (1957); 2A Moore, Federal Practice 2245.

The "court must take the allegations in the plaintiffs' pleadings as true and must make all reasonable inferences in favor of the plaintiffs." See, Rivera. v. Rhode Island, 402 F3d 27, 33 (1st Cir. 2005).

Shutzer argues that a fair reading of the Complaint, especially as supplemented and expanded by his Affidavit filed contemporaneously herewith, clearly gives rise to the conclusion that the Defendant's Motions to dismiss Shutzer's Complaint and related claims should be largely denied.

B.  THE STATUTE OF FRAUDS CLAIM

Defendants argue that the contract claim should be dismissed because the employment contract which was not signed, admittedly provided for a three year term, and that an oral agreement not to be performed within one year is unenforceable under G.L.c. 259, §1.5. However, nowhere in Defendant's Memorandum is there any mention of the factors, such as partial performance or estoppel, which first operate to take an oral contract out of the Statute of Frauds and make it enforceable against the Defendants. This is "Black Letter Law" and part of any first year contracts course. This is especially true where the partial performance has resulted in a benefit to the plaintiff. See, M.J. Piroli & Sons, Inc. v.

4

Mass. Equipment & Supply Corp. (1980) 401 NE 2nd 146, 9 Mass. App. Ct. 863. The Statute of Frauds is not a bar where denial of relief to one who has been misled to his harm would cause an unjust or unconscionable injury or fraud. Levin v. Rose (1939) 19 NE 2nd 297, 301 Mass 378.

This has been the law in Massachusetts (and elsewhere) almost since cases have been reported by U.S. Courts. Partial performance relieves the need for a written contract and takes the parties agreement out of the Statute of Frauds. Eastern Railroad Co. v. Benedict (1857) 76 Mass 212; Hurley v. Donovan (1902) 64 NE 685, 185 Mass. 64.

Where a person performs labor for another in partial execution of an oral contract, the defendant is nevertheless liable under the contract. Neng v. Trustees of Boston University (1998) 693 NE 2nd. 183, 44 Mass. App. Ct. 650, rev. denied 700 NE 2nd 296, 427 Mass. 1109. In reliance upon Friedman's representations, Shutzer undertook a course of conduct in which he certainly expended much time, cost and resources. A person who rendered a valuable service under an oral contract can recover the value of his service. Heel v. McCann (1971) 275 NE 2d 889, 360 Mass. 507.

In Palandjian v. Pahlavi (DC Mass. 1985) 614 F. Supp. 1569, appeal denied 782 F 2d 313, this Court found that the Statue of Frauds did not bar a claim for breach of contract that admittedly could not be performed in one year, where the factors necessary to show estoppel were present. In Palandjian the plaintiff asserted that the defendant made specific representations regarding a project which induced the plaintiff to invest significant time, money and other resources. Shutzer's avers that the instant case alleges the same course of conduct as in Palandjian; i.e. that Friedman made representations that Shutzer would be fully compensated for his work and that the assets being transferred

5

would be paid for by RMC or SRC and that Shutzer would receive his benefits. In reliance upon Friedman's representations, Shutzer undertook a course of action in which he certainly expended much time, expense and resources.

Shutzer therefore, argues that the oral contract is, in fact, enforceable and that the Defendants Motions to Dismiss Counts I (Breach of Contract), II (Breach of Implied Covenant of Good Faith), III (Estoppel) and VI (Quasi Contract/ Unjust Enrichment) should be denied.

C.   THE STATUE OF LIMITATIONS ARGUMENT

Shutzer concedes that the three year statue of limitations has, run with respect to Count IV. (Fraud) as well as the Statute of Limitations with respect to G.L.c. 93A. (Count V).

With respect to actions based on contract, G.L.c 260 §2 provides for a statue of limitations of six years. If the oral agreement between the Shutzer and the Defendants, as above argued, is not barred by the Statue of Frauds, Shutzer has six years from the time he alleged the contract was breached (approximately December, 2000) to file this action. The Complaint was filed in July 22, 2005, well within the statute of limitations. Shutzer further argues that if the contract action lives, then those Counts in the Complaint arising out of the contract action, (estoppel, quasi contract, and accounting) also are within the Statue of Limitations. An equitable claim for an accounting must be brought within the same limitation period of the contract upon which the accounting is sought. Newburgh v. Florsheim Shoe Company, et al (DC Mass. 1961) 200 F. Supp. 599.

6

D.  THE CLAIMS AGAINST FRIEDMAN

As stated in the Complaint, Friedman was acting as the principal of the corporate Defendants. However, at the time oral contract was made RMC had not been formed. Friedman was, in effect, speaking on behalf of an entity to be formed at a later date. The entity was, in fact, formed, and Shutzer became an employee of RMC. However, if the oral contract is enforceable, at the time it was made it was between Shutzer and Friedman. The misrespresentations upon which Shutzer relied were made by Friedman.

Shutzer assets that it should be left to discovery to determine whether Friedman was, in fact, acting within the scope of his authority. Is he now arguing that it was within the scope of his authority to violate his fiduciary duty to the corporations and make knowing misrepresentations? If the corporation is not responsible for acts committed outside the scope of Friedman's authority, than he should have personal responsibility.

E.  THE FORUM NON-CONVIENS ARGUMENT

"For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it may have been brought. 28 U.S.C. § 1404(a)

The Court must consider the "convenience of parties and witnesses" and the "interests of justice." Coady v. Ashrcroft & Gerel 223 F. 3rd 1 (1st Cir. 2000).

There is a presumption in favor of the Plaintiff's choice of forum. Princess House, Inc. v. Lindsey, 136 F.R.D. 16 (D. Mass 1991)

The locus of this case admitted could be in either New York or Boston. However, Shutzer who is in Massachusetts chose this forum, and this forum Plaintiff argues has the greater nexus to the dispute.

7

It is patently not true, as Defendants patly argue, that the only locus is New York. The fact is that the Defendants actually established an office in Marblehead, Massachusetts as part of this enterprise. (Three employees worked directly out of the Marblehead office and one (a salesman on the road) reported to the Marblehead office.) The sales, design, quality control, sourcing, customer communications and executive decisions relative to the business were all handled in Marblehead. The negotiations between the parties were primarily handled by conference call with the Defendants in New York and the Plaintiff in Massachusetts. Moreover, the Defendants had other facilities (the Fall River Warehouse) in Massachusetts to which finished goods were shipped prior to distribution to customers to fill orders obtained by Shutzer.

Accordingly, there are as many witnesses in Massachusetts as there are in New York. The sales records are both in Massachusetts and New York. The people who worked in the New York showroom reported to Shutzer, and were mere functionaries and not key witnesses.

In truth, the key witnesses to the contract, the various discussions and what happened are, in fact, Shutzer, Friedman and their respective counsel, two in Boston and two in New York City.

Defendants in their Memorandum raise the issue of the cost of litigating this case. This issue may be seen to fall under the "interests of justice" clause of Section 1404. Shutzer is an individual who conscientiously toiled for the Defendants, only to be intentionally deprived of what was promised him. The Defendants are large, wealthy corporations. (As stated in the Complaint, it was for lack of funds to fill orders that Shutzer combined with the Defendants in the first place.) What the Defendants now seek

in transferring the case to New York City is obvious; to force Shutzer to expend far more money than he can afford to litigate the case in New York and thereby win the case by exerting economic pressure. The Defendants, on the other hand, have the resources and were and are already here in Massachusetts. S. Rothschild & Co. Inc is currently registered to do business in Massachusetts as a foreign corporation. See Attachment "A" hereto.

Accordingly, the Defendants' Motion to Transfer should be denied.

F.  CONCLUSION

For all of the foregoing reasons the Defendants Motion to Dismiss should be mainly denied, and the Defendants Motion to Transfer should be denied.

Respectfully submitted,

Lawrence Shutzer,
By his attorney,

*/s/ Lawrence M. Slater*
Lawrence M. Slater, Esq.
BBO No. 466320
270 Union Street   Suite 202
Lynn, Ma 01901
781-592-0216
FAX 781-592-0217
E-Mail lawrenceslater@verizon.net

CERTIFICATE OF SERVICE

THE UNDERSIGNED HEREBY CERTIFIES THAT THE FOREGOING PLEADING HAS BEEN SERVED ON ALL COUNSEL OF RECORD BY FAX / FIRST CLASS MAIL / HAND DELIVERY THIS 27 DAY OF December, 2005.

*/s/ Lawrence M. Slater*
LAWRENCE M. SLATER, ESQ.
BBO 466320

9



# The Commonwealth of Massachusetts
## William Francis Galvin

Secretary of the Commonwealth
One Ashburton Place, Boston, Massachusetts
02108-1512
Telephone: (617) 727-9640

**S. ROTHSCHILD & CO., INC.** Summary Screen

Help with this form

Request a Certificate

The exact name of the Foreign Corporation: S. ROTHSCHILD & CO., INC.

Entity Type: Foreign Corporation

Identification Number: 231539342

Date of Registration in Massachusetts: 05/05/1981     Date of Registration: 07/12/2000

Date of Involuntary Revocation: 08/31/1998

The is organized under the laws of:   State: PA    Country: USA   on: 11/20/1958

Current Fiscal Month / Day: 11 / 30     Previous Fiscal Month / Day: 00 / 00

The location of its principal office:
No. and Street:     500 7TH AVE.
City or Town:       NEW YORK          State: NY     Zip: 10018     Country: USA

The location of its Massachusetts office, if any:
No. and Street:
City or Town:                          State:        Zip:           Country:

The name and address of the Registered Agent:
Name:             CORPORATION SERVICE COMPANY
No. and Street:   84 STATE STREET
City or Town:     BOSTON             State: MA   Zip: 02109  Country: USA

The officers and all of the directors of the corporation:

| Title | Individual Name<br>First, Middle, Last, Suffix | Address (no PO Box)<br>Address, City or Town, State, Zip Code | Expiration<br>of Term |
|---|---|---|---|
| PRESIDENT | MARK FRIEDMAN | 500 7TH AVE., NEW YORK, N.Y 10018 | |

ATTACHMENT "A"

| | | | |
|---|---|---|---|
| | | 500 7TH AVE.,NEW YORK, N.Y 10018 | |
| TREASURER | STEPHEN KALNICK | 500 7TH AVE.,NEW YORK, N.Y 10018 500 7TH AVE.,NEW YORK, N.Y 10018 | |

| business entity stock is publicly traded: __ |
|---|

The total number of shares and par value, if any, of each class of stock which the business entity is authorized to issue:

| Class of Stock | Par Value Per Share Enter 0 if no Par | Total Authorized by Articles of Organization or Amendments *Num of Shares   Total Par Value* | Total Issued and Outstanding *Num of Shares* |
|---|---|---|---|
| No Stock Information available online. Prior to August 27, 2001, records can be obtained on microfilm. | | | |

| __ Consent | X Manufacturer | __ Confidential Data | __ Does Not Require Annual Report |
|---|---|---|---|
| __ Partnership | X Resident Agent | X For Profit | __ Merger Allowed |

Note: There is additional information located in the cardfile that is not available on the system.

Select a type of filing from below to view this business entity filings:

ALL FILINGS
Amended Foreign Corporations Certificate
Annual Report
Annual Report - Professional
Application for Reinstatement

[View Filings]   [New Search]

| Comments |
|---|
| |

© 2001 - 2005 Commonwealth of Massachusetts
All Rights Reserved

Help