UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| LAWRENCE SHUTZER, | ) | C.A. NO. |
|     PLAINTIFF | ) | 05-11486-MLW |
| | ) | |
| | ) | |
| V. | ) | |
| | ) | |
| S. ROTHSCHILD & CO, INC. S. | ) | |
| ROTHSCHILD MEN'S, INC. AND | ) | |
| MARK FRIEDMAN | ) | |
|     DEFENDANTS | ) | |

## SUPPLEMENTAL AFFIDAVIT OF LAWRENCE SHUTZER

Lawrence Shutzer deposes and says as follows:

1. I am the plaintiff in the above–entitled action. I continue to reside in Swampscott, MA. The facts stated in this Affidavit are of my own personal knowledge.

2. This Affidavit is given pursuant to this Court's order, dated June 28, 2006, wherein the Court ordered the parties to address the issue of the convenience of potential witnesses at trial, as set forth in <u>Brant Point Corporation</u> v. <u>Poetzsch,</u> 671 F. Supp. 2 (D. Mass 1987).

3. As per my previous Affidavit, I believe that the critical and substantive witnesses to this case are myself and my attorney, Paul Levenson, Esq. and Mark Friedman and his attorney, Daniel Swick, Esq. There are other non-party witnesses who may testify as to the activities of the combined business, the financing thereof, the day-to-day mechanics of sales, warehousing, shipments, billing and record keeping. However, in my opinion their testimony is tangential, if not irrelevant, to the issues raised in the Complaint. The qualitative testimony concerning those issues will be given by the parties

and their attorneys who actually participated in the discussions about their contractual relationship, the failure to consummate written contracts and the collapse of the relationship, including what was said and by whom and what was done in reliance of assurances. I will also attempt to identify all potential witnesses.

4. From the Plaintiff's standpoint I am the most critical witness. I will testify as to the negotiations and discussions between myself and Mr. Friedman, the four-way meeting in New York City with our attorneys and the several four-way lengthy conference calls. As the executive in charge of RMC, ("Rothschild Men's Clothing" also referred to in the Court papers as "RMI"), there is nobody who better understands how RMC functioned and what it accomplished. I will testify to all of the allegations set forth in the Complaint and in my prior Affidavit.

5. I am eighty years old. My financial resources are limited. Indeed, it was for that very reason, as set forth in the Complaint, that I entered into negotiations with the Defendants to merge our businesses in the first place. As argued in my earlier submissions to the Court, I believe that the underlying purpose of the Defendants' Motion to Transfer is to make this litigation prohibitively expensive for me to maintain. Further, I operate a business in which I am sole decision maker. It would be a major inconvenience to me and to my business to have to spend at least a week in New York City away from my office.

6. My counsel in the transaction with the Defendants was Paul Levenson, Esq. He resides in Swampscott, Massachusetts and maintains a solo law office in Salem, Massachusetts. I believe that Mr. Levenson is in his mid seventies. He will testify as to what was said between the parties in negotiations concerning the transaction, both in the

meeting he attended in New York City with me and Mark Friedman and Daniel Swick and the negotiations by conference calls which consisted of "four-way" discussions and discussions solely between Mr. Levenson and Daniel Swick. I cannot compel Mr. Levenson to come to New York. Even if he voluntarily consented to come, I would obviously have to pay him for his time and pay his expenses. This expense would create a real financial hardship on me.

7. Contrasted to the solo shops run by Mr. Levenson and myself, both Mr. Friedman and Mr. Swick work for entities in which they have other people to cover for them, should this trial take place in Boston. Also Mr. Friedman can afford far better than I to pay his attorney for his time and expenses in attending a trial.

8. As stated in my prior Affidavit, four employees (other than myself) reported to and/or worked out of the Marblehead office.

9. My son, David Shutzer, was an employee for RMC whose duties consisted primarily of sourcing manufacturers. He can testify to sales, shipping sourcing and the like. He resides in Swampscott, MA. David is currently unemployed due to his having to undergo regular medical treatment. Traveling to New York City would constitute an inconvenience if not a hardship. I cannot legally compel him to attend a trial in New York City; however, as he is my son, he would in all likelihood attend. I would, however, have to pay for all his expenses.

10. Tom Lewis and Fred Conte were both salesmen who reported to me in Marblehead. If insisted upon by either party to give testimony, they can testify as to the sales processes, customer orders, shipping arrangements, etc;, however, they had no part in the negotiations with the Defendants or any first hand knowledge of the business deal

3

and why it fell apart. Their testimony is, in effect, duplicative of my own testimony. Both Tom and Fred reside in Pennsylvania. They both continue to work in the garment industry and travel to New York City in the course of their business.

11. Linda Dorney was RMC's Administrative Assistant in Marblehead, as well as and my personal assistant. She handled all aspects of the paperwork which went through RMC's headquarters in Marblehead. She can testify as to said paperwork including, billing records, design records, quality control records, sales records, sourcing of orders and customer and intra-company communications. She was the keeper of such records. She continues to work for me in Marblehead, MA. If she were to have to travel to New York City with me, my office would have to completely shut down, in addition to my having to pay her salary and expenses.

12. On the Defendants' side, I can foresee witnesses consisting of Mark Friedman, his attorney, Daniel Swick, possibly Mr. Friedman's father who was present in some of the discussions between Mark Friedman and myself and the corporate Defendants' chief financial officer who oversaw RMC's billing and oversaw the payment of bills and other corporate expenses for RMC. The elder Mr. Friedman's testimony will presumably be duplicative of his son's testimony. The CFO's testimony is much like the testimony of the aforementioned sales staff and Linda Dorney; i.e. consisting of information relative to the day-to-day business activities of RMC. The CFO was never part of the negotiation process or transactional discussions between Mr. Friedman and myself.

13. As above stated, I believe that other than Mr. Friedman and his attorney, Mr. Swick, and my attorney Mr. Levinson, and myself, all of the other witnesses are

either peripheral or can only offer cumulative, collaborative or general background testimony. The substantive discussions relative to the unsigned contracts and the negotiations and actions which led to the collapse of the deal all took place in conversations between Mr. Friedman and me and/or our respective counsel. As between the two sides in this case, I submit that it is for more inconvenient for me and my counsel to attend a trial in New York City then for Mr. Friedman and his counsel to come to Boston, particularly as: (i)the Defendants are currently doing business in Massachusetts; (ii) Mr. Swick's firm has entered an apprearance in this case; (iii) Mr. Friedman has the deeper pockets; (iv) neither Mr. Friedman's business nor Mr. Swick's law practice will come to a standstill; and (v) travel between New York and Boston is convenient, and for the Defendants, far more affordable.

Subscribed under the penalties of perjury this 27th day of July, 2006.

s/ Lawrence Shutzer
Lawrence Shutzer