UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| LAWRENCE SHUTZER, | ) | C.A. NO. |
| PLAINTIFF | ) | 05-11486-MLW |
| | ) | |
| | ) | |
| V. | ) | |
| | ) | |
| S. ROTHSCHILD & CO, INC., S. | ) | |
| ROTHSCHILD MEN'S, INC. AND | ) | |
| MARK FRIEDMAN | ) | |
| DEFENDANTS | ) | |

**SECOND SUPPLEMENTAL AFFIDAVIT OF LAWRENCE SHUTZER**

Lawrence Shutzer deposes and says as follows:

1. I give this Second Supplemental Affidavit as my response to the Supplemental Affidavit of Mark Friedman, filed with this Court on July 28, 2006 and in furtherance of my opposition to the Defendants' Motion to Dismiss and/or Transfer.

2. The facts stated in this Affidavit are of my own personal knowledge.

3. First, I will address several specific points raised by Mr. Friedman in his Supplemental Affidavit regarding his potential witnesses:

(a) In paragraph 3(b) he names Stanley Sachs as a potential witness. It is true that Mr. Sachs introduced me to Mr. Friedman. However that introduction was the extent of his involvement in the transaction. He was not present at any meetings; took no part in the negotiations; and as far as I am aware, had no involvement whatsoever in the combined menswear business of which I was chief executive. Mr. Friedman's reference to the "financial implications of any potential business arrangement" constitutes a wholly meaningless statement with respect to this lawsuit. The time period at issue is well

beyond the "potential business arrangement" phase. My position, as set forth in my Complaint, is that Mr. Friedman and I had a "done" deal. We had our respective attorneys painstakingly negotiate and prepare written documents to memorialize the deal. In reliance on our agreements, I undertook certain actions encumbent upon me pursuant to those agreements. Mr. Friedman for reasons of which am still totally unaware refused to sign the documents (although he repeatedly promised that he would do so). As a result of this breach and the mistrust which flowed from it, the deal came to an abrupt end, and I am, therefore, suing the Defendants for their beach and their wrongful actions. Accordingly, Mr. Friedman's reference to a "potential arrangement" is a total irrelevancy obviously inserted for the sole purpose of lengthening Mr. Friedman's list of potential witnesses. He knows and I know that Mr. Sachs will never be called as a witness in this case.

(b) In paragraph 3(b) Mr. Friedman lists Stephen Rankel, CPA as another potential witness. I never met or spoke with Mr. Rankel. He took no part in any discussion and/or negotiation regarding this transaction. With respect to Mr. Rankel's testimony regarding the "potential business opportunities with Mimco" I make the same comments as set forth above with respect to Mr. Sachs. As to Mr. Friedman's veiled allusion to possible testimony related to financial performance, I can categorically state that at no time was there ever a complaint or even an intimation to me from Mr. Friedman or anyone else at the Defendants' businesses that I was not performing to the level as anticipated in our negotiations. I am unaware of any study by and/or discussion with Mr. Rankel relative to RMC's performance. I believe, I would know, as I was its chief executive. As to purported documents which Mr. Rankel may locate, they can be

2

obtained by way of a simple subpoena duces tecum, and in any event, exist either in Marblehead, MA or are in the possession of Mr. Friedman in his corporate headquarters. I would further point out that this is really not a document driven case.

(c) In paragraph 3(d) Mr. Friedman names Stephen Kalnick, his former CFO, as a potential witness. If the Court will recall, I have made mention of him (not by name) in my prior Affidavit. As to Mr. Kalnick's purported testimony, it, again, deals primarily with the pre-agreement time period. The fact is that if Mr. Friedman were somehow dissatisfied with Mimco and what I was telling him in our negotiations, he was free to walk away from the deal. He chose not to do so but, instead, went forward, hiring me and my people, forming RMC, accepting and financing millions of dollars in orders assuming a below market rental lease of Mimco's New York showroom and watched respective counsel negotiate and draft written contracts to memorialize our agreements. Accordingly, Mr. Kalnick's purported analyses are wholly irrelevant, as are the terms of letters of credit (which are not in dispute) and/or the assumption of the real estate lease. In short, other than as a possibly corroborative witness, Mr. Kalnick's testimony is of little or no importance or relevance.

(d) In paragraphs 3(f) and 3(g) Mr. Friedman names as potential witnesses, Tom Lewis and Fred Conte, both former RMC salesmen. Both gentlemen worked directly under me at RMC. They took no part, whatsoever, in any of the discussions/negotiations between Mr. Friedman and myself and/or our attorneys. I did not confide in either of them and, to the best of my knowledge and belief, neither did Mr. Friedman. They had no part or involvement in the events leading up to the termination of the relationship between the Defendants and me. If they are called as witnesses, it can

3

only be as background witnesses regarding the sales in which they were involved.  As such their testimony can easily be taken by deposition; however, again, both Mr. Friedman and I know that their testimony will never be utilized.  The sales history of RMC can be testified to by Mr. Friedman or myself, backed up by the documents which are in my office in Marblehead and in his office in New York.

      (e)      I have no idea who Michael Kaufman is (named as a potential witness in paragraph 3(h) of Mr. Friedman's Supplemental Affidavit).  I can say that he took no part in the RMC's business.  He never had a conversation with me and took no part in the discussions between Mr. Friedman and myself.

      (f)      Paragraph 3(1) in Mr. Friedman's Supplemental Affidavit relative to the landlord contains an outright untruth.  Mimco can produce cancelled checks for each and every month's rent on the New York showroom up until the date on which RMC assumed the rent, as per the agreement reached between Mr. Friedman and myself.  Indeed, Mr. Friedman was anxious to obtain Mimco's New York showroom because the rent was at a below market rate.  What this unnamed witness might add other than as a rebuttal witness going to the credibility of myself or Mr. Friedman with respect to this narrow allegation, I cannot possibly imagine.  Our deal was that Mimco was to assign its showroom to RMC, and Mimco, in fact, did so.  Whether Mimco could or could not afford to pay rent (which it was most certainly was paying up to the date of the assignment) is yet another wholly irrelevant matter and has at best a tangential bearing on the case I have brought.

      (g).      As to the unnamed witnesses in paragraph 3(j) of Mr. Friedman's Supplemental Affidavit, I could also have added to my potential witness list by the

inclusion as potential witnesses the names of the bankers at Fleet Bank with whom I dealt in Boston to provide financing for letters of credit.  Further, apparently unlike Mr. Friedman I can name the bankers who were involved:  William Eakes, Brian Slater, Louis DeFronzio, Chris Saccoccio and Douglas Clark.  Likewise, the law firm of Chapell & White of Boston was involved in these discussions on the part of the bank.  All of the above potential witnesses may testify to the financing of my menswear business, Mimco's ability to obtain financing and in what amounts.  None of the above people can be compelled to come to New York to testify.

      4.      Finally, Mr. Friedman would have the Court believe that we are engaged strictly in a numbers game with respect to his Motion; i.e. the number of his witnesses as opposed to the number of my witnesses.  I cannot stress enough that there are only four "real" witnesses in this case, Mr. Friedman, Mr. Swick, Mr. Levenson and myself, and in all likelihood they will be the only witnesses who will testify at trial. I, therefore, reiterate that the case should remain in Boston.

      Subscribed under the penalties of perjury this 27th day of July, 2006.


      s/Lawrence Shutzer_____
      Lawrence Shutzer