UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

LAWRENCE SHUTZER,

      Plaintiff,

v.

S. ROTHSCHILD & CO., INC. and S.
ROTHSCHILD MEN'S, INC. and MARK
FRIEDMAN,

      Defendants.

CIVIL ACTION NO.
05-11486-MLW

## ASSENTED TO MOTION FOR LEAVE TO FILE CORRECTED AFFIDAVIT

Defendants S. Rothschild & Co., Inc., S. Rothschild Men's, Inc. and Mark Friedman (the "Defendants") hereby request permission to file the Affidavit of Paul H. Schafhauser attached hereto as Exhibit 1. As grounds for this Motion, the Defendants state as follows:

1.      On October 13, 2006, the Court held a scheduling conference in this matter.

2.      During the conference, the Court issued an Order of Entry of Default against the Defendants for their failure to file a timely Answer to the Complaint. In the Order, the Court instructed any Defendant who wished to attempt to show cause why the default should be removed to file a motion, memorandum, and supporting affidavit by October 30, 2006, and instructed the Plaintiff to respond to any such motion by November 15, 2006. The Court also instructed the Defendants' lead attorney, Paul H. Schafhauser, who did not attend the scheduling conference, to pay the sum of $1,000 by October 30, 2006 if he wished to continue to represent any of the Defendants.

3.      On October 18, 2006, the Defendants moved to set aside the entry of default. Although Mr. Schafhauser submitted the Motion on the Defendants' behalf, he subsequently

moved, prior to the expiration of the October 30, 2006 deadline, to withdraw as counsel for the Defendants. On the same date, David S. Weiss and Laura E. D'Amato of Goulston & Storrs, P.C. entered their appearances as counsel for the Defendants.

4.      In support of the Defendants' Motion, Mr. Schafhauser submitted an Affidavit in which he outlined, among other things, the circumstances that led him to believe that his local counsel could appear at the conference in his stead.

5.      Among those circumstances was a series of three emails that Mr. Schafhauser exchanged with Plaintiff's counsel, Lawrence Slater, about the conference.

6.      Mr. Schafhauser stated in Paragraph 18 of his original Affidavit that all three emails were sent on October 6, 2006.

7.      A closer review of the emails, however, indicates that Mr. Schafhauser's recollection was mistaken. His original email to Mr. Slater and Mr. Slater's response were actually sent on September 29, 2006, not on October 6, 2006 as indicated in Mr. Schafhauser's original Affidavit.

8.      Mr. Schafhauser respectfully submits the attached Affidavit to correct this error. A detailed explanation of the changes to Mr. Schafhauser's Affidavit is contained in footnote 2 of the corrected Affidavit.

9.      A courtesy copy of Mr. Schafhauser's corrected Affidavit has heretofore been provided to Plaintiff's counsel. Mr. Slater has indicated that he does not object to the allowance of this Motion.

WHEREFORE, Defendants S. Rothschild & Co., Inc., S. Rothschild Men's, Inc. and Mark Friedman respectfully request that the Court grant this Motion, and issue an order

permitting the Defendants to file the Affidavit of Paul H. Schafhauser that is attached hereto as Exhibit 1.

Respectfully submitted,

/s/ Laura E. D'Amato
David S. Weiss (BBO # 521090)
Laura E. D'Amato (BBO# 641733)
GOULSTON & STORRS, P.C.
400 Atlantic Avenue
Boston, MA 02110
(617) 574-4112

Dated:  November 15, 2006

3

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(A)(2)

The undersigned counsel for the Defendants certifies that he has conferred with counsel for the plaintiff, Lawrence M. Slater, Esq., in a good faith effort to resolve the issues presented in this Motion to the greatest extent possible in compliance with the provisions of Local Rule 7.1(A)(2). Attorney Slater stated that he does not object to the allowance of this Motion.

/s/ Laura E. D'Amato
Laura E. D'Amato (BBO# 641733)

Dated: November 15, 2006

4

Certificate of Service

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on November 15, 2006.

/s/ Laura E. D'Amato
Laura E. D'Amato (BBO# 641733)

**EXHIBIT 1**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

```
- - - - - - - - - - - - - - - - - - - - - - - - - - x
```

LAWRENCE SHUTZER,                    : Case No.: 1:05-CV-11486
                                     :
                    Plaintiff,       : Hon. Mark L. Wolf, U.S.D.J.
                                     :
vs.                                  :
                                     :          **AFFIDAVIT OF**
S. ROTHSCHILD & CO., INC. and S.     :      **PAUL H. SCHAFHAUSER**
ROTHSCHILD MEN'S, INC. and MARK      :
FRIEDMAN,                            :
                                     :
                    Defendants.      :
                                     :
```
- - - - - - - - - - - - - - - - - - - - - - - - - - x
```

STATE OF NEW YORK    )
                     ) ss.:
COUNTY OF NEW YORK   )

PAUL H. SCHAFHAUSER, being duly sworn, deposes and says:

1.      I am a member of the firm of Herrick, Feinstein LLP, the attorneys for defendants S. Rothschild & Co., Inc., S. Rothschild Men's, Inc. and Mark Friedman in connection with the above-captioned matter.

2.      I respectfully submit this affidavit in support of defendants' motion to set aside the default entered by the Court and to extend the time to file an answer in the form respectfully submitted herewith. Unless otherwise indicated, I have personal knowledge of the facts and circumstances set forth herein.

A.      **Introduction**

3.      On Friday, October 13, 2006, the Court held an initial scheduling conference pursuant to Fed. R. Civ. P. 16 (b). At the conference, the Court indicated that it would enter default against defendants. By Order dated October 13, 2006, the Court entered

default against defendants, and directed me to pay sanctions pursuant to Fed. R. Civ. P. 16 (f) if I wish to continue to represent any of the defendants in this case.

4.    As set forth herein, defendants respectfully submit that they have not willfully failed to respond to plaintiff's complaint. Moreover, I did not willfully ignore any directive of the Court regarding the scheduling conference. Instead, it was my understanding, for the reasons more fully explained herein, that local counsel could appear in my stead at the initial conference. I deeply regret this misunderstanding, and I apologize to the Court.

5.    Through a combination of misunderstanding and oversight, an answer was not filed within ten days after the Court granted in part, and denied in part, defendants' motion to dismiss the complaint. Nonetheless, if given the opportunity to litigate this matter on the merits, defendants have meritorious defenses to plaintiff's claims.

6.    In light of the facts set forth herein, and for the reasons set forth in the accompanying memorandum, I humbly and respectfully request that the Court allow my clients to defend themselves on the merits, rather than to decide this matter against them by default due to any misunderstanding or oversight of their counsel.

**B.**        **Defendants' Motion to Dismiss**

7.    Plaintiff Lawrence Shutzer filed this action on or about July 13, 2005. In response, defendants timely filed a motion to dismiss the complaint or, alternatively, to transfer this matter to the Southern District of New York.

8.    Defendants' motion papers, which included a memorandum of law and affidavit of Mr. Friedman, were filed by Dennis McKenna, Esq., of the firm of Riemer & Braunstein LLP, which had been retained as local counsel. Thereafter, by Order dated March 20,

2

2006, the Court granted leave for Mark Errico, Esq. and me to appear pro hac vice in this matter on defendants' behalf.

9.   By Order dated June 28, 2006, the Court directed the parties to submit supplemental papers addressing considerations regarding the convenience of the witnesses, as outlined in Brant Point Corp. v. Poetzsch, 671 F. Supp. 2, 3 (D. Mass. 1987). The Court directed the parties to submit these papers by July 28, 2006 and, as directed by the Court, defendants timely filed a supplemental memorandum of law and supplemental affidavit of Mr. Friedman. Mr. McKenna's office again filed these papers on defendants' behalf.

10.   By Memorandum and Order dated September 19, 2006, the Court granted defendants' motion to dismiss in part and denied it in part. Specifically, the Court dismissed Counts IV and V as time-barred against all defendants. The Court also dismissed all counts of the complaint against Mr. Friedman. Moreover, the Court denied defendants' motion to transfer venue. Finally, the Court set a scheduling conference to be held on October 13, 2006. (A copy of the Court's Memorandum and Order dated September 19, 2006 is respectfully attached hereto as Exhibit A).

C.     **Communications Regarding the Scheduling Conference and the Joint Discovery Plan**

11.   On Friday, September 29, I emailed plaintiff's counsel, Lawrence Slater, Esq., and asked him about the prospect of a telephonic conference. (A copy of this email, together with Mr. Slater's response and my further reply, is attached hereto as Exhibit B). I thought that Mr. Slater might be amenable to a telephone conference and, if so, I would contact the Court and ask for leave to participate in the conference by telephone with Mr. Slater's consent.

12.    Rather than reply regarding his own preference, Mr. Slater evidently contacted the Court himself to inquire as to whether the Court would allow us to conduct the initial conference by telephone. Mr. Slater then emailed me as follows:

> I called the court and spoke with Judge Wolfe's courtroom clerk, Dennis O'Leary, who advised me that it is not Judge Wolf's common practice to allow the initial conference to be held by TCC. He said that you would have to file a motion to do so or to have your local counsel represent your client in your stead. He further said that lately the judge has been in a "kinder, gentler mood" and he might allow it for good cause shown.

(Exhibit B).

13.    As directed by the Court, Mr. Slater and I conferred for the purpose of preparing an agenda of matters to be discussed at the scheduling conference, preparing a proposed pretrial scheduling, and considering whether the parties would consent to trial by a magistrate judge. At the conclusion of our conference, Mr. Slater agreed to prepare a proposed joint statement pursuant to Local Rule 16.1 (D), including a proposed discovery plan.

14.    Mr. Slater forwarded his proposed joint statement to me on Thursday, October 5. (A copy of Mr. Slater's email correspondence dated October 5, 2006 is respectfully attached hereto as Exhibit C). At the time, I was in Los Angeles, California conducting a deposition. During a break in the deposition (which began at 8:30 a.m. that day and concluded at 7:30 p.m. to allow me to get to the airport in time to get on the "red-eye" to Newark, New Jersey), I noted on my "Blackberry" that Mr. Slater had forwarded an email to me, but I could not access the attachment (which contained the proposed joint statement that Mr. Slater had emailed to me). I resolved to address the proposed joint statement as the top priority the following morning, when I could access the attachment and review the document.

15.    After landing in Newark the following morning, I went straight to my office. I printed out Mr. Slater's proposed joint statement (along with other materials that I had

4

received during the several days that I had been in California) and, having slept only sporadically on the "red-eye" and not changed clothes, I went home to shower and change.

16.     Shortly after arriving home, I reviewed the proposed joint statement that Mr. Slater had forwarded to me and, upon doing so, called Mr. Slater to discuss it. Because I was eager to file the joint statement that day, my call to Mr. Slater was the first call I made that day to anyone.

17.     I agreed to the dates set forth in the discovery plan that Mr. Slater had prepared. However, I noted that Mr. Slater had included proposed certifications attesting that we had conferred with our respective clients regarding (i) a budget for the costs of conducting the litigation; and (ii) the possible resolution of the litigation through alternative dispute resolution programs. I told Mr. Slater that I could not, in good conscience, sign such a certification, as I had not yet had the opportunity to discuss these matters with my client. I noted, however, that I was scheduled to meet with my client on Tuesday, October 10, and suggested that we jointly contact the Court to note this dilemma, given our desire to file a joint statement by October 6.

18.     Mr. Slater and I jointly contacted the Court and, upon doing so, spoke with Ms. Kathy Boyce. Mr. Slater and I advised Ms. Boyce that we had agreed to a joint discovery plan, but that I was in a dilemma because I had not yet had the opportunity to meet with my client to discuss the matters as to which he and I would need to certify under penalties of perjury. Thus, I could not so certify, nor could I reach my client that day to discuss the matter with him or obtain the requisite certification from him.[1]

---

[1] I had been unable to meet with my client since the Court had rendered its decision because, among other things, I had been in Asheville, North Carolina for a deposition on September 20, prepared an extensive submission in another matter during the remainder of the week, prepared for and appeared in court for a jury trial during the week of September 25, and traveled to Los Angeles to conduct a deposition during the following week. My client, too, had scheduling difficulties which had prevented an earlier meeting.

Having never previously appeared in this District, this was my first encounter with Local Rule 16.1 (D). That said, I did not ignore Local Rule 16.1 (D) but, instead, went out of my way to ensure full

5

19.     During the call with Ms. Boyce, we discussed the possibility of filing the joint discovery plan on October 6, and filing the certifications after I had had an opportunity to meet with my client the following Tuesday.  Ms. Boyce indicated that this was acceptable and, accordingly, I asked Mr. Slater to file the joint discovery plan and indicated that I would file the certifications after I had met with my client. (Attached hereto as Exhibit D is a copy of my email correspondence to Mr. Slater, which I sent subsequent to our call with Ms. Boyce, confirming the foregoing).  The discovery plan was thus filed.

D.          **My Review and Response to Mr. Slater's Email Regarding the Scheduling Conference**

20.     Shortly after I forwarded my email correspondence to Mr. Slater regarding the joint discovery plan, I reviewed Mr. Slater's email to me of September 29, 2006, wherein he had reported to me his conversation regarding Mr. O'Leary.[2]

21.     Upon reading Mr. Slater's email, it was my understanding that (i) I would need to file a motion for leave to participate in the scheduling conference by telephone; and (ii) in lieu of such a motion, I had been directed to "have your local counsel represent your client in

---

and faithful compliance as best I knew how.  As an attorney at law who takes his obligations extremely seriously, I could not sign a certification on October 6 that attested to a discussion which I had not yet been able to conduct with my client.  I resolved to do so immediately upon the conclusion of my scheduled meeting with my client, and it was for that reason that I contacted the Court on October 6.

[2] In paragraph 18 and following in my Affidavit dated October 18, 2006, I indicated that I had contacted plaintiff's counsel, Lawrence Slater, Esq., by email on October 6, to ask him about the prospect of a telephonic conference.  In my haste to place before the Court the circumstances which preceded the conference on October 13, however, I did not notice the date of my initial email to Mr. Slater regarding the conference, or the date of Mr. Slater's responsive email to me, which are part of the string of emails attached hereto as Exhibit B.

A closer review of the emails, however, indicates that my recollection was mistaken.  Mr. Slater advised me of his conversation with Mr. O'Leary by email on Friday, September 29.  It appears, however, that I did not see Mr. Slater's email to me until the morning of October 6, shortly after Mr. Slater and I had spoken regarding the submission to the Court of our joint discovery plan pursuant to Local Rule 16.1 (D).  When I reviewed Mr. Slater's email, I replied by email to Mr. Slater dated Friday, October 6, 2006 at 11:58 a.m. (Exhibit B).  Thus, rather than having responded within five minutes after Mr. Slater sent his email (as I had recalled in footnote 2 of my Affidavit dated October 16, 2006), I, in fact, responded to Mr. Slater's email approximately four minutes after I had emailed him regarding the joint statement pursuant to Local Rule 16.1 (D).  (Exhibits B and D).  I respectfully submit this corrected Affidavit to correct the record in this regard, lest any mistaken statement in my prior Affidavit remain in the record.

6

your stead." Accordingly, I replied to Mr. Slater that "[i]n light of your advice, it is my expectation that local counsel will appear at the conference." (Exhibit B).

22.    In retrospect, I may have misinterpreted Mr. Slater's email, or erred in relying on Mr. Slater's correspondence rather than in contacting the Court directly. Whatever the case, I deeply apologize if the Court might perceives that I willfully ignored a requirement that I appear at the scheduling conference.

23.    Far from willfully ignoring any requirement relating to the scheduling conference, I raised the issue well before the conference. It was my understanding that Mr. Slater was well familiar with the Court's practices, and I also believed from my interactions with Mr. Slater (and, of course, still believe) that he is a gentleman and an honorable attorney. In my mind, I thus had no reason to doubt his correspondence regarding his communication with the Court, nor did I believe there was any reason to burden the Court with a further communication that the Court's courtroom clerk had, to my understanding, already addressed.[3]

24.    When I saw Mr. Slater's email on October 6, it was my understanding that Mr. Slater had graciously contacted the Court to inquire about the possibility of a telephone conference and, upon doing so, was told that if a motion for leave to appear by telephone conference were not filed or granted, Mr. Slater was reporting to me that Your Honor's courtroom clerk had indicated to "have your local counsel represent your client in your stead."

25.    Having reread Mr. Slater's email in connection with the preparation of this affidavit, I realize, with the benefit of hindsight, that Mr. Slater's email could be read to indicate that the Court's courtroom clerk had indicated that a motion would need to be filed not only if I

---

[3] As noted above, when in doubt that very morning regarding the filing of certifications pursuant to Local Rule 16.1 (D), I had, in fact, contacted the Court, rather than sit idly by or ignore the matter. The reason I did not do so again was that I understood Mr. Slater's email to have unambiguously advised that the Court would allow local counsel to appear in my stead.

7

wished to participate in the scheduling conference by telephone, but also if, alternatively, I wished to have local counsel appear in my stead. I must confess, however, that this prospect did not cross my mind at the time, nor did I read Mr. Slater's email to so suggest. I did not suggest to Mr. Slater that I wished to have local counsel appear in my stead, nor did I understand that Mr. Slater had raised the matter with the Court's courtroom clerk. Instead, I read Mr. Slater's email to indicate that the Court's courtroom clerk had advised, in response to Mr. Slater's question regarding a telephonic scheduling conference, that a motion would either need to be filed for such a conference or, as an unsolicited helpful suggestion from Your Honor's courtroom clerk, "to have your local counsel represent your client in your stead." (Exhibit B).

26.     Rightly or wrongly, I sincerely believed that the Court's courtroom clerk had advised that defendants' local counsel could appear at the scheduling conference in my stead. Of course, I would have acted very differently, and would have taken the necessary steps, had I believed that there was any remaining question regarding the matter, or that my appearance would be required at the initial conference despite Mr. Slater's email correspondence to me the week before the conference. I would be honored to appear at any scheduling or other conference that the Court may deem appropriate, and I certainly would never knowingly disregard any directive of the Court.

E.     **Defendants' Certifications Pursuant to Local Rule 16.1 (D) (3)**

27.     On Tuesday, October 10, I asked Mr. Slater to have his assistant forward a copy of the joint statement that had been submitted to the Court. Later that morning, Mr. Slater replied that he had requested that his assistant forward it to me. Mr. Slater added: "Since you are not coming to the scheduling conference, will you be able to reply to my settlement offer

8

after you meet with your client today? Please let me know. I think that this is a case that should settle." (Copies of these emails are collectively attached as Exhibit E).

28.    As I had told Ms. Boyce and Mr. Slater the prior Friday, I met with my client on Tuesday afternoon, October 10. During the course of a lengthy meeting regarding this matter, we discussed the various matters required pursuant to L. Civ. R. 16.1 (D)(3). Upon execution of the requisite certifications, I forwarded them to Mr. McKenna's office for filing with the Court, and Mr. McKenna's office subsequently filed them.

29.    The Court's clerk, Ms. Boyce, had asked me to email copies of the certifications to her once they were filed, and had given me her email address for this purpose. Accordingly, upon my receipt of the filed certifications from Mr. McKenna's office, I forwarded copies to Ms. Boyce. (Attached hereto as Exhibit F is a copy of my email to Ms. Boyce regarding same).

F.    **Further Pre-Conference Discussions with Ms. Boyce, Mr. Slater and Mr. Corner**

30.    On Friday, October 13, Ms. Boyce contacted me to advise that the certifications had been filed with an inaccurate designation (i.e., the certifications were denoted on PACER as "Consent to Alternative Dispute Resolution" rather than as "Certificate of Consultation"). I apologized for the mistake, noted that Mr. McKenna's office had handled the filing of the certifications, and mentioned that someone from Mr. McKenna's office would be appearing for the conference that afternoon. Ms. Boyce replied that she would fix the incorrect denotation of the certifications on PACER, and we exchanged pleasantries before ending the call.

31.    Prior to the conference on October 13, I also spoke with Mr. Slater by telephone. During our call on October 13, Mr. Slater and I discussed my client's settlement

9

position, views regarding alternative dispute resolution, and position regarding a trial of this matter by a magistrate judge. We, too, exchanged pleasantries, remarking among other things that we would be spending lots of time together as discovery proceeded.

32.     Prior to the conference on October 13, I also spoke with Mark Corner, Esq., a litigation partner with the firm of Riemer & Braunstein, regarding the matters to be addressed during the conference. It was my understanding that Mr. McKenna was unable to attend due to a scheduling conflict and, as a result, I had an extensive conversation with Mr. Corner regarding the factual background of this matter, our client's position regarding settlement (which I also communicated directly to Mr. Slater), the proposed discovery plan, the possibility of alternative dispute resolution and other matters that might arise at the scheduling conference.

G.       **The Court's Entry of Default**

33.     The next communication I received regarding this matter on October 13, 2006 occurred at approximately 5:45 p.m., when I learned that the Court had entered default against defendants. It is my understanding that the Court inquired as to why I did not appear at the conference and also noted that an answer had not been timely filed. I subsequently received a copy of the Court's Order dated October 13, 2006, by which the Court entered default against my clients and directed me to pay to the Clerk of the Court sanctions in the amount of $1,000 pursuant to Fed. R. Civ. P. 16(f) if I wish to continue to represent any of the defendants in this case. (A copy of the Court's Order dated October 13, 2006 is attached hereto as Exhibit G).

34.     By letter dated October 18, 2006, I forwarded a check in the amount of $1,000.00 for filing with the Clerk of the Court, as directed by the Court. (Attached hereto as Exhibit H is a copy of my transmittal letter to the Clerk of the Court, together with a copy of the check in the amount of $1,000.00). I respectfully note, however, that I sincerely believed that a

member of Mr. McKenna's firm would be allowed to appear in my stead, and that Your Honor's courtroom clerk had so advised Mr. Slater (who, in turn, I believed to have so advised me in writing). I sincerely apologize for any misunderstanding on my part, and I respectfully request that the Court conclude that my conduct, while admittedly imperfect, did not result from any willful disregard of the Court's directives.

35.    Likewise, I deeply regret any oversight with respect to the filing of an answer. I must confess that misunderstanding or miscommunication appears to have led to the oversight regarding an answer. Mr. Errico, who was involved in the initial motion to dismiss, left our firm earlier this year and was succeeded by Matthew Hawkins. Mr. Hawkins, however, was out of state preparing for and conducting an arbitration proceeding during this period. I was in Asheville, North Carolina, then preparing for and commencing a trial, then in Los Angeles the following week.

36.    Never before have I been involved in a matter in which an answer has not been timely filed on my client's behalf. Nonetheless, an answer was not timely filed in this case. To say the least, I deeply regret that an answer was not timely filed, and further regret any inconvenience to the Court or to plaintiff caused by this inadvertent oversight.[4]

37.    I respectfully submit, however, that the procedural history to date does not indicate a disregard for this matter. Defendants timely filed a motion to dismiss, and timely filed supplemental papers as directed by the Court. I cooperated with Mr. Slater to timely file a joint

---

[4] The pressures of being a litigator are, as the Court undoubtedly knows, substantial by themselves. Nonetheless, if my actions during recent weeks are at issue, I would be remiss if I did not also note, with deep sadness, that my mother was told by her doctor during this period that her breast cancer had metastasized to her liver, among other areas. Needless to say, I do not relish having to report this upsetting news in this or any other submission. I mention it only to convey, as best I am able, the cumulative stresses that I have been under in recent weeks. With humility, I ask the Court's understanding if these stresses have led to error or oversight on my part.

discovery plan and, upon being in a position to fully and faithfully attest to our advice to our client, duly filed certifications which so stated.

38.    Moreover, plaintiff's counsel and I discussed each and every item specified pursuant to Local Rule 16.1 (D).  At no time during our interactions did plaintiff's counsel indicate any default by defendants.

39.    Moreover, to avoid any delay or prejudice to plaintiff, defendants are submitting herewith a proposed answer for the Court's consideration. (Defendants' proposed answer is attached hereto as Exhibit I).  By this application, defendants respectfully seek an extension of time to file such an answer and leave to file an answer in the form submitted herewith.

40.    Plaintiff is seeking damages totaling approximately $1,750,000.00.  As outlined in their previously-submitted motion papers and in the proposed answer submitted herewith, defendants have substantial and meritorious defenses to plaintiff's claims (including the Statute of Frauds, the law relating to the termination of at-will employees, and defenses pertaining to plaintiff's alleged "detrimental reliance").

41.    I respectfully request that the Court allow defendants to litigate this matter on the merits, rather than allow plaintiff to proceed by default as a result of any misunderstanding or oversight on the part of counsel.

PAUL H. SCHAFHAUSER

Sworn to before me this
13th day of November, 2006

Notary Public

BLANCHE BANKS
Notary Public, State of New York
No. 01BA6075246
Qualified in New York County
Commission Expires June 3, 2010

12

# EXHIBIT A

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

LAWRENCE SHUTZER )
)
Plaintiff, )
)
v. )      CIVIL ACTION NO.
)      05-11486-MLW
S. ROTHSCHILD & CO., INC. and S. )
ROTHSCHILD MEN'S, INC. and MARK )
FREIDMAN )
)
Defendants. )

MEMORANDUM AND ORDER

WOLF, D.J.                                    September 19, 2006

Plaintiff Lawrence Shutzer ("Shutzer") has brought claims
against defendants S. Rothschild & Co., Inc. ("SRC"), S. Rothschild
Men's, Inc. ("RMI"), and Mark Friedman ("Friedman"), alleging that
the defendants breached their contract with him in March, 2000.
RMI is a wholly owned subsidiary of SRC and both are controlled by
the same principals.    They are collectively referred to as
"Rothschild."   The defendants have moved to dismiss pursuant to
Federal Rule of Civil Procedure 12(b)(6) or, in the alternative, to
transfer venue to the Southern District of New York.

The court has carefully considered the motions and the
responses.   For the following reasons, the motion to dismiss is
being allowed in part and denied in part.   Counts IV and V are
being dismissed against all of the defendants.   All of the counts

1

are being dismissed against defendant Friedman.    The motion to transfer venue is being denied.

The facts alleged in the complaint include the following. Shutzer, a Massachusetts resident, worked for Mimco, Inc. ("Mimco"), a men's outerware company, throughout the 1990s.   In 1999, Friedman, as the director president and principal shareholder of RMI and SRC, met with Shutzer in New York to discuss a possible relationship between Rothschild and Mimco.  Following the meeting, the parties had extensive negotiations relating to a merger between Mimco and SRC.  The parties orally agreed that SRC would purchase all patterns, samples, and other assets owned by Mimco.  In return, SRC would receive an assignment of all rights to Mimco's New York showroom at a below-market rental.    Also, all of the Mimco employees, including Shutzer, would become either SRC or RMC employees.

It is also alleged that on February 15, 2000, the parties further orally agreed that: Shutzer would attempt to obtain as many orders as possible from former Mimco customers for Rothschild; Rothschild would hire all Mimco employees; Shutzer would receive a written employment contract, be included on SRC's payroll, and be paid a sales commission for three years in addition to a salary; SRC would acquire Mimco's New York and Massachusetts offices; for three years, the profits generated by Rothschild's men's division would be shared equally between Shutzer and Rothschild after

2

deducting salaries paid to former Mimco employees; and Shutzer
would run Rothschild's men's business.

Shutzer further alleges that throughout 2000, he continued to
generate business for Rothschild and marketed and promoted the
Rothschild business.  However, the defendants failed to meet any of
their obligations to Shutzer.  As a result, Shutzer alleges the
defendants are liable for breach of contract (Count I), breach of
the implied covenant of good faith (Count II), estoppel (Count
III), fraud (Count IV), violation of Mass. Gen. Laws. Ch. 93A
(Count V), and unjust enrichment/quasi-contract (Count VI).
Finally, in Count VII, Shutzer asserts a claim for an accounting,
from 2000 to the present, alleging that the defendants have refused
to give him access to financial records showing the sales and
profits on orders that he obtained.

In considering a motion to dismiss under Rule 12(b)(6) of the
Federal Rules of Civil Procedure, a court "must accept all well-
pleaded facts alleged in the Complaint as true and draw all
reasonable inferences in favor of the plaintiff." Day v. Fallon
Cmty. Health Plan, Inc., 917 F. Supp. 72, 75 (D. Mass 1996); see
also Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993). "'A
complaint should not be dismissed for failure to state a claim
unless it appears beyond doubt that the plaintiff can prove no set
of facts in support of his claim which would entitle him to
relief.'" Miranda v. Ponce Fed'l Bank, 948 F.2d 41, 44 (1st Cir.

3

1991) (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). The court must "neither weigh[] the evidence nor rule[] on the merits because the issue is not whether the plaintiffs will ultimately prevail, but whether they are entitled to offer evidence in support of their claims." Day, 917 F. Supp. at 75.

This "highly deferential" standard of review "does not mean, however, that a court must (or should) accept every allegation made by the complainant, no matter how conclusory or generalized." United States v. AVX Corp., 962 F.2d 108, 115 (1st Cir. 1992). A court should "eschew any reliance on bald assertions, unsupportable conclusions, and 'opprobrious epithets.'" Chongris v. Board of Appeals of Town of Andover, 811 F.2d 36, 37 (1st Cir. 1987) (quoting Snowden v. Hughes, 321 U.S. 1, 10 (1944)), cert. denied, 107 S. Ct. 3266 (1987).

The plaintiff concedes that his tort claims in Count IV (Fraud) and Count V (G.L.c. 93A) are time-barred. This conclusion is correct. Under Massachusetts law, "actions of tort...shall be commenced only within three (3) years after the cause of action accrues." Mass. Gen. Laws ch. 260, §2A. The plaintiff filed this case more than five years after he discovered the cause of harm for his injury. Therefore, Counts IV and V are being dismissed.

The defendants argue that all of the other counts should be dismissed as well. Because it is alleged that Friedman acted on behalf of Rothschild, all of the remaining counts against him are

4

being dismissed.  "A contract made by the authorized agent of a corporation is the corporation's contract."  Dolben v. Gleason, 292 Mass. 511, 514 (1935).  Therefore, "[u]nder Massachusetts law, a high corporate officer may be personally liable for the torts a corporation commits at his direction.  But, the officer ordinarily is not liable for the corporation's breach of contract," unless the officer acted out of actual malice.  Union Mutual Life Insurance Company v. Chrysler Corporation, 793 F.2d 1, 11 (1st Cir. 1986).  As explained below, all of the remaining counts in the complaint, except Counts IV and V which are being dismissed, are contract-related.  In addition, the complaint states that Friedman, the director president and principal shareholder of RMI and SRC, was, at all times material to the complaint, "acting on behalf of the corporate Defendants and had the full authority to act on their behalf in his dealings with Shutzer and Mimco."  Complaint ¶22.  Therefore, none of the counts against Friedman survive the motion to dismiss.

The corporate defendants argue that the contract-related claims (Counts I and II) should be dismissed because they are subject to the Statute of Frauds.  As explained earlier, Shutzer alleges that he reached an oral agreement with the defendants.  However, the Statute of Frauds renders unenforceable an oral agreement if it cannot be performed within one year of its making.  Mass. Gen. Laws ch. 259, §1.  See also In re Furst, 914 F.Supp.

5

734, 738 (D. Mass. 1996)("the Statute of Frauds invalidates an oral joint venture agreement if it can be shown that the agreement is not to be performed within one year from the making thereof.")(quotations and citations omitted). Shutzer alleges the parties orally agreed to a contract for a "three year period." Complaint ¶3. Therefore, the corporate defendants contend that the contract is unenforceable. In addition, they argue that if "no contract exists, there can be no derivative implied covenant of good faith and fair dealing applicable to [the] parties." Mass. Eye & Ear Infirmary v. QLT Phototherapeutics, Inc., 412 F.3d 215, 230 (1st Cir. 2005).

The Statute of Frauds, however, does not provide a proper basis for granting the corporate defendants' motion to dismiss. "Numerous cases state that the affirmative defenses specifically listed in Federal Rule 8(c) [which includes the Statute of Frauds]...and any other defense that is not specified in Rule 12(b), must be asserted in the defendants' answer; as a result of these precedents, most defensive matters cannot be the basis for a motion to dismiss plaintiff's claim." 5 Charles Alan Wright and Arthur R. Miller, Federal Practice and Procedure, §1277, at 626 (2004). The Third Circuit and some other courts have, however, permitted motions to dismiss to be decided on the basis of any affirmative defense. Id. at 628. However, even this broader approach would not result in the dismissal of Shutzer's claims

6

because he has alleged facts which, if proven, would defeat a Statute of Frauds defense.

More specifically, "estoppel, if appropriately applied...would...preclude [the defendant] from asserting the affirmative defense of the Statute of Frauds." Cellucci v. Sun Oil Co., 2 Mass. App. Ct. 722, 728 (1974)). Estoppel precludes a Statute of Frauds defense if the following factors are satisfied:

> (1) A representation or conduct amounting to a representation intended to induce a course of conduct on the part of the person to whom the representation is made. (2) An act or omission resulting from the representation, whether actual or by conduct, by the person to whom the representation is made. (3) Detriment to such person as a consequence of the act or omission."

Palandjian v. Pahlavi, 614 F.Supp. 1569, 1581 (D. Mass. 1985)(quoting Cellucci, 2 Mass. App. Ct. at 728). See also Andrews v. Charon, 289 Mass. 1, 5 (1935)(the "basis for estoppel against setting up the Statute of Frauds is such change of situation or part performance by the party seeking relief as places him in a situation which is a fraud upon him, unless the agreement is fully performed.")(quotation omitted); Hickey v. Green, 14 Mass. App. Ct. 671, 673 (1982)("[a] contract...may be specifically enforced notwithstanding failure to comply with the Statute of Frauds if it is established that the party seeking enforcement, in reasonable reliance on the contract and continuing assent of the party against whom enforcement is sought, has so changed his position that injustice can be avoided only be specific enforcement.").

7

In Palandjian, the parties entered into an oral agreement to develop a holiday resort. Palandjian, 614 F.Supp. at 1571-1572. There was evidence that after the contract was established, the defendant made specific promises to the plaintiff regarding the resort project, reasonably inducing the plaintiff to invest substantial time, money, and other resources in developing the resort. Id. In denying a motion for summary judgment, the court held this evidence to be sufficient to prove estoppel that could defeat a Statute of Frauds defense. Id. at 1580-1581. Similarly, in Cellucci, the court held that the defendant could not prevail on a Statute of Frauds defense because the defendant had misled the plaintiff into thinking it would accept his offer, and the plaintiff had relied on the misrepresentation to his detriment. Cellucci, 2 Mass. App. Ct. at 728-729.

In the instant case, the facts alleged and the reasonable inferences to be drawn from them suggest the following. Shutzer was induced by the defendants to perform substantially to his detriment. Shutzer alleges that the parties reached an agreement as to his role in SRC on February 15, 2000. Part of that agreement was that Shutzer would receive a written employment contract. Although he never received a written employment contract, by March of 2000, the material terms of his employment had been worked out. Shutzer contends that in reliance on them, he delivered millions of dollars of business to the defendants from former Mimco customers

and others. Since the business went to the defendants and not to
Shutzer himself, he did this to his financial detriment.
Therefore, the plaintiff has sufficiently alleged facts which
would, if proven, justify a finding of estoppel that would defeat
defendants' Statute of Frauds defense.

The defendants argue that Shutzer's claims of estoppel (Count
III) and unjust enrichment/quasi contract (Count VI) should be
dismissed because they are each tort claims on which the statute of
limitations period has expired. As described earlier, under
Massachusetts law, there is a three-year statute of limitations on
tort actions. Mass. Gen. Laws ch. 260, §2A. The statute begins to
run when the plaintiff discovered or reasonably should have
discovered the cause of harm for his injury. Bowen v. Eli Lilly &
Co., Inc., 408 Mass. 204, 205-06 (1990). In this case, Shutzer
alleges that he became aware of the defendants' harmful conduct in
2000. He did not file this case until more than five years later.
Therefore, if Counts III and VI are tort claims, they do not
survive defendants' motion to dismiss. However, the statute of
limitations for contract actions is six years. Mass. Gen. Laws.
ch. 260, §2. Therefore, if Counts III and VI are treated as
contract claims, they are not time-barred.

"It is sometimes permissible to grant a motion to dismiss
based on an affirmative defense such as the statute of limitations.
That happens 'when the pleader's allegations leave no doubt that an

9

asserted claim is time-barred.'" Centro-Medico del Turabo, Inc. v. Feliciano de Melecio, 406 F.3d 1,6 (1st Cir. 2005)(quoting La Chapelle v. Berkshire Life Ins. Co., 142 F.3d 507, 509 (1st Cir. 1998)); see also Edes v. Verizon Communications, Inc., 417 F.3d 133, 137 (1st Cir. 2005); Jorge v. Rumsfeld, 404 F.3d 556, 561 (1st Cir. 2005). The allegations in Counts III and V of the complaint in this case do not demonstrate beyond doubt that these claims are time-barred.

"In Massachusetts the statutes of limitation applicable to law actions based on contract and tort are also applicable to suits in equity. Kagan v. Levenson, 334 Mass. 100 (1956). In deciding which statute applies in a given case, it is necessary to determine the essential nature of plaintiff's claim. Kagan v. Levenson, supra." Desmond v. Muffle, 375 F.2d 742, 743 (1st Cir. 1967). In the instant case, the essential nature of both Counts III and VI are contract-related. While Count III references fraudulent action, it alleges that Shutzer reasonably relied to his detriment on the representations made to him. This is an estoppel claim which, as described earlier, is a contract-related theory of recovery. See Palandjian, 614 F.Supp. at 1580-81. Similarly, Count VI, which alleges unjust enrichment/quasi-contract derives from the plaintiff's assertion that he conferred substantial benefit upon the defendants because he was led to believe he was performing pursuant to a contract between the parties. The

10

allegations in Counts III and VI are substantially different from those in which courts have held the claims are primarily tort related.   For example, in <u>Epstein v. C.R. Bard, Inc.</u>, 2004 WL 1598912, *3 (D. Mass. 2004), it was held the three-year tort statute of limitations applies to the unjust enrichment claim because "the [c]omplaint sounds in tort and makes no mention of any contract."  In the instant case, however, the alleged contract is not only mentioned, it is at the heart of the claims.   Therefore, since the statute of limitations for contract claims is six years, both Counts III and VI survive.  <u>See</u> Mass. Gen. Laws. ch. 260, §2.

The defendants' motion to transfer venue is not meritorious. The party seeking transfer of venue has a heavy burden, because "there is a strong presumption in favor of the plaintiff's choice of forum."  <u>Cody v. Ashcraft & Geral</u>, 223 F.3d 1, 11 (1st Cir. 2000).  The convenience of witnesses is the most important factor in deciding a motion to transfer. <u>Brant Point Corp. v. Poetzsch</u>, 671 F.Supp. 2,3 (D. Mass. 1987).  Under this factor, "the Court must consider not only the number of potential witnesses located in the [two] districts, but also the nature and quality of their testimony." <u>Id</u>.

In the instant case, the convenience of witnesses factor does not tilt in either party's favor.  The defendants point to eight witnesses living in the New York area, only three of whom are key witnesses.   Defendant Friedman, who negotiated with Shutzer is

11

located in New York.    Also, Daniel A. Swick who resides in New York Jersey and works in New Jersey and New York, had conversations with Mimco's counsel and thus can provide important testimony about whether the parties reached the agreement alleged in the complaint. Finally, 485 Seventh Avenue LLC, SRC's landlord, could potentially refute allegations in the complaint that Mimco paid rent for its New York showroom.

There are five potential minor witnesses living in New York. Stephen Rankel, SRC's former outside accountant, resides in Long Island, New York.    While he could testify on SRC's evaluation of potential business opportunities with Mimco, he never participated in any negotiations with Shutzer, nor has he ever met the plaintiff.    Stephen Kalnick, SRC's former Treasurer and Chief Financial Officer, resides in New Jersey and works in New York.    He could testify to SRC's approach to potential business opportunities with Mimco and SRC's negotiations with the landlord concerning Mimco's alleged showroom, but not to any negotiations with Shutzer. Tom Levis and Fred Conte are both former Mimco and SRC employees residing in the New York area who could testify about Mimco's motive for pursuing business with SRC, but neither had any involvement in the negotiations between the parties, nor were they involved in the events leading up to the termination of the relationship between the plaintiff and the defendants.    Finally, Michael Kaufman, an SRC employee could testify about his

12

observations of and conversations with former Mimco employees, but not about the alleged agreement that is central to this case.

On the other hand, Shutzer, a vital witness, resides in Massachusetts. He represents that he is eighty years old, has limited financial resources, and that as a solo business owner, could not be away from his business for long periods of time. In addition, Shutzer's counsel during his negotiations with the defendants, Paul Levenson, also resides in Massachusetts. The testimony of Levenson and Shutzer is very important to the case because they will testify to the nature of the negotiations and what was agreed upon between Shutzer and the defendants. Finally, when Shutzer began working for RMC, he worked at the RMC offices in Massachusetts. This office had three employees, who could be minor witnesses testifying about Shutzer and the defendants' conduct in 2000.

Therefore, there are key witness located in Massachusetts and New York, and one of the Massachusetts witnesses is elderly and has limited financial resources to travel. Neither party has shown that one venue is significantly more convenient for the bulk of the important witnesses in this case. "Transfer of venue is inappropriate...where its effect merely shifts the inconvenience from one party to another." Holmes Group, Inc. v. Hamilton Breach/Proctor Silex, Inc., 249 F.Supp.2d 12, 16 (D.Mass. 2002). Thus, the defendants have not met their heavy burden to overcome

13

the plaintiff's choice of venue.

The defendants also argue that all of the events at issue in this case took place in New York. However, while the two or three face-to-face meetings took place in New York, Shutzer represents that many of the major negotiations took place during telephone conference calls while Shutzer was in Massachusetts. In addition, according to Shutzer, and not disputed by the defendants, RMC established its executive offices in Massachusetts and three employees worked out of that office. Quotes to customers originated from Massachusetts and customer orders were received in Massachusetts. Since RMC and Shutzer's business after the alleged agreement is relevant to the case, both Massachusetts and New York have a nexus to the dispute.

Finally, from a practical standpoint, the interests of justice do not demand that this case be transferred to New York. The plaintiff is 80 years old and represents his business will suffer if he has to leave Massachusetts for a week. The defendants who are involved in a business with many employees will not suffer a significant inconvenience if some of its employees must make the short trip from New York to Boston. "[I]t is not a hardship to travel from New York to Boston in order to appear for a civil trial." Veryfine Products, Inc. v. Philo Corp., 124 F.Supp.2d 16, 26 (D. Mass. 2000).

14

Accordingly, it is hereby ORDERED that:

1.    The defendants' Motion to Dismiss pursuant to Fed.R.Civ.Proc. 12(b)(6) (Docket No. 7) is ALLOWED with respect to all counts against defendant Friedman and Counts IV and V against all the defendants.  The motion is DENIED with regard to Counts I,II,III,VI, and VII against defendants SRC and SRI.

2.  The defendants' Motion to Transfer Venue (Docket No. 7) is DENIED.

3.  A Scheduling Conference will be held on October 13, 2006, 2006, at 4:00 p.m.  The parties shall comply with the attached Order concerning that conference.

/s/ Mark L. Wolf
UNITED STATES DISTRICT JUDGE

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

<u>LAWRENCE SHUTZER</u>

v.

<u>S. ROTHSCHILD & CO. et al</u>

CIVIL ACTION
NO.    05-11486-MLW

### <u>NOTICE OF SCHEDULING CONFERENCE/MOTION HEARING</u>

An initial scheduling conference will be held in Courtroom No. 10 on the 5 floor at 4:00 p.m. on October 13, 2006, in accordance with Fed. R. Civ. P. 16(b) and Local Rule 16.1. The court considers attendance of the senior lawyers ultimately responsible for the case and compliance with sections (B), (C), and (D) of Local Rule 16.1[1] to be of the utmost importance. Counsel may be given a continuance only if actually engaged on trial. Failure to comply fully with this notice and with sections (B), (C), and (D) of Local Rule 16.1 may result in sanctions under Local Rule 1.3. Counsel for the plaintiff is responsible for ensuring that all parties and/or their attorneys, who have not filed an answer or appearance with the court, are notified of the scheduling conference date.

September 20, 2006
Date

/s/ Mark L. Wolf
United States District Judge

By:    /s/ Dennis O'Leary
Deputy Clerk

---

[1] These sections of Local Rule 16.1 provide:

(B) Obligation of counsel to confer. Unless otherwise ordered by the judge, counsel for the parties shall, pursuant to Fed.R.Civ.P. 26(f), confer no later than twenty-one (21) days before the date for the scheduling conference for the purpose of:

(1) preparing an agenda of matters to be discussed at the scheduling conference,

(2) preparing a proposed pretrial schedule for the case that includes a plan for discovery, and

(3) considering whether they will consent to trial by magistrate judge.

(C) Settlement proposals. Unless otherwise ordered by the judge, the plaintiff shall present written settlement proposals to all defendants no later than ten (10) days before the date for the scheduling conference. Defense counsel shall have conferred with their clients on the subject of settlement before the scheduling conference and be prepared to respond to the proposals at the scheduling conference.

(D) Joint statement. Unless otherwise ordered by the judge, the parties are required to file, no later than five (5) business days before the scheduling conference and after consideration of the topics contemplated by Fed.R.Civ.P. 16(b) and 26(f), a joint statement containing a proposed pretrial schedule, which shall include:

(1) a joint discovery plan scheduling the time and length for all discovery events, that shall

(a) conform to the obligation to limit discovery set forth in Fed. R. Civ. P. 26(b), and

(b) take into account the desirability of conducting phased discovery in which the first phase is limited to developing information needed for a realistic assessment of the case and, if the case does not terminate, the second phase is directed at information needed to prepare for trial; and

(2) a proposed schedule for the filing of motions; and

(3) certifications signed by counsel and by an authorized representative of each party affirming that each party and that party's counsel have conferred:

(a) with a view to establishing a budget for the costs of conducting the full course--and various alternative courses--of the litigation; and

(b) to consider the resolution of the litigation through the use of alternative dispute resolution programs such as those outlined in Local Rule 16.4.

To the extent that all parties are able to reach agreement on a proposed pretrial schedule, they shall so indicate. To the extent that the parties differ on what the pretrial schedule should be, they shall set forth separately the items on which they differ and indicate the nature of that difference. The purpose of the parties' proposed pretrial schedule or schedules shall be to advise the judge of the parties' best estimates of the amounts of time they will need to accomplish specified pretrial steps. The parties' proposed agenda for the scheduling conference, and their proposed pretrial schedule or schedules, shall be considered by the judge as advisory only.

(16b-notice-1.wpd - 12/00)                    [ntchrgcnf. schedcnfddl.]

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____

_____
            Plaintiff(s)

v.                          CIVIL ACTION
                            NO. _____

_____
            Defendant(s)

### SCHEDULING ORDER

WOLF, D.J.


    This case is governed procedurally by the 1992 Amendments to
the Local Rules of the United States District Court for the
District of Massachusetts (the "Local Rules"), which implement the
District's Civil Justice Expense and Delay Reduction Plan. Counsel
must, therefore, comply with the relevant Local Rules in the
litigation of this case.

    It is hereby ORDERED pursuant to Fed. R. Civ. P. 16(b) and
Local Rule 16(f) that:

[ ] 1.  _____ shall respond to the Complaint by
_____.


[ ] 2.  Any proposed party who has not yet been served shall be
served by_____.   Counsel shall within 14 days
thereafter file a return of service or a statement that service has
not been accomplished and that the claims against the previously
named proposed party shall be dismissed without prejudice.

[ ] 3.  Any Motion to Amend the pleadings, or any Motion to File
additional pleadings, shall be filed by_____, and
responses shall be filed as required by the applicable provisions
of the Federal Rules of Civil Procedure.

[ ] 4.  The parties shall by_____ make the
automatic document disclosure required by Local Rule 26.2(A) and,
if applicable, disclose the information required by Local Rule 35.1

[ ]  5.   The parties shall by_____ make the disclosure authorized by Local Rule 26.1(B)(1) and (2).

[ ]  6.   All dispositive motions except motions for summary judgment shall be filed by_____ and responses shall be filed fourteen days thereafter pursuant to Local Rule 7.1.

[ ]  7.   Discovery shall initially be limited to the issue(s) of _____, and shall be complete by _____.

[ ]  8.   Counsel for the parties shall meet at least once to explore the possibility of settlement and report to the court by _____ the status and prospects for settlement.

     If the case is not settled, the parties shall report whether they wish to participate in mediation to be conducted by a magistrate judge or attorney on the Court's panel of mediators.

[ ]  9.   A settlement conference, which must be attended by trial counsel with full settlement authority or with their clients, shall be held on _____, at _____.

[ ]  10.  A status and case management conference will be held by Magistrate Judge _____ on a date to be scheduled by him in _____.

[ ]  11.  Plaintiff(s) and/or Counterclaim or Third Party Plaintiff(s) shall by_____ designate experts and disclose the information described in Fed. R. Civ. P. 26(a)(2), concerning each expert.  Each other party shall by_____ designate expert(s) and disclose the information described in Fed. R. Civ. P. 26(a)(2).

[ ]  12.  All discovery shall be complete by_____.

[ ]  13.  Counsel for the parties shall confer and, by_____ _, file a report as to the prospects for settlement and whether either party feels there is a proper basis for filing a motion for summary judgment.

[ ]  14.  A scheduling conference will be held on_____ at _____ and must be attended by trial counsel with full settlement authority or with their client(s).  If appropriate, a schedule for filing motions for summary judgment will be established at this conference.

[ ]  15.  A final pretrial conference will be held on_____ _at_____ and must be attended by trial counsel with full settlement authority or with their client.  Counsel shall be prepared to commence trial as of the date of the final pretrial conference.

2

[ ]    16.    Trial shall commence on_____ .

[ ]    17.    This case is hereby referred to Magistrate Judge
               for all pretrial proceedings, including reports and
recommendations concerning any dispositive motions.

        All provisions and deadlines contained in this Order having
been established with the participation of the parties to this
case, any requests for modification must be presented to the judge
or magistrate judge, if referred for case management proceedings.
Any requests for extension will be granted only for good cause
shown supported by affidavits, other evidentiary materials, or
reference to pertinent portions of the record.  The request shall
be made by motion and shall contain the reasons for the request, a
summary of the discovery which remains to be taken, and a date
certain when the requesting party will complete the additional
discovery.
        Counsel are encouraged to seek an early resolution of this
matter.  Additional case management conferences may be scheduled by
the Court or upon the request of counsel.


                              By the Court,
                              DENNIS P. O'LEARY


_____            _____
Date                                Deputy Clerk


3

# EXHIBIT B

## Schafhauser, Paul

**From:** Schafhauser, Paul
**Sent:** Friday, October 06, 2006 11:58 AM
**To:** 'Lawrence M Slater'
**Cc:** 'dmckenna@riemerlaw.com'
**Subject:** RE: Schutzer

Larry:
    In light of your advice, it is my expectation that local counsel will appear at the conference.
Regards,
Paul


Paul H. Schafhauser, Esq.
Herrick, Feinstein, LLP
One Gateway Center
Newark, New Jersey 07102
Telephone: (973) 274-2098
Facsimile:  (973) 274-6414
pschafhauser@herrick.com


**From:** Lawrence M Slater [mailto:lawrenceslater@verizon.net]
**Sent:** Friday, September 29, 2006 3:53 PM
**To:** Schafhauser, Paul
**Subject:** RE: Schutzer

Paul,

I called the court and spoke with Judge Wolfe's courtroom clerk, Dennis O'Leary, who advised me that it is not Judge Wolf's common practice to allow the initial conference to be held by TCC.  He said that you would have to file a motion to do so or to have your local counsel represent your client in your stead. He further said that lately the judge has been in a "kinder, gentler mood" and he might allow it for good cause shown.

Larry

Lawrence M. Slater, Esq.
270 Union Street  Suite 202
Lynn, Ma 01901
781-592-0216
lawrenceslater@verizon.net

            -----Original Message-----
            **From:** Schafhauser, Paul [mailto:pschafhauser@herrick.com]
            **Sent:** Friday, September 29, 2006 3:05 PM
            **To:** lawrenceslater@verizon.net
            **Subject:** Schutzer



10/16/2006

Schutzer                                                              Page 2 of 2

Larry:

  Can we do the scheduling conference by telephone?  Please let me know.  Thanks.

Paul


Paul H. Schafhauser, Esq.
Herrick, Feinstein, LLP
One Gateway Center
Newark, New Jersey 07102
Telephone: (973) 274-2098
Facsimile: (973) 274-6414
pschafhauser@herrick.com

The information in this message may be privileged, intended only for the use of the named recipient. If
you received this communication in error, please immediately notify us by return e-mail and destroy the
original and any copies. Any tax advice contained in this communication is not intended and cannot be
used for the purpose of avoiding tax-related penalties.

10/16/2006

# EXHIBIT C

Message                                                                    Page 1 of 1

## Schafhauser, Paul

| | |
|---|---|
| **From:** | Lawrence M Slater [lawrenceslater@verizon.net] |
| **Sent:** | Thursday, October 05, 2006 2:36 PM |
| **To:** | Schafhauser, Paul |
| **Subject:** | JOINT STATEMENT FOR INITIAL SCHEDULING CONFERENCE 10-05-06.doc |
| **Attachments:** | JOINT STATEMENT FOR INITIAL SCHEDULING CONFERENCE 10-05-06.doc |

Paul,

Attached please find a proposed Joint Statement. Please give me a call after you have read it.

Larry

Lawrence M. Slater, Esq.

270 Union Street  Suite 202

Lynn, Ma 01901

781-592-0216

lawrenceslater@verizon.net

10/16/2006

# EXHIBIT D

## Schafhauser, Paul

| | |
|---|---|
| **From:** | Schafhauser, Paul |
| **Sent:** | Friday, October 06, 2006 11:54 AM |
| **To:** | 'Lawrence M Slater' |
| **Cc:** | 'dmckenna@riemerlaw.com' |
| **Subject:** | RE: JOINT STATEMENT FOR INITIAL SCHEDULING CONFERENCE 10-05-06.doc |

Larry:

As we discussed this morning, I agree to the proposed dates, and you may so advise the Court in an appropriate filing. With respect to the certification, however, I will be meeting with my client next week and will be in a better position to submit it then.

Thank you.

Regards,
Paul


Paul H. Schafhauser, Esq.
Herrick, Feinstein, LLP
One Gateway Center
Newark, New Jersey 07102
Telephone: (973) 274-2098
Facsimile: (973) 274-6414
pschafhauser@herrick.com


---

**From:** Lawrence M Slater [mailto:lawrenceslater@verizon.net]
**Sent:** Thursday, October 05, 2006 2:36 PM
**To:** Schafhauser, Paul
**Subject:** JOINT STATEMENT FOR INITIAL SCHEDULING CONFERENCE 10-05-06.doc

Paul,

Attached please find a proposed Joint Statement. Please give me a call after you have read it.

Larry


Lawrence M. Slater, Esq.

270 Union Street  Suite 202

Lynn, Ma 01901

781-592-0216

lawrenceslater@verizon.net


10/16/2006

# EXHIBIT E

## Schafhauser, Paul

**From:**    Lawrence M Slater [lawrenceslater@verizon.net]
**Sent:**    Tuesday, October 10, 2006 10:22 AM
**To:**      Schafhauser, Paul
**Subject:**  RE: JOINT STATEMENT FOR INITIAL SCHEDULING CONFERENCE 10-05-06.doc

Paul,

I requested that my assistant send it to you. Hopefully, you have it by now. Since you are not coming to the
scheduling conference, will you be able to reply to my settlement offer after you meet with your client today?
Please let me know. I think that this is a case that should settle.

Larry


Lawrence M. Slater, Esq.

270 Union Street  Suite 202

Lynn, Ma 01901

781-592-0216

lawrenceslater@verizon.net


    -----Original Message-----
    **From:** Schafhauser, Paul [mailto:pschafhauser@herrick.com]
    **Sent:** Tuesday, October 10, 2006 8:43 AM
    **To:** Lawrence M Slater
    **Cc:** Dennis E McKenna; Meegan B Casey
    **Subject:** RE: JOINT STATEMENT FOR INITIAL SCHEDULING CONFERENCE 10-05-06.doc

    Larry:
       If you could, please have your assistant PDF to me a copy of the joint statement that was filed with the
    Court.  Thanks for your courtesies.
    Regards,
    Paul


    Paul H. Schafhauser, Esq.
    Herrick, Feinstein, LLP
    One Gateway Center
    Newark, New Jersey 07102
    Telephone: (973) 274-2098
    Facsimile: (973) 274-6414
    pschafhauser@herrick.com


10/16/2006

Message

**From:** Lawrence M Slater [mailto:lawrenceslater@verizon.net]
**Sent:** Thursday, October 05, 2006 2:36 PM
**To:** Schafhauser, Paul
**Subject:** JOINT STATEMENT FOR INITIAL SCHEDULING CONFERENCE 10-05-06.doc

Paul,

Attached please find a proposed Joint Statement. Please give me a call after you have read it.

Larry

Lawrence M. Slater, Esq.

270 Union Street  Suite 202

Lynn, Ma 01901

781-592-0216

lawrenceslater@verizon.net

The information in this message may be privileged, intended only for the use of the named recipient. If you received this communication in error, please immediately notify us by return e-mail and destroy the original and any copies. Any tax advice contained in this communication is not intended and cannot be used for the purpose of avoiding tax-related penalties.

# EXHIBIT F

## Schafhauser, Paul

| | |
|---|---|
| **From:** | Schafhauser, Paul |
| **Sent:** | Wednesday, October 11, 2006 3:42 PM |
| **To:** | kathy_Boyce@mad.uscourts.gov |
| **Subject:** | FW: E-filing for ADR re: Shutzer v Rothschild |
| **Attachments:** | 1sxdjzfr.pdf |

Paul H. Schafhauser, Esq.
Herrick, Feinstein, LLP
One Gateway Center
Newark, New Jersey 07102
Telephone: (973) 274-2098
Facsimile: (973) 274-6414
pschafhauser@herrick.com

**From:** Jean C Zarrillo [mailto:JZarrillo@riemerlaw.com]
**Sent:** Wednesday, October 11, 2006 3:15 PM
**To:** Schafhauser, Paul
**Subject:** E-filing for ADR re: Shutzer v Rothschild

<<1sxdjzfr.pdf>>

*Jean Zarrillo*
*Administrative Assistant*
*Riemer & Braunstein*
*3 Center Plaza*
*Boston, MA 02108*
*Direct Dial: (617) 880-3406*
*Email: jzarrillo@riemerlaw.com*

=================================================================
This message contains confidential information, intended
only for the person(s) named above, which may also be
privileged. Any use, distribution, copying or disclosure
by any other person is strictly prohibited. If you have
received this message in error, please notify the e-mail
sender immediately, and delete the original message
without making a copy.

Riemer & Braunstein LLP
Counselors at Law

10/16/2006

This footnote also confirms that this email message has
been swept by Postini for the presence of computer viruses.
==========================================================

10/16/2006

# EXHIBIT G

LAWRENCE SHUTZER    )
             )
     Plaintiff,   )
             )
    v.      )  CIVIL ACTION NO.
             )  05-11486-MLW
S. ROTHSCHILD & CO., INC. and S. )
ROTHSCHILD MEN'S, INC. and MARK )
FREIDMAN        )
             )
     Defendants.  )

## ORDER

WOLF, D.J.            October 13, 2006

   On September 19, 2006, the court issued a Memorandum and Order denying defendants' motion to dismiss or to transfer venue. An attorney for each party was provided this decision electronically on September 20, 2006. A copy of the Memorandum and Order was also faxed to defendants' lead counsel, Paul Schafhauser, Esq. Pursuant to Federal Rule of Civil Procedure 12(a)(4)(A) defendants' answer to the complaint was due 10 days later, by September 30, 2006. As of the October 13, 2006 Scheduling Conference no answer had been filed. Therefore, plaintiff's oral motion for a default was allowed.

   The September 19, 2006 Memorandum and Order required that the parties comply with the Order attached to it concerning the scheduling conference set for October 13, 2006. That Order stated, in pertinent part, that "[t]he court considers attendance of the senior lawyers ultimately responsible for the case...to be of the utmost importance...Failure to comply fully with this notice...may

result in sanctions..."  September 20, 2006 Notice of Scheduling
Conference.  At the Scheduling Conference, the court was informed
by defendants' local counsel that Paul Schafhauser, Esq. of New
Jersey, who has been admitted pro hac vice for the purpose of this
case, is defendants' senior attorney responsible for this case.
Mr. Schafhauser, however, was not present for the conference.

Accordingly, it is hereby ORDERED that:

1. Each defendant is defaulted for failure to file a timely
answer to the complaint.

2. Any defendant who wishes to attempt to show cause why the
default against that defendant should be removed shall file a
motion, memorandum, and supporting affidavit by October 30, 2006.
If Mr. Schafhauser wishes to continue to represent any or all of
the defendants in this case, he shall, by October 30, 2006, pay to
the Clerk of this District Court sanctions in the amount of $1000
pursuant to Federal Rule of Civil Procedure 16(f).

3. Plaintiff shall, by November 15, 2006, respond to any
motion to remove default.

4. If no motion to remove default is then pending, plaintiff
shall, by November 17, 2006, file a motion for default judgment and
supporting affidavit(s) in the manner required by Federal Rule of
Civil Procedure 55.  Defendants shall respond by December 8, 2006.


                              /s/ Mark L. Wolf

UNITED STATES DISTRICT JUDGE

# EXHIBIT H

# HERRICK

New York
Newark
Princeton

PAUL H. SCHAFHAUSER
PARTNER
Direct Tel:   973.274.2098
Direct Fax:   973.274.6414

Email:  pschafhauser@herrick.com

October 18, 2006

**BY FEDERAL EXPRESS**

Clerk of the Court
United States District Court
  for the District of Massachusetts
1 Courthouse Way
Boston, MA 02210

        Re:    Lawrence Shutzer v. S. Rothschild & Co., Inc., et al.
                <u>Civil Action No.: 05-11486</u>

Dear Sir/Madam:

        I am lead counsel for the defendants in connection with the above-referenced matter. By Order dated October 13, 2006, the Court directed me to pay the sum of $1,000 pursuant to Fed. R. Civ. P. 16(f) if I wish to continue to represent any or all of the defendants in connection with this matter. Accordingly, as directed by the Court, I respectfully enclose a check in the amount of $1,000.00.

        Thank you.

                      Respectfully yours,

                      Paul H. Schafhauser

HERRICK, FEINSTEIN LLP
A New York limited
liability partnership
including New York
professional corporation

HF 3919v.1 #04916/0046 10/18/2006
ONE GATEWAY CENTER, NEWARK, NJ 07102 • TEL 973.274.2000 • FAX 973.274.2500 • www.herrick.com

ORIGINAL DOCUMENT PRINTED ON CHEMICAL REACTIVE PAPER WITH MICROPRINTED BORDER - SEE REVERSE SIDE FOR COMPLETE SECURITY FEATURES

**HERRICK FEINSTEIN LLP**
ATTORNEY BUSINESS ACCOUNT
2 PENN PLAZA E.  11TH FLOOR
NEWARK, NJ  07105-2257

Fleet  www.fleet.com

55-33/212

2611

Oct 17, 2006

PAY TO THE
ORDER OF   Clerk of the United States Dist. Court   $ 1,000.00

One Thousand and x x/100                                         DOLLARS

MEMO  filing fee - 4916-0046

⑈002611⑈ ⑊021200339⑊ 41540 25571⑈

THIS DOCUMENT CONTAINS HEAT SENSITIVE INK. TOUCH OR PRESS HERE - RED IMAGE DISAPPEARS WITH HEAT.

# EXHIBIT I

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

- - - - - - - - - - - - - - - - - - - - - - - - - - - - x

| | |
|---|---|
| LAWRENCE SHUTZER, | : Case No.: 1:05-CV-11486 |
| | : |
| Plaintiff, | : Hon. Mark L. Wolf, U.S.D.J. |
| | : |
| vs. | : |
| | : **ANSWER, AFFIRMATIVE DEFENSES** |
| S. ROTHSCHILD & CO., INC. and S. | : **AND JURY DEMAND** |
| ROTHSCHILD MEN'S, INC. and MARK | : |
| FRIEDMAN, | : |
| | : |
| Defendants. | : |
| | : |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - x

Defendants S. Rothschild & Co., Inc. ("SRC"), S. Rothschild Men's, Inc. ("RMI") and

Mark Friedman ("Friedman"), by and through their counsel, Herrick, Feinstein LLP and Riemer

& Braunstein LLP, state as follows by way of answer to the complaint (the "Complaint") of

plaintiff Lawrence Shutzer ("Shutzer"):

### PARTIES

1.      Defendants admit that plaintiff is an individual, but deny knowledge or

information sufficient to form a belief as to the truth or falsity of the remaining allegations

contained in Paragraph 1 of the Complaint.

2.      Defendants admit that SRC is a corporation having a principal place of business

in New York, deny the remaining allegations contained in Paragraph 2 of the Complaint, and

further aver that SRC is formed and organized under the laws of the State of New York.

3.      Defendants admit the allegations contained in Paragraph 3 of the Complaint.

4.      Defendants admit that RMI is a wholly owned subsidiary of SRC, neither admit

nor deny the remaining allegations contained in Paragraph 3 of the Complaint insofar as they

constitute legal conclusions, and further aver that SRC and RMI are operated by the same management team.

5.      Defendants admit the allegations contained in Paragraph 5 of the Complaint.

### JURISDICTION AND VENUE

6.      Defendants admit the allegations contained in Paragraph 6 of the Complaint.

7.      Defendants neither admit nor deny the allegations contained in Paragraph 7 of the Complaint, as defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of same, and such allegations constitute legal conclusions in any event.

8.      Defendants neither admit nor deny the allegations contained in Paragraph 8 of the Complaint, as such allegations constitute legal conclusions.

9.      Defendants deny knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 9 of the Complaint.

10.      Defendants admit that Shutzer met with Friedman in or about December 1999 and/or early 2000, but deny plaintiff's allegations regarding the nature of such discussions, except to admit that Friedman was interested in expanding the men's clothing business of SRC. Defendants deny knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations contained in Paragraph 10 of the Complaint.

11.      Defendants admit that the parties engaged in discussions regarding a potential acquisition of Mimco, Inc. ("Mimco"), but deny that defendants engaged in discussions regarding any "merger of the companies." Defendants further admit that the parties did not enter into a signed, written contract in furtherance of such discussions, and that SRC thereafter hired certain former employees of Mimco, including Shutzer, on an at-will employment basis. Defendants deny the remaining allegations contained in Paragraph 11 of the Complaint.

12.      Defendants admit that Friedman and Shutzer met on several occasions to discuss

- 2 -

potential business opportunities on behalf of SRC and/or RMI. Defendants deny the remaining allegations contained in Paragraph 12 of the Complaint, including plaintiff's allegations regarding any "agreement" on the terms and conditions alleged therein.

13.     Defendants are unaware of any entity named "RMC" and, accordingly, defendants deny knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 13 of the Complaint regarding RMC. Defendants admit, however, that RMI was incorporated, and that SRC hired Shutzer as an at-will employee during 2000. Defendants deny the remaining allegations contained in Paragraph 13 of the Complaint, including any allegation that Shutzer "relied" on any "agreement" between Shutzer and Friedman.

14.     Defendants deny the allegations contained in Paragraph 14 of the Complaint.

15.     Defendants deny the allegations contained in Paragraph 15 of the Complaint.

16.     Defendants admit that SRC hired Shutzer as an at-will employee during 2000, and further admit that Shutzer was given various duties and responsibilities as an employee of SRC. Defendants deny the remaining allegations contained in Paragraph 16 of the Complaint.

17.     Defendants deny the allegations contained in Paragraph 17 of the Complaint.

18.     Defendants deny the allegations contained in Paragraph 18 of the Complaint.

19.     Defendants deny knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 19 of the Complaint.

20.     Defendants deny the allegations contained in Paragraph 20 of the Complaint.

21.     Defendants deny the allegations contained in Paragraph 21 of the Complaint.

22.     Defendants neither admit nor deny the allegations contained in Paragraph 22 of the Complaint, as such allegations constitute legal conclusions.

- 3 -

## COUNT I

23.    Defendants repeat and allege each and every response to the allegations contained in the foregoing paragraphs of the Complaint, as if same were fully set forth herein.

24.    Defendants deny the allegations contained in Paragraph 24 of the Complaint.

## COUNT II

25.    Defendants repeat and allege each and every response to the allegations contained in the foregoing paragraphs of the Complaint, as if same were fully set forth herein.

26.    Defendants deny the allegations contained in Paragraph 26 of the Complaint.

## COUNT III

27.    Defendants repeat and allege each and every response to the allegations contained in the foregoing paragraphs of the Complaint, as if same were fully set forth herein.

28.    Defendants deny the allegations contained in Paragraph 28 of the Complaint.

29.    Defendants deny the allegations contained in Paragraph 29 of the Complaint.

30.    Defendants deny the allegations contained in Paragraph 30 of the Complaint.

31.    Defendants deny the allegations contained in Paragraph 31 of the Complaint.

## COUNT IV

32.    Defendants repeat and allege each and every response to the allegations contained in the foregoing paragraphs of the Complaint, as if same were fully set forth herein.

33.    Defendants deny the allegations contained in Paragraph 33 of the Complaint, and further note that the Court has dismissed Count IV of the Complaint in any event.

34.    Defendants deny the allegations contained in Paragraph 34 of the Complaint, and further note that the Court has dismissed Count IV of the Complaint in any event.

35.    Defendants deny the allegations contained in Paragraph 35 of the Complaint, and further note that the Court has dismissed Count IV of the Complaint in any event.

- 4 -

## COUNT V

36.     Defendants repeat and allege each and every response to the allegations contained in the foregoing paragraphs of the Complaint, as if same were fully set forth herein.

37.     Defendants deny the allegations contained in Paragraph 38 of the Complaint, and further note that the Court has dismissed Count V of the Complaint in any event.

## COUNT VI

38.     Defendants repeat and allege each and every response to the allegations contained in the foregoing paragraphs of the Complaint, as if same were fully set forth herein.

39.     Defendants deny the allegations contained in Paragraph 39 of the Complaint.

40.     Defendants deny the allegations contained in Paragraph 40 of the Complaint.

## COUNT VII

41.     Defendants repeat and allege each and every response to the allegations contained in the foregoing paragraphs of the Complaint, as if same were fully set forth herein.

42.     Defendants deny the allegations contained in Paragraph 42 of the Complaint.

43.     Defendants deny the allegations contained in Paragraph 43 of the Complaint.

WHEREFORE, defendants demand judgment dismissing the Complaint, granting legal fees and costs of suit, and granting such other and further relief as this Court may deem just and equitable.

## AFFIRMATIVE DEFENSES

1.     The Complaint is barred, both in whole and in part, insofar as it fails to state a cause of action upon which relief may be granted.

2.     The Complaint is barred, both in whole and in part, by the Statute of Frauds.

3.     The Complaint is barred, both in whole and in part, by the Statute of Limitations.

- 5 -

4.      The Complaint is barred, both in whole and in part, insofar as the parties intended to be bound only by a signed agreement, and no such signed agreement was ever executed between the parties regarding the matters alleged in the Complaint.

5.      The Complaint is barred, both in whole and in part, because Shutzer was an at-will employee of SRC and, accordingly, could be terminated with or without cause.

6.      The Complaint is barred, both in whole and in part, by the lack of any reliance by Shutzer on any alleged agreements, promises and/or commitments.

7.      The Complaint is barred, both in whole and in part, because any alleged reliance by Shutzer was not reasonable or justified under the circumstances.

8.      The Complaint is barred, both in whole and in part, by the doctrines of estoppel, waiver and/or laches.

9.      The Complaint is barred, both in whole and in part, by the doctrine of unclean hands.

10.     The Complaint is barred, by in whole and in part, by the doctrine of setoff.

11.     The Complaint is barred, by in whole and in part, by an accord and satisfaction, insofar as Shutzer has already been paid for the matters alleged in the Complaint.

12.     The Complaint is barred, by in whole and in part, by Shutzer's failure to perform his duties and responsibilities.

13.     At all relevant times, plaintiff failed to perform certain conditions precedent to the duties, if any, of defendants. Plaintiff's non-performance excuses defendants' obligations.

14.     Defendants have completely and fully performed and discharged any and all obligations and legal duties arising out of the matters alleged in the Complaint.

15.     Friedman is an improper party.

- 6 -

16.    The Complaint is barred, both in whole and in part, for the reasons set forth in the

Memorandum and Order of the Court dated September 19, 2006.

17.    Plaintiff has failed to mitigate any alleged damages.

WHEREFORE, defendants demand judgment dismissing the Complaint, granting legal

fees and costs of suit, and granting such other and further relief as this Court may deem just and

equitable.

Date:                                              S. ROTHSCHILD & CO., INC., S.
                                                   ROTHSCHILD MEN'S, INC. and MARK
                                                   FRIEDMAN

                                                   By their attorneys,


                                                   _____
                                                   Paul H. Schafhauser (admitted pro hac vice)
                                                   HERRICK, FEINSTEIN LLP
                                                   2 Park Avenue
                                                   New York, NY 10016
                                                   (212) 592-1400


                                                   _____
                                                   Dennis E. McKenna BBO # 556428
                                                   RIEMER & BRAUNSTEIN LLP
                                                   Three Center Plaza
                                                   Boston, Massachusetts 02108
                                                   (617) 523-9000

## JURY DEMAND

Defendants demand trial by jury of all issues so triable.

Date:                                              S. ROTHSCHILD & CO., INC., S.
                                                   ROTHSCHILD MEN'S, INC. and MARK
                                                   FRIEDMAN

                                                   By their attorneys,

                                                   _____
                                                   Paul H. Schafhauser (admitted pro hac vice)
                                                   HERRICK, FEINSTEIN LLP
                                                   2 Park Avenue
                                                   New York, NY 10016
                                                   (212) 592-1400


                                                   _____
                                                   Dennis E. McKenna BBO # 556428
                                                   RIEMER & BRAUNSTEIN LLP
                                                   Three Center Plaza
                                                   Boston, Massachusetts 02108
                                                   (617) 523-9000


HF 3414140v.3 #04916/0046 10/18/2006 09:08 AM