UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| LAWRENCE SHUTZER,  )<br><br>Plaintiff,  )<br><br>v.  )<br><br>S. ROTHSCHILD & CO., INC. and S.  )<br>ROTHSCHILD MEN'S, INC. and MARK  )<br>FRIEDMAN,  )<br><br>Defendants.  ) | CIVIL ACTION NO.<br>05-11486-MLW |

**MOTION FOR LEAVE TO FILE REPLY
MEMORANDUM AND AFFIDAVIT IN FURTHER SUPPORT
OF THE DEFENDANTS' MOTION TO SET ASIDE DEFAULT**

Defendants S. Rothschild & Co., Inc., S. Rothschild Men's, Inc. and Mark Friedman (the "Defendants") hereby request leave to submit the Reply Memorandum attached hereto as Exhibit 1, together with the Reply Affidavit of Paul H. Schafhauser attached hereto as Exhibit 2, in further support of the Defendants' Motion to Set Aside Default. As grounds for this Motion, the Defendants state as follows:

1.    On October 13, 2006, the Court held a scheduling conference in this matter.

2.    During the conference, the Court issued an Order of Entry of Default against the Defendants for their failure to file a timely Answer to the Complaint. In the Order, the Court instructed any Defendant who wished to attempt to show cause why the default should be removed to file a motion, memorandum, and supporting affidavit by October 30, 2006, and instructed the Plaintiff to respond to any such motion by November 15, 2006. The Court also instructed the Defendants' lead attorney, Paul H. Schafhauser, of Herrick Feinstein LLP, who did

not attend the scheduling conference, to pay the sum of $1,000 by October 30, 2006 if he wished to continue to represent any of the Defendants.

3.    On October 18, 2006, the Defendants[1] moved to set aside the entry of default.[2]

4.    On November 15, 2006, the Plaintiff filed his Opposition to the Plaintiffs' Motion to Set Aside Default together with an Affidavit from his attorney, Lawrence M. Slater. Simultaneously therewith, the Plaintiff also filed a Motion for Default Judgment.[3] Although the Plaintiff's papers confirm Mr. Schafhauser's account of the circumstances that led to his failure to appear at the scheduling conference, the Plaintiff nonetheless argues that the default should not be set aside, primarily on the grounds that the Defendants do not have meritorious defenses to the Plaintiff's claims.

5.    The Defendants' reply papers briefly summarize the Defendants' defenses and direct the Court to the discussion of such defenses contained in the Defendants' Motion to Set Aside Default and in the extensive papers filed on the Defendants' behalf in support of their motion to dismiss the Complaint. The reply papers also address certain factual errors contained in Mr. Slater's Affidavit. Finally, the reply papers inform the Court that Mr. Schafhauser's law

---

[1] The Court's October 13, 2006 default order refers to the "Defendants." Therefore, in an excess of caution, the Defendants have treated the order as though it applies to all three Defendants, including Defendant Mark Friedman, against whom all claims were dismissed by order dated September 19, 2006. The Defendants believe that a more appropriate reading of the Court's order is that it applies only to Defendants S. Rothschild & Co., Inc. and S. Rothschild Men's, Inc., and request that the Court clarify this question when it rules on the pending Motion to Set Aside Default.

[2] Although Mr. Schafhauser submitted the Motion on the Defendants' behalf, he subsequently moved, prior to the expiration of the October 30, 2006 deadline, to withdraw as counsel for the Defendants. On the same date that Mr. Schafhauser moved to withdraw as counsel, David S. Weiss and Laura E. D'Amato of Goulston & Storrs, P.C. entered their appearances as counsel for the Defendants.

[3] The Defendants intend to file a separate opposition to that motion, but state herein that the motion should be denied because it is premature under this Court's October 13, 2006 default order, which only provided for the filing of a Motion for Default Judgment if the Defendants failed to move to set aside the default. Because the Defendants have moved to set aside the default, the Plaintiff's Motion for Default Judgment is untimely. Moreover, the Plaintiff's Motion is not supported by affidavits as required by the Court's order and by Fed. R. Civ. P. 55. The Motion should also be denied for the reasons set forth in the Defendants' Motion to Set Aside Default and in this Reply Memorandum.

firm, Herrick, Feinstein LLP, has, on this date, forwarded a check to Mr. Slater representing the full amount of fees and costs Mr. Slater asserts will have been incurred in connection with the October 13, 2006 scheduling conference (and any rescheduled conference) and the pending motion to vacate the default.

WHEREFORE, Defendants S. Rothschild & Co., Inc., S. Rothschild Men's, Inc. and Mark Friedman respectfully request that the Court grant this Motion, and issue an order permitting the Defendants to file the Reply Memorandum in Support of the Defendants' Motion to Set Aside Default Judgment that is attached hereto as Exhibit 1 together with the Reply Affidavit of Paul H. Schafhauser that is attached hereto as Exhibit 2.

Respectfully submitted,

/s/ Laura E. D'Amato
David S. Weiss (BBO # 521090))
Laura E. D'Amato (BBO# 641733)
GOULSTON & STORRS, P.C.
400 Atlantic Avenue
Boston, MA 02110
(617) 574-4112

Dated:  November 22, 2006

3

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(A)(2)

The undersigned counsel for the Defendants certifies that she has conferred with counsel for the plaintiff, Lawrence M. Slater, Esq., in a good faith effort to resolve the issues presented in this Motion to the greatest extent possible in compliance with the provisions of Local Rule 7.1(A)(2).

/s/ Laura E. D'Amato
Laura E. D'Amato (BBO# 641733)

Dated: November 22, 2006

4

## Certificate of Service

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on November 22, 2006

/s/ Laura E. D'Amato
Laura E. D'Amato (BBO# 641733)

5

**EXHIBIT 1**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| LAWRENCE SHUTZER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| S. ROTHSCHILD & CO., INC. and S. | ) |
| ROTHSCHILD MEN'S, INC. and MARK | ) |
| FRIEDMAN, | ) |
| | ) |
| Defendants. | ) |
| | ) |

CIVIL ACTION NO.
05-11486-MLW

## REPLY MEMORANDUM IN SUPPORT OF THE
## DEFENDANTS' MOTION TO SET ASIDE DEFAULT

Defendants S. Rothschild & Co., Inc., S. Rothschild Men's, Inc. and Mark Friedman (the "Defendants") hereby submit this Reply Memorandum in further support of their Motion to Set Aside Default.

### Background

On October 13, 2006, the Court held a scheduling conference in this matter. During the conference, the Court issued an Order of Entry of Default against the Defendants for their failure to file a timely Answer to the Complaint. In the Order, the Court instructed any Defendant who wished to attempt to show cause why the default should be removed to file a motion, memorandum, and supporting affidavit by October 30, 2006, and instructed the Plaintiff to respond to any such motion by November 15, 2006. The Court also instructed the Defendants' lead attorney, Paul H. Schafhauser, who did not attend the scheduling conference, to pay the sum of $1,000 by October 30, 2006 if he wished to continue to represent any of the Defendants.

On October 18, 2006, the Defendants[1] moved to set aside the entry of default.[2]  On

November 15, 2006, the Plaintiff filed an Opposition to the Defendants' Motion to

Remove Default.[3]  The Defendants respectfully submit this Reply Memorandum in further

support of their Motion to Set Aside Entry of Default.

### Argument

1.    THE PLAINTIFFS' PAPERS CONFIRM MR. SCHAFHAUSER'S ACCOUNT OF
      THE CIRCUMSTANCES THAT LED TO HIS FAILURE TO APPEAR AT THE
      OCTOBER 13, 2006 SCHEDULING CONFERENCE

In the Affidavit of Paul H. Schafhauser (as corrected on November 15, 2006) submitted

in support of the Defendants' Motion to Set Aside Entry of Default, Mr. Schafhauser explains in

great detail the circumstances that led to his understanding that local counsel could appear at the

October 13, 2006 scheduling conference without leave of court.  While in no way attempting to

place blame on Mr. Slater for Mr. Schafhauser's failure to appear at the conference, Mr.

Schafhauser indicates that an email he received from Mr. Slater on September 29, 2006 gave him

the impression, which he now understands to be erroneous, that the Court's clerk, Dennis

O'Leary, had informed Mr. Slater that local counsel could appear at the scheduling conference in

---

[1] The Court's October 13, 2006 default order refers to the "Defendants."  Therefore, in an excess of caution, the Defendants have treated the order as though it applies to all three Defendants, including Defendant Mark Friedman, against whom all claims were dismissed by order dated September 19, 2006.  The Defendants believe that a more appropriate reading of the Court's order is that it applies only to Defendants S. Rothschild & Co., Inc. and S. Rothschild Men's, Inc., and request that the Court clarify this question when it rules on the pending Motion to Set Aside Default.

[2] Although Mr. Schafhauser submitted the Motion on the Defendants' behalf, he subsequently moved, prior to the expiration of the October 30, 2006 deadline, to withdraw as counsel for the Defendants.  On the same day that Mr. Schafhauser moved to withdraw, the undersigned counsel, David S. Weiss and Laura E. D'Amato of Goulston & Storrs, P.C., filed notices of appearance as counsel for the Defendants.

[3] The Plaintiff simultaneously filed a Motion for Default Judgment.  The Defendants intend to file a separate opposition to that motion, but state herein that the motion should be denied because it is premature under this Court's October 13, 2006 default order, which only provided for the filing of a Motion for Default Judgment if the Defendants failed to move to set aside the default.  Because the Defendants have moved to set aside the default, the Plaintiff's Motion for Default Judgment is untimely.  Moreover, the Plaintiff's Motion is not supported by affidavits as required by the Court's order and by Fed. R. Civ. P. 55.  The Motion should also be denied for the reasons set forth in the Defendants' Motion to Set Aside Default and in this Reply Memorandum.

Mr. Schafhauser's stead without leave of court. See Affidavit of Paul H. Schafhauser dated

November 15, 2006 ("Schafhauser Aff."), ¶¶ 19, 20, and Exhibit B thereto. Although Mr. Slater

does not specifically concede that his email was subject to the interpretation espoused by Mr.

Schafhauser, he does confirm that he did in fact send the email relied upon by Mr. Schafhauser

and that such email contains an accurate summary of Mr. Slater's conversation with Mr.

O'Leary. See Affidavit of Lawrence M. Slater, Esq. dated November 15, 2006 ("Slater Aff."), ¶

8 and Exhibit C thereto; Reply Affidavit of Paul H. Schafhauser dated November 21, 2006, filed

herewith, ("Schafhauser Reply Aff."), ¶2. Thus, with the exception of some minor discrepancies

about the exact order of Mr. Slater's and Mr. Schafhauser's communications, the circumstances

that led to Mr. Schafhauser's failure to appear at the conference are not in dispute.[4] Furthermore,

Mr. Slater acknowledges that he was aware of, and *had no objection to*, local counsel appearing

in Mr. Schafhauser's stead. See Slater Aff., ¶¶ 3, 8, 10 and Exhibit D thereto; Schafhauser Reply

Aff., ¶4. Therefore, notwithstanding any burden Mr. Schafhauser's absence placed upon the

---

[4] On a slightly different issue, Mr. Slater suggests in his Affidavit that Mr. Schafhauser failed to confer with him regarding the joint statement required by Local Rule 16.1(D). This suggestion is mistaken. In fact, the undisputed facts demonstrate that Mr. Schafhauser had numerous conversations and exchanged numerous emails with Mr. Slater about the joint statement, and there is no question that the joint statement was submitted to the Court in a timely manner. See Slater Aff., ¶¶ 4, 8, 11; Schafhauser Reply Aff., ¶¶ 5 - 7. Although Mr. Schafhauser was not able to respond to the initial message Mr. Slater left for him on September 22, 2006 (a Friday) about the joint statement, he did phone him the following Tuesday, at which time they conferred about the joint statement for the first of many times over the course of the following two weeks. See Schafhauser Reply Aff., ¶ 6 (citing to Slater Aff., ¶ 8, stating "In this phone conversation we conferred, as required by the Court order"). Indeed, Mr. Schafhauser's diligence in working with Mr. Slater during the weeks of September 25 and October 2, during which time Mr. Schafhauser was traveling extensively, belies any suggestion that Mr. Schafhauser failed to meet his obligations with respect to the joint statement. Moreover, Mr. Schafhauser's conduct in preparing the joint statement should have no bearing on the current issue before the Court - whether the default against the Defendants for failure to answer the complaint should be lifted. Mr. Slater's suggestion that Mr. Schafhauser failed to respond to his settlement in good faith is also unsupported by the record and is immaterial to the current issue before the Court. See Schafhauser Reply App., ¶7 - 9.

Court, and in no way minimizing any such burden, the Defendants submit that the Plaintiff could

not have been prejudiced by Mr. Schafhauser's failure to appear at the conference.[5]

2.    ANY VIOLATION OF THE COURT'S RULES OR PRACTICES WAS NOT
      WILLFUL

By confirming Mr. Schafhauser's account of the circumstances that led to his failure to

appear at the October 13, 2006 scheduling conference, Mr. Slater's Affidavit reinforces that Mr.

Schafhauser did not deliberately violate any Court rule or practice. See Schafhauser Aff., ¶¶ 22-

23. This weighs heavily in favor of a determination that Mr. Schafhauser's conduct was not

willful, which is a key factor in determining whether to set aside an entry of default. See Coon v.

Greneir, 867 F.2d 73, 76 (1st Cir. 1989). Moreover, the Defendants' failure to file a timely

answer to the Complaint was also unintentional. A number of factors, including Mr.

Schafhauser's travel schedule and a change in the staffing on this matter, all contributed to this

oversight. See Schafhauser Aff., ¶¶ 35, 36.

Courts have looked at factors similar to these in determining whether a parties' conduct is

willful. For example, in Debreceni v. Route USA Real Estate, Inc., 773 F.Supp. 498 (D. Mass.

1990) this Court set aside an entry of default where the defendants failed to file an answer to the

complaint for more than three weeks after the expiration of their third extension of time for

response. See Debreceni, 773 F. Supp. at 499. The Court concluded that the inadvertent and

unintentional problems of communication between the defendants' attorneys and their local

counsel concerning who would file the answer resulted in defendants' failure to file their answer

by the time agreed upon. See id. Noting that there was no indication that the plaintiff had been

prejudiced or that the defendants or their counsel had acted in bad faith, the Court ruled that in

---

[5] Nonetheless, as discussed in paragraph 4 below, Mr. Schafhauser's firm has on this day paid the amount Mr. Slater has identified as his fees to attend the October 13, 2006 conference, to prepare his papers in opposition to the Defendants' Motion to Set Aside Default, and to attend any rescheduled scheduling conference (although it seems inappropriate for him to be reimbursed for his attendance at both conferences).

light of the policy favoring resolution of the disputes on the merits, it was appropriate to set aside the entries of default. See id. Moreover, in Weisel v. Pischel, 197 F.R.D. 231 (E.D.N.Y. 2000) the United States District Court for the Eastern District of New York held that an attorneys' conduct was not "willful" where he (i) failed to answer the counterclaims asserted against his client by the original due date, (ii) after receiving an extension of time to file an answer, still failed to file an answer in a timely manner, and (iii) failed to file papers in opposition to the defendants' motion for summary judgment. See Weisel, 197 F.R.D. at 239. The Court, giving the plaintiffs' attorney the "benefit of the doubt," found that "a confluence of factors, including laxness and negligence, was to blame for counsel's default." See id. Bearing in mind the strong preference for resolution of disputes on the merits, the Court found that counsel's conduct was not willful and did not exhibit bad faith. See id. In this case, as distinguished from Weisel, any oversight on the part of the Defendants or their counsel was in no way the result of any failure to vigorously attend to or defend the case. To the contrary, the Defendants and their counsel have diligently defended this matter for more than fifteen months. Their diligence, coupled with the circumstances surrounding their recent errors, weigh heavily in favor of a determination that their conduct was not willful.

3.    THE DEFENDANTS HAVE MERITORIOUS DEFENSES TO THE PLAINTIFF'S
      CLAIMS

The Plaintiff argues in his papers that the default should not be lifted because the Defendants do not have meritorious defenses to the Plaintiff's claims. This argument is wholly unsupported by the record in this matter. In fact, this Court has already dismissed several of the Plaintiff's claims, including all of his claims against Defendant Mark Friedman. See Memorandum and Order dated September 19, 2006, p. 1-11. In addition, the Defendants have

demonstrated that they have numerous meritorious defenses to the Plaintiff's remaining claims, including:

    (i)      The parties never entered into an agreement;

    (ii)    In the absence of any written contract, and in circumstances in which the actions of the Plaintiff do not as a matter of fact establish part performance, the Plaintiff's claims are barred as a matter of law; and

    (iii)   The Defendant was, at best, an at-will employee, and, as such, he was subject to dismissal with or without cause.

The legal and factual foundation for these defenses are set forth in detail in the Defendants' Memoranda in support of their Motions to Set Aside Default and to Dismiss the Complaint. <u>See</u> Schafhauser Reply Aff., ¶ 10 - 11, and Exhibits A (copies of the Defendants' moving and reply briefs in support of their motion to dismiss and/or transfer this matter) and B (copy of the Court's September 19, 2006 Order) thereto; <u>see also</u> Defendants' Memorandum in Support of Motion to Set Aside Default, pages 4-5. Having set forth facts to support their defenses, the Defendants have met their burden to establish that they have meritorious defenses to the Plaintiff's claims.

Indeed, it is well established that "the 'meritorious defense' component of the test for setting aside a default does not go so far as to require that the movant demonstrate a likelihood of success on the merits. Rather, a party's averments need only plausibly suggest the existence of facts which, if proven at trial, would constitute a cognizable defense." <u>See</u> <u>Coon v. Grenier</u>, 867 F.2d 73, 77 (1st Cir. 1989); <u>see also</u> <u>Teamsters, Chaffeurs v. Superline TR.</u>, 953 F.2d 17, 21 (1st Cir. 1992), and cases cited (stating that the moving party need not establish that it has an ironclad defense which will guarantee success at trial, but must establish that it has a potentially meritorious defense, which, if proven, will bring success in its wake). Here, the Plaintiff does not even argue that the Defendants' written submissions fall short of making the required showing, nor does he attempt to challenge the assertion of such defenses to the Plaintiff's claims.

Instead, the Plaintiff completely ignores the Defendants' written submissions and argues that the

Defendants do not have any meritorious defenses simply because Mr. Schafhauser allegedly

failed to articulate such defenses during a telephone conference with Mr. Slater about settlement.

See Plaintiff's Opposition to Motion to Set Aside Default, p. 1. Even if, as Mr. Slater suggests,

Mr. Schafhauser did not communicate his clients' defenses during such call, Mr. Schafhauser's

failure to do so can hardly be construed as an admission that the Defendants lack a defense to the

Plaintiff's claims, especially in light of the Defendants' written submissions in this matter.

4.    THE DEFENDANTS' FORMER COUNSEL HAS PAID THE PLAINTIFF'S COSTS

     In his papers, the Plaintiff requests that in the event the Court grants the Defendants'

motion to aside the default in this matter, the Court should order the Defendants to pay the

Plaintiff's fees in the amount of $2,362.50. In order to eliminate the issue, and to make it

unnecessary for the Court to divert its attention from the question of whether the default should

be set aside to address the ancillary issue of legal fees, Herrick, Feinstein LLP has paid Mr.

Slater the amount he has requested in legal fees to attend the October 13, 2006 conference, to

prepare his papers in opposition to the Defendants' Motion to Set Aside Default, and to attend

any rescheduled scheduling conference (although it seems inappropriate for him to be

reimbursed for his attendance at both conferences because he would have been required to attend

one of them anyway). See Schafhauser Reply Aff., ¶ 14, and Exhibit C thereto. Therefore, the

Court need not address this issue.

7

Respectfully submitted,


/s/ Laura E. D'Amato
David S. Weiss (BBO # 521090)
Laura E. D'Amato (BBO # 641733)
GOULSTON & STORRS, P.C.
400 Atlantic Avenue
Boston, MA 02110
(617) 574-4112


Dated: November 22, 2006

**EXHIBIT 2**

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

- - - - - - - - - - - - - - - - - - - - - - - - - x

LAWRENCE SHUTZER,

                   Plaintiff,

vs.

S. ROTHSCHILD & CO., INC. and S.
ROTHSCHILD MEN'S, INC. and MARK
FRIEDMAN,

                   Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - x

Case No.: 1:05-CV-11486

Hon. Mark L. Wolf, U.S.D.J.

**REPLY AFFIDAVIT OF
PAUL H. SCHAFHAUSER**

STATE OF NEW YORK  )
                      ) ss.:
COUNTY OF NEW YORK  )

PAUL H. SCHAFHAUSER, being duly sworn, deposes and says:

1.     I am a member of the firm of Herrick, Feinstein LLP. Prior to the Court's entry of default in this matter, I served as lead counsel for the defendants. I respectfully submit this reply affidavit in further support of defendants' motion to set aside the default entered by the Court.

2.     Plaintiff's counsel, Lawrence M. Slater, Esq., has submitted an affidavit to the Court dated November 15, 2006, wherein Mr. Slater confirms that he and I communicated regarding the possibility of inquiring whether the initial conference might be held by telephone. (Affidavit of Lawrence M. Slater, Esq. dated November 15, 2006 ("Slater Affidavit"), ¶ 8). More specifically, Mr. Slater confirms that he contacted the Court's courtroom clerk, Mr. Dennis O'Leary, regarding the possibility of a telephonic initial conference and, after doing so, advised me by email me that Mr. O'Leary had advised that a motion would be required for leave to

conduct a telephone conference or, in the alternative, to have local counsel appear in my stead. (Id. at ¶ 8 and Exhibit C thereto).

3.      Mr. Slater also confirms that he and I jointly contacted the Court's clerk, Ms. Kathy Boyce, on October 6, 2006 regarding the filing of the joint statement and certifications pursuant to Local Rule 16.1 (D). (Slater Affidavit, ¶ 4). Mr. Slater further confirms that I advised Ms. Boyce that I would be meeting with my client the following Tuesday, and that Ms. Boyce advised me during our call that the required certifications could be filed after I had the opportunity to meet with my client. (Id.).

4.      Moreover, Mr. Slater confirms that prior to the initial conference on October 13, 2006, I had advised him that, in light of Mr. Slater's advice to me regarding his communication with Mr. O'Leary that local counsel could appear in my stead, local counsel would be appearing at the conference in my stead. (Slater Affidavit, ¶¶ 3, 10 and Exhibit D thereto).

5.      In light of the foregoing, Mr. Slater's recitation of events confirms, among other things, that he and I spoke several times prior to the conference regarding various matters pertaining to Local Rule 16.1 (D), that he and I jointly contacted the Court when in doubt regarding the filing of certifications pursuant to Local Rule 16.1 (D), and that I, in response to Mr. Slater's email regarding his reported conversation with the Court's courtroom clerk regarding the initial conference, replied that local counsel would be appearing in my stead in light of his advice to me.

6.      With respect to the joint statement required pursuant to Local Rule 16.1 (D), Mr. Slater emailed me on September 25, 2006, and I contacted him the following morning to discuss the joint statement. During our call on September 26, 2006, Mr. Slater and I conferred regarding the joint statement. (Slater Affidavit, ¶ 8) ("In this phone conversation we conferred, as required

2

by the Court order"). Nine days later, Mr. Slater forwarded to me a draft of a proposed joint statement, which contained the discovery dates we had discussed on September 26, 2006. (Slater Affidavit, ¶ 4 (a)) ("I did e-mail a proposed Joint Statement for the Initial Scheduling Conference to Mr. Schafhauser on October 5, 2006 at 2:36 PM"). The next morning, after my return from Los Angeles, I called Mr. Slater and confirmed that the dates he had memorialized were acceptable. Thus, the joint statement was duly filed. (Id.) ("I thereupon e-filed the Joint Statement").

7.    Mr. Slater asserts that I failed to respond to plaintiff's settlement demand "in good faith." (Plaintiff's Opposition, at 1). As he states in his affidavit, Mr. Slater forwarded a settlement proposal to me on September 29, 2006. (Slater Affidavit, ¶ 9) ("Also, on September 29, 2006, I faxed and mailed to Mr. Schafhauser a letter setting forth a detailed offer of settlement, as per the Court's prior Order."). Mr. Slater's letter stipulated, however, that the settlement offer itself, as well as any further settlement discussions, would not be admissible in any court proceeding between the parties. Accordingly, much as I would like to do so to place Mr. Slater's assertions in proper context, I will not here disclose the details of Mr. Slater's settlement offer.[1]

8.    That said, any suggestion that defendants or I failed to respond to Mr. Slater's settlement proposal in good faith is incorrect. As noted in my prior affidavit, I met with Mr. Mark Friedman on Tuesday afternoon, October 10. During the course of a lengthy meeting regarding this matter, we discussed the various matters required pursuant to L. Civ. R. 16.1

---

[1] Given Mr. Slater's insistence that any settlement discussions would not be admissible, I am, frankly, surprised that he has put our settlement discussions at issue by asserting that I did not respond to his settlement proposal "in good faith." If, however, Mr. Slater wishes to take issue with the "good faith" of defendants' response to his settlement demand, I respectfully submit that Mr. Slater should disclose the amount of his settlement demand, so that defendants' response may be placed in proper context. Of course, if released by Mr. Slater from his stipulation, or if required by the Court, I would be pleased to disclose the amount of plaintiff's settlement demand, so that the Court may have a full picture of the context in which these discussions took place.

3

(D)(3), including Mr. Slater's settlement proposal. I reviewed the proposal in detail with Mr. Friedman, and he and I discussed a response to the proposal.[2]

9.      I recall speaking with Mr. Slater regarding my client's settlement position on Friday, October 13.[3] During our call, I explained to Mr. Slater that my client believed that plaintiff's claims were without basis. I also told him that my client responded with a counteroffer substantially below that conveyed by Mr. Slater -- i.e., the costs that would otherwise be incurred in litigating this matter. Although Mr. Slater evidently takes issue with the fact that defendants did not accept plaintiff's settlement demand, defendants' decision, after due consideration and consultation with counsel, to decline to accept plaintiff's settlement demand did not constitute "bad faith."

10.     Mr. Slater asserts that during this call, I "could not articulate" any defense asserted by my clients. (Plaintiff's Opposition, at 1). In fact, I cannot recall Mr. Slater having ever asked me to specify my client's defenses. In any event, as Mr. Slater was well aware from the extensive papers filed on defendants' behalf in support of their motion to dismiss, defendants asserted that they did not enter into any agreement with plaintiff as alleged in the complaint. Defendants further asserted that in the absence of any written agreement, plaintiff's claims were barred as a matter of law. Defendants further noted that where, as here, a plaintiff claims to be an "employee" in the absence of any written contract, he is an "at-will" employee and, thus, should be subject to dismissal without cause in any event. (Copies of defendants' moving and

---

[2] I note the foregoing solely for purposes of responding to plaintiff's assertions regarding defendants' response to his settlement offer, albeit without waiver of the attorney-client privilege or any other right or privilege held by defendants.

[3] Mr. Slater states that this conversation occurred on October 12. (Slater Affidavit, ¶ 12). I recall, however, that Mr. Slater indicated to me during our conversation that he would be heading to the conference shortly and, as a result, my recollection is that this call occurred on October 13.

reply briefs in support of their motion to dismiss and/or transfer this matter, wherein these arguments were set forth at length, are collectively attached hereto as Exhibit A).

11.    Such defenses, among others, were addressed in the Court's Memorandum and Opinion dated September 19, 2006, by which the Court held that plaintiff's contract-related claims could not be dismissed at the pleadings stage because plaintiff had sufficiently alleged facts which, if proven, would justify a finding of estoppel. (Memorandum and Order dated September 19, 2006, copies of which are collectively attached hereto as Exhibit B, at 1-11). The Court, however, dismissed plaintiff's claims for fraud and pursuant to G.L.c. 93A because, upon defendants' motion, plaintiff conceded that such claims were time-barred. (Id. at 4) ("The plaintiff concedes that his tort claims in Count IV (Fraud) and Count V (G.L.c 93A) are time-barred. This conclusion is correct . . . ."). The Court also dismissed all claims against Mr. Friedman personally. (Id. at 4-5).

12.    Mr. Slater asserts that during a call shortly prior to the initial conference, I "agreed" with him that the central issue in this case is "why the deal fell apart." (Slater Affidavit, ¶ 12). In fact, as outlined in defendants' motion to dismiss from the outset of this case, defendants' position has been that there is **no** "deal" as alleged by plaintiff. Instead, as I explained to Mr. Slater, it is defendants' position that plaintiff was, at best, an at-will employee. Defendants further assert that plaintiff was responsible for producing samples and sketches to be presented to Walmart. Plaintiff, however, failed to perform his duties and, as a result, plaintiff was terminated due to his failure to perform. Thus, as a result of the positions taken in defendants' motion papers as well as our conversations, Mr. Slater was well aware of defendants' position regarding this matter.

5

14.    Mr. Slater states that he has incurred eight hours of time to date in connection with the prior scheduling conference, the default and the pending motion to vacate default. (Slater Affidavit, ¶ 13). Mr. Slater further estimates that he would incur an additional 2.5 hours to attend an additional scheduling conference if the Court were to set aside the default, thus bringing the total amount of fees incurred to $2,362.50. (Id.). As previously noted, defendants filed the pending motion to vacate the default as promptly as possible to prevent any prejudice to plaintiff. Consistent with this desire to prevent any prejudice, Herrick, Feinstein LLP has, on this date, forwarded a check to Mr. Slater representing the full amount of fees and costs he asserts will have been incurred in connection with the prior scheduling conference, the default and the pending motion to vacate the default. A copy of this check, together with my accompanying transmittal letter to Mr. Slater, is attached hereto as Exhibit C.

PAUL H. SCHAFHAUSER

Sworn to before me this
21st day of November, 2006

Notary Public

BLANCHE BANKS
Notary Public, State of New York
No. 01BA6075246
Qualified in New York County
Commission Expires June 3, 2010

6

**EXHIBIT A**

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

- - - - - - - - - - - - - - - - - - - - - - - - - - - - x

LAWRENCE SHUTZER,                          : Case No.: 1:05-CV-11486

                Plaintiff,    : Hon. Mark L. Wolf, U.S.D.J.

      vs.                                  :

                               :

S. ROTHSCHILD & CO., INC. and S.            :
ROTHSCHILD MEN'S, INC. and MARK             :
FRIEDMAN,                                   :
                               :

               Defendants.     :

                               :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - x

---

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS AND/OR TRANSFER VENUE

---

RIEMER & BRAUNSTEIN LLP
Three Center Plaza
Boston, Massachusetts 02108
(617) 523-9000
Attorneys for Defendants

Of counsel:

HERRICK, FEINSTEIN LLP
2 Park Avenue
New York, NY 10016
(212) 592-1400

## PRELIMINARY STATEMENT

By his complaint in this action (the "Complaint"), plaintiff Lawrence Shutzer ("Plaintiff" or "Shutzer") claims that he entered into an oral agreement with defendants S. Rothschild & Co., Inc. ("SRC") and/or S. Rothschild Men's, Inc. ("RMI") (collectively, "Rothschild") in February 2000. Plaintiff next alleges that Rothschild, as well as defendant Mark Friedman ("Friedman"), "willfully, wrongfully and without cause" breached their "commitments" to him in March 2000. Based on these allegations, Plaintiff has asserted a variety of contract-related and tort claims against SRC, RMI and Friedman (collectively, "Defendants"). All of these claims, however, are barred as a matter of law.

Plaintiff's contract-related claims are barred by the Statute of Frauds. The Statute of Frauds bars oral "contracts" that are incapable of being performed within one year from their creation -- yet this is precisely the sort of legally-barred claim that Plaintiff seeks to assert in this case. By his Complaint, Plaintiff asserts that the so-called "contract" between the parties contemplated a three-year term, yet the "contract" was never reduced to writing, despite the fact that the parties contemplated a writing. In light of settled law, such an oral "contract" is barred by the Statute of Frauds. Because there is no duty of good faith and fair dealing in the absence of a contract, Plaintiff's claim on that basis is also barred as a matter of law.

While Plaintiff's contract-related claims are barred by the Statute of Frauds, Plaintiff's various tort claims are barred by the Statute of Limitations. According to the allegations in the Complaint, Plaintiff's claims accrued in March 2000 at the latest -- yet Plaintiff did not commence this action until July 2005, more than five years later. As a result, Plaintiff's common law fraud, "estoppel" and unjust enrichment claims -- all of which are based on allegations of tortious and/or "fraudulent" conduct -- are barred by the three-year statute of

limitations that applies to such claims. Moreover, Plaintiff's claims pursuant to G.L.c. 93A, § 9

("Chapter 93A") are barred by the four-year limitations period that applies to such claims.

Plaintiff's claims against Friedman are fatally flawed in any event. In his

Complaint, Plaintiff concedes that Friedman was acting, if at all, on behalf of SRC and/or RMI.

Accordingly, there is no basis to hold Friedman personally liable, and Plaintiff's claims against

him should be dismissed for this reason, too.

In any event, even if the Court were disinclined to dismiss the Complaint in all

respects, the Court should transfer this action to the Southern District of New York. The locus of

this dispute is in New York. All three defendants are based in New York. The material

witnesses are in New York. So, too, is the physical evidence. The costs and burdens of litigating

this case would be greatly exacerbated if this matter were to proceed in Massachusetts, rather

than in New York.

For these reasons, as more fully set forth herein, Defendants respectfully submit

that the Court should dismiss the Complaint in all respects. If, however, the Court were

disinclined to dismiss the Complaint in its entirety, the Court should transfer any remaining

action to the Southern District of New York.

## STATEMENT OF FACTS

In his Complaint, Shutzer alleges that he worked for a family-owned business known as Mimco, Inc. ("Mimco") throughout the 1990's. (Complaint, ¶ 9). Mimco designed, manufactured, and sold men's outerware. (Id.) In or about 1999, Shutzer met with Friedman to discuss a possible relationship between Mimco and Rothschild. (Id., ¶ 10). According to the Complaint, Rothschild sold boys, girls and women's outerware, and it also operated a small men's division that it was seeking to expand. (Id.)

The parties proceeded to engage in negotiations relating to Rothschild's possible acquisition of Mimco or, alternatively, a merger of the companies into a new operating entity. (Complaint, ¶ 11). These negotiations, however, did not result in any written contract. (Id.) Nonetheless, the Complaint alleges that the parties orally agreed as follows on or about February 15, 2000: (i) Shutzer would attempt to obtain as many orders from former Mimco customers and others as possible for Rothschild; (ii) Rothschild would hire various Mimco employees; (iii) Shutzer would (a) receive a written employment contract; (b) be included on Rothschild's payroll; and (c) be paid a sales commission based upon a share of the profits "for a three year period," in addition to reimbursement of expenses and payment of salary; (iv) Rothschild would acquire Mimco's offices in New York and Massachusetts, and assume all costs related thereto; (v) "for a three year period," the profits generated by Rothschild's men's division would be shared equally between Shutzer and Rothschild after deducting salaries paid to former Mimco employees; and (vi) Shutzer would run Rothschild's men's business. (Id., ¶ 12). Thus, by the Complaint, Shutzer alleges that the parties orally agreed to a contract that contemplated performance for a "three year period" -- i.e., a term of three years. (Id.)

3

According to the Complaint, Shutzer thereupon began to work for Rothschild. (Complaint, ¶ 13). Thus, Shutzer alleges that he became an employee of Rothschild, albeit without any written contract. (Complaint, ¶¶ 11-16). Shutzer next alleges that Defendants "willfully, wrongfully and without cause" breached their "commitments" to him in and after March 2000. (Complaint, ¶ 16). Defendants also allegedly refused "to enter into the agreed to written employment contract" with Shutzer. (Id.)

According to the Complaint, then, Defendants "willfully, wrongfully and without cause" injured Shutzer more than five and one-half years ago. (Complaint, ¶ 16). Shutzer, however, waited until July 14, 2005 to file any claims against Defendants. (Id.) Moreover, although Shutzer seeks to hold Friedman personally liable, he admits that "[a]t all time material hereto, Friedman was acting on behalf of the corporate Defendants and had the full authority to act on their behalf in his dealings with Shutzer and Mimco." (Complaint, ¶ 22).

Not only has Shutzer alleged claims that are wholly without merit -- but he has done so in an inappropriate forum. All of the "meetings" referenced in the Complaint took place at SRC's offices in New York. (See Affidavit of Mark Friedman submitted herewith ("Friedman Aff."), ¶ 4). Mimco, Inc. ("Mimco"), an entity with which Mr. Shutzer was affiliated, also had an office in New York. (Id.) All ex-Mimco employees, save one, hired by SRC worked in SRC's offices in New York. Thus, except for Shutzer, all material witnesses with respect to this matter are located in New York. So, too, is the physical evidence. (Friedman Aff., ¶ 5).

Having been forced to defend against frivolous claims in an faraway forum, Defendants now respectfully move to dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(6). Moreover, insofar as the Court might be disinclined to dismiss the Complaint in all respects,

4

Defendants respectfully move to transfer any remaining action to the Southern District of New York pursuant to 28 U.S.C. § 1404(a).

## LEGAL ARGUMENT

### POINT I

### THE APPLICABLE STANDARD UPON A MOTION TO DISMISS

Dismissal of a complaint is appropriate where a party "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A court may dismiss a complaint for failure to state a claim if it appears, beyond doubt, that the plaintiff can prove no set of facts in support of their claim which would entitle them to relief. See Conley v. Gibson, 355 U.S. 41, 45-46, 78 S. Ct. 99, 2 L.Ed.2d 80 (1957). "In considering the merits of a motion to dismiss, the court may look only to the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the complaint and matters of which judicial notice can be taken." Hughes v. McMenamon, 389 F. Supp. 2d 75, 78 (D. Mass. 2005).

Towards that end, the "court must take the allegations in the plaintiff's pleadings as true and must make all reasonable inferences in favor of the plaintiffs." Rivera v. Rhode Island, 402 F.3d 27, 33 (1st Cir. 2005). "In that process, however, the court need not credit bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like." Redondo-Borges v. U.S. Dep't of Housing & Urban Dev., 421 F.3d 1, 5 (1st Cir. 2005) (internal citations omitted).

Measured in light of this settled standard, the Complaint falls woefully short of the mark. Accordingly, the Court should dismiss the Complaint because it fails to state a cause of action upon which relief may be granted. See Fed. R. Civ. P. 12(b)(6).

6

## POINT II

## THIS COURT SHOULD DISMISS PLAINTIFF'S CONTRACT-RELATED CLAIMS AS BARRED BY THE STATUTE OF FRAUDS

Shutzer has asserted various contract-related claims against Defendants, including breach of contract and breach of the implied covenant of good faith and fair dealing, based on an alleged "oral agreement" that contemplated a three-year term. These claims, however, are fatally flawed.

The Statute of Frauds renders unenforceable an oral agreement if it is incapable of being performed within one year of its making. See G.L.c. 259, § 1(5); Powers v. Boston Cooper Corp., 926 F.2d 109, 110 (1st Cir. 1991) (applying Massachusetts law and holding that Statute of Frauds rendered plaintiff's alleged contract unenforceable where plaintiff alleged breach of oral employment contract that could not be performed within one year). The Statute of Frauds provides that "[n]o action shall be brought: . . . [u]pon an [oral] agreement that is not to be performed within one year from the making thereof." G.L.c. 259, § 1(5). Thus, "a contract of employment for a definite period in excess of one year, or for one year to start more than one day after the making of the contract, is not enforceable under the statute, because it is not capable of being fully performed within one year from the making of the contract." Meng v. Trustees of Boston Univ., 44 Mass. App. Ct. 650, 652 (1998).

In his Complaint, Shutzer concedes that the parties' "discussions did not result in a signed, written contract." (Complaint, ¶ 11). Shutzer further alleges that parties orally agreed to a contract that contemplated a "three year period" -- i.e., a three-year term. (Complaint, ¶ 12). Specifically, the Complaint alleges as follows:

> Shutzer would be put on [Rothschild's] payroll and would receive a written employment contract and, in addition to a salary and expenses incurred in the course of his work, a sales 'commission' based upon a share of the profits, as outlined below . . . **that for a**

7

> **three year period the profits generated by [Rothschild's] men's division would be shared on a 50/50 basis between Shutzer and [Rothschild] . . . .** (Complaint, ¶ 12) (emphasis added).

According to the allegations of the Complaint, therefore, Shutzer's alleged oral contract for employment called for payments over a three-year term. Because the alleged oral contract cannot literally be performed within the one-year statutory period, it is proscribed by the Statute of Frauds. See In re Furst, 914 F. Supp. 734, 738 (D. Mass. 1996) ("the Statute of Frauds invalidates an oral joint venture agreement if it can be shown that the agreement 'is not to be performed within one year from the making thereof.'") (internal citations omitted); Cousin v. Sofono, Inc., No. Civ. A. 01-30186-MAP, 2003 WL 22391233 (D. Mass. Oct. 17, 2003) (finding that oral contract was subject to and unenforceable under Statute of Frauds because contract allowed plaintiff to purchase subject store from defendant at end of ten-year period); Montlouis v. Pirus Networks, Inc., No. 025364, 2005 WL 1009523 (Mass. Super. Mar. 15, 2005) (finding that oral promise of employment for a four-year period would be unenforceable because of Statute of Frauds); Danielle Int'l LTD v. Great Atlantic & Pacific Tea Co., Inc., No. 02849, 2004 WL 1588089 * 2 (Mass. Super. June 23, 2004) (holding oral contract unenforceable under Statute of Frauds where contract could not have been fully performed in one year because it required defendant to allot shelf space for plaintiff's goods for two years).

Where, as here, there is no valid contract, there also is no lawfully-implied covenant of good faith and fair dealing. See Mass. Eye & Ear Infirmary v. QLT Phototherapeutics, Inc., 412 F.3d 215, 230 (1st Cir. 2005) ("Having concluded that no contract exists, there can be no derivative implied covenant of good faith and fair dealing applicable to these parties."). Under Massachusetts law, "the covenant of good faith and fair dealing is implied in every contract." UNO Rests., Inc. v. Boston Kenmore Realty Corp., 441 Mass. 376, 385 (2004). "The covenant may not, however, create rights and duties not otherwise provided

for in the existing contractual relationship, as the purpose of the covenant is to guarantee that the parties remain faithful to the intended and agreed expectations of the parties in their performance." Id. "In other words, the implied covenant of good faith and fair dealing governs conduct of parties after they have entered into a contract; without a contract, there is no covenant to be breached." Mass. Eye & Ear Infirmary, 412 F.3d at 230 (holding that where no binding agreement existed, "there is no duty to negotiate in good faith"); see also Levenson v. L.M.I. Realty Corp., 31 Mass. App. Ct. 127, 131 (1991) (rejecting argument that where defendant stopped short of binding himself to a contract he nevertheless had a duty to negotiate the terms in good faith); cf. State Tax Auditing & Research v. Waters Corp., 11 Mass. L. Rptr. 560, 2000 WL 782948, * 3 (Mass. Super. Apr. 5, 2000) (holding that oral finder's agreements, as well as any "contracts implied in fact or in law," are barred by the applicable Statute of Frauds).

In this case, Plaintiff's claims of an "oral agreement" are barred by the Statute of Frauds. As such, Plaintiff's remaining contractually-based claims, including the alleged "breach of the implied covenant of good faith and fair dealing," are barred as unsupported by any prerequisite "contract." Accordingly, the Court should dismiss Plaintiff's contractually-related claims with prejudice.[1]

---

[1] Where, as here, a plaintiff claims to be an employee in the absence of any written contract, he is an "at-will" employee. An at-will employee is subject to dismissal without cause. See Cousin v. Sofono, Inc., 2003 WL 22391233, *8 (D. Mass. 2003) ("As an employee at-will, plaintiff's employment could be terminated by [the employer] at any time for any, or no, reason at all") (citing Jackson v. Action for Boston Cmty. Dev., Inc., 403 Mass. 8, 9 (1988)). Accordingly, Plaintiff's claims for any "breach" of the terms of his at-will "employment" are barred as a matter of law in any event.

9

## POINT III

### THIS COURT SHOULD DISMISS PLAINTIFF'S REMAINING CLAIMS BECAUSE THEY ARE TIME-BARRED

In addition to asserting contract claims against Defendants that are barred by the Statute of Frauds, Plaintiff has also asserted various tort claims against Defendants. These claims, however, are barred by the applicable statute of limitations.[2]

Under Massachusetts law, "actions of tort . . . shall be commenced only within three (3) years after the cause of action accrues." G.L.c. 260, § 2A. Similarly, a fraud claim must be filed within three years of its accrual. See G.L.c. 260, § 2A; Kent v. Dupree, 13 Mass. App. Ct. 44, 47 (1982). Moreover, Massachusetts imposes a four-year statute of limitations for Chapter 93A claims. See G.L.c. 260, § 5A; International Mobiles Corp. v. Coroon & Black/Fairchild & Ellis, Inc., 29 Mass. App. Ct. 215, 220- 21 (1990).

A cause of action based in tort accrues and triggers the statutory period when the injury occurs. See White v. Peabody Constr. Co., Inc., 386 Mass. 121, 129 (1985). The statute begins to run when the plaintiff, knowing that he had been harmed, discovered, or reasonably should have discovered, the cause of the harm. See Bowen v. Eli Lilly & Co., Inc., 408 Mass. 204, 205-06 (1990). Even if the plaintiff lacks actual knowledge, the statute will run when an ordinary reasonable person in the plaintiff's circumstances would have known of the cause of action through the exercise of reasonable diligence. See Riley v. Presnell, 409 Mass. 239, 565 (1991); Gore v. Daniel O'Connell's Sons, Inc., 17 Mass. App. Ct. 645, 647 (1984).

In the case at bar, Plaintiff's tort claims accrued, at the latest, in March 2000. (Complaint, ¶¶ 12-17). In fact, the Complaint alleges that Defendants committed all of their

---

[2] "As jurisdiction is based on diversity of citizenship, the applicable statutes of limitations are those of Massachusetts." Micromuse, Inc. v. Micromuse, Plc., 304 F. Supp. 2d 202, 209 (D. Mass. 2004) (quoting Fidler v. Eastman Kodak Co., 714 F.2d 192, 196 (1st Cir. 1983)).

tortious and otherwise unlawful conduct in and shortly after March 2000. (Id.) Nonetheless,

Shutzer waited until July 14, 2005 -- i.e., more than five years -- to file the Complaint.

Accordingly, these claims are barred by the statute of limitations.

Although styled as a claim for "estoppel," Count III is premised on the allegation

that "various promises, commitments and offers were made fraudulently and with the intent that

Shutzer rely thereon." (Complaint, ¶ 29). Thus, because it is based on allegations of fraud,

Count III is barred by the applicable three-year statute of limitations. See G.L.c. 260, § 2A; cf.

Kirley v. Kirley, 25 Mass. App. Ct. 651, 654, rev. denied, 402 Mass. 1104 (1988) (corporate

"freeze-out" of minority shareholder held governed by three-year statute of limitations applicable

to tort, rather than six-year statute of limitations applicable to breach of contract claims). In any

event, Count III is redundant with the common law and statutory fraud claims set forth in Counts

IV and V, and should be dismissed for that reason, too.

Count IV, like Count III, is premised on allegations of fraud. As a result, this

claim, too, is barred by the three-year statute of limitations. See G.L.c. 260, § 2A; Kent, 13

Mass. App. Ct. at 47.

Count V seeks to assert claims under Chapter 93A. However, the Complaint was

filed more than five years after Plaintiff's alleged Chapter 93A claims accrued, thus rendering

those claims time-barred under the applicable four-year statute of limitations. See G.L.c. 260, §

5A; Cambridge Plating C. v. Napco, Inc., 85 F.3d 752, 761 (1st Cir. 1996).

Count VI, although styled as a claim for "unjust enrichment/quasi-contract," is a

thinly-disguised tort claim, because its assertions are based on Defendants' alleged "willful" and

"wrongful" misconduct in and after March 2000. See Desmond v. Muffle, 375 F.2d 742, 743

(1st Cir. 1967) (the statute of limitations applicable to unjust enrichment depends upon the

"essential nature of plaintiff's claim"). Where, as here, a claim for unjust enrichment is based on allegations of misconduct rather than upon any legally enforceable contract, such a claim is subject to the three-year statute of limitations that applies to torts. See Epstein v. C.R. Bard, Inc., No. Civ. 03-12297-RWZ, 2004 WL 1598912, * 3 (D. Mass. July 19, 2004) (dismissing claim for unjust enrichment under three-year tort statute of limitations where the essential nature of the claim sounded in tort). Accordingly, Count VI is barred by the applicable three-year statute of limitations. See G.L.c. 260, § 2A.

For these reasons, the Court should dismiss Plaintiff's remaining claims against Defendants with prejudice as barred by the applicable statute of limitations.

## POINT IV

### THE COURT SHOULD, IN ALL EVENTS, DISMISS PLAINTIFF'S CLAIMS AGAINST FRIEDMAN PERSONALLY

It is settled law that a corporate officer has no liability at common law for the corporation's obligations. See Union Mut. Life Ins. Co. v. Chrysler Corp., 793 F.2d 1, 11 (1st Cir. 1986); Doyle v. Hasbro Inc., 884 F.Supp. 35, 39 (D. Mass. 1995); Williams v. Vanaria, No. 96-CV-0261, 9658, 2000 WL 795659 * 2 (Mass. App. Div. June 13, 2000). "A contract made by the authorized agent of a corporation is the corporation's contract." Williams, 2000 WL 795659 at * 2 (internal citations omitted). "A corporation . . . can only act through its agents, and negotiations by a corporate officer regarding a corporate obligation do not render the officer personally liable." Id.

The Complaint does not allege -- because it cannot allege -- that Friedman was unauthorized to act or otherwise negotiate on behalf of Rothschild, nor does it allege that his role as the president of Rothschild was undisclosed to Shutzer during their meetings. To the contrary, the Complaint concedes that "[a]t all times material hereto, Friedman was acting on behalf of the

12

corporate Defendants and had the full authority to act on their behalf in his dealings with Shutzer and Mimco." (Complaint, ¶ 22).

Plaintiff has not alleged any basis upon which to hold Friedman personally liable for the claims asserted against Rothschild. To the contrary, the Complaint alleges that Friedman at all times was acting on behalf of a corporate entity, and this corporate role was admittedly disclosed to Plaintiff. Accordingly, the Court should dismiss Plaintiff's claims against Friedman with prejudice for these reasons, too. See Union Mut. Life Ins., 793 F.2d at 11.

**POINT V**

**IN THE EVENT THAT THE COURT WERE DISINCLINED TO DISMISS THE COMPLAINT IN ALL RESPECTS, THE COURT SHOULD TRANSFER ANY REMAINING ACTION TO THE SOUTHERN DISTRICT OF NEW YORK**

For the reasons set forth above, Defendants respectfully submit that the Court should dismiss the Complaint. If, however, the Court were disinclined to dismiss the Complaint in all respects, the Court should transfer any remaining action to the Southern District of New York pursuant to 28 U.S.C. § 1404(a).

28 U.S.C. § 1404(a) provides in relevant part as follows:

> For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

28 U.S.C. § 1404(a) ("Section 1404").

The first inquiry under Section 1404 is whether the case could have been brought in the district where the defendant seeks to transfer the matter. See Trans Nat'l Travel, Inc. v. Sun Pacific Int'l, Inc., 10 F. Supp. 2d 79, 81 (D. Mass. 1998). To make such a determination, this Court must apply the venue statute, 28 U.S.C. § 1391 ("Section 1391"). Under Section 1391, venue is proper in a diversity case in the "judicial district where any defendant resides, if all defendants reside in the same state." 28 U.S.C. § 1391(a)(1). Here, it is undisputed that

13

Rothschild is a resident of New York. (Friedman Aff., ¶ 4). Accordingly, venue would be proper in the Southern District of New York.

The Court must next consider "the convenience of parties and witnesses" and "the interest of justice." Coady v. Ashcraft & Gerel, 223 F.3d 1, 11 (1st Cir. 2000). Although there generally is a presumption in favor of a plaintiff's choice of forum, "[w]here [as here] the operative facts of the case have no material connection with this district, plaintiff's choice of forum carries less weight." Brant Point Corp. v. Poetzsch, 671 F. Supp. 2, 5 (D. Mass. 1987). Thus, in such circumstances, the convenience of the witnesses "is probably the most important factor" in weighing a motion to transfer venue. See Princess House, Inc. v. Lindsey, 136 F.R.D. 16, 18 (D. Mass. 1991). See also Home Prods. Int'l-N. Am., Inc. v. PeopleSoft USA, Inc., 201 F.R.D. 42, 48 (D. Mass. 2001).

The locus of the instant dispute is in New York. All of the events at issue in this lawsuit took place in New York. All of the meetings occurred in Rothschild's offices in New York. All three defendants are based in New York. Moreover, aside from Shutzer, all of the potential witnesses are in New York. These witnesses include Friedman, as well as the various former Mimco employees who were hired by Rothschild to work in its New York office. Thus, in the event that non-party witnesses who reside in New York are needed, they will not be subject to compulsory process in Massachusetts, thereby further complicating the parties' efforts to expeditiously litigate this matter in a non-New York forum.

The costs of litigating this case, as well as the burden of compelling the testimony of witnesses located in New York, would be greatly exacerbated if this matter were to proceed in Massachusetts, rather than in New York. A New York forum would be far more convenient for the parties, the witnesses and the judicial system. See Brant Point, 671 F. Supp. at 4 (granting

14

motion to transfer because "a North Carolina forum [was] more convenient to all of the expected witnesses in this case, except plaintiff's principal"); see also Atari v. United Parcel Service, Inc., 211 F. Supp. 2d 360, 365-66 (D. Mass. 2002) (granting motion to transfer to New Jersey where the witnesses were located in New Jersey and the operative facts had a more substantial connection to New Jersey).

For these reasons, in the event that the Court may be disinclined to dismiss the Complaint in all respects, Defendants respectfully submit that the Court should transfer any remaining action to the Southern District of New York.

15

## CONCLUSION

For all of the foregoing reasons, Defendants respectfully request that the Court dismiss the Complaint in all respects. If, however, the Court were disinclined to dismiss the Complaint in its entirety, the Court should transfer any remaining action to the Southern District of New York.

Dated: October 24, 2005

S. ROTHSCHILD & CO., INC., S. ROTHSCHILD MEN'S, INC., and MARK FRIEDMAN

By its attorneys,

/s/ Dennis E. McKenna
Dennis E. McKenna BBO # 556428
RIEMER & BRAUNSTEIN LLP
Three Center Plaza
Boston, Massachusetts 02108
(617) 523-9000

Of counsel:

Paul H. Schafhauser
Mark C. Errico
HERRICK, FEINSTEIN LLP
2 Park Avenue
New York, NY 10016
(212) 592-1400

## CERTIFICATE OF SERVICE

I, Dennis E. McKenna, Esquire, hereby certify that on this 24th day of October, 2005, I caused a true and accurate copy of the foregoing document to be served by first class mail, postage prepaid, upon: Lawrence M. Slater, Esquire, 270 Union Street, Suite 202, Lynn, Massachusetts 01901.

/s/ Dennis E. McKenna
Dennis E. McKenna

HF 3117833v.2 #04916/0046

16

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES .................................................................................................. ii

PRELIMINARY STATEMENT .......................................................................................... 1

STATEMENT OF FACTS ................................................................................................... 3

LEGAL ARGUMENT .......................................................................................................... 6

      POINT I

      THE APPLICABLE STANDARD UPON A MOTION TO DISMISS ............................. 6

      POINT II

      THIS COURT SHOULD DISMISS PLAINTIFF'S CONTRACT-RELATED
      CLAIMS AS BARRED BY THE STATUTE OF FRAUDS ............................................... 7

      POINT III

      THIS COURT SHOULD DISMISS PLAINTIFF'S REMAINING CLAIMS
      BECAUSE THEY ARE TIME-BARRED ....................................................................... 10

      POINT IV

      THE COURT SHOULD, IN ALL EVENTS, DISMISS PLAINTIFF'S CLAIMS
      AGAINST FRIEDMAN PERSONALLY ....................................................................... 12

      POINT V

      IN THE EVENT THAT THE COURT WERE DISINCLINED TO DISMISS THE
      COMPLAINT IN ALL RESPECTS, THE COURT SHOULD TRANSFER ANY
      REMAINING ACTION TO THE SOUTHERN DISTRICT OF NEW YORK .............. 13

CONCLUSION ................................................................................................................... 16

## TABLE OF AUTHORITIES

**Federal Cases:**                                                                    **Page**

Atari v. United Parcel Service, Inc.,
    211 F. Supp. 2d 360 (D. Mass. 2002) ............................................................... 15

Brant Point Corp. v. Poetzsch,
    671 F. Supp. 2 (D. Mass. 1987) ............................................................... 14, 15

Cambridge Plating C. v. Napco, Inc.,
    85 F.3d 752 (1st Cir. 1996) ............................................................... 11

Coady v. Ashcraft & Gerel,
    223 F.3d 1 (1st Cir. 2000) ............................................................... 14

Conley v. Gibson,
    355 U.S. 41, 78 S. Ct. 99, 2 L.Ed.2d 80 (1957) ............................................................... 6

Cousin v. Sofono, Inc.,
    No. Civ. A. 01-30186-MAP, 2003 WL 22391233 (D. Mass. Oct. 17, 2003) ................. 8, 9

Desmond v. Muffle,
    375 F.2d 742 (1st Cir. 1967) ............................................................... 11

Doyle v. Hasbro Inc.,
    884 F.Supp. 35 (D. Mass. 1995) ............................................................... 12

Fidler v. Eastman Kodak Co.,
    714 F.2d 192 (1st Cir. 1983) ............................................................... 10

In re Furst,
    914 F. Supp. 734 (D. Mass. 1996) ............................................................... 8

Home Products International-N. America, Inc. v. PeopleSoft USA, Inc.,
    201 F.R.D. 42 (D. Mass. 2001) ............................................................... 14

Hughes v. McMenamon,
    389 F. Supp. 2d 75 (D. Mass. 2005) ............................................................... 6

Mass. Eye & Ear Infirmary v. QLT Phototherapeutics, Inc.,
    412 F.3d 215 (1st Cir. 2005) ............................................................... 8, 9

Micromuse, Inc. v. Micromuse, Plc.,
    304 F. Supp. 2d 202 (D. Mass. 2004) ............................................................... 10

## TABLE OF AUTHORITIES
### (continued)

**Federal Cases:**                                                                                      **Page**

Trans Nat'l Travel, Inc. v. Sun Pacific Int'l, Inc.,
     10 F. Supp. 2d 79 (D. Mass. 1998)...................................................................................13

Powers v. Boston Cooper Corp.,
     926 F.2d 109 (1st Cir. 1991)............................................................................................7

Princess House, Inc. v. Lindsey,
     136 F.R.D. 16 (D. Mass. 1991)........................................................................................14

Redondo-Borges v. U.S. Department of Housing & Urban Development,
     421 F.3d 1 (1st Cir. 2005)................................................................................................6

Rivera v. Rhode Island,
     402 F.3d 27 (1st Cir. 2005)..............................................................................................6

Union Mutual Life Insurance Co. v. Chrysler Corp.,
     793 F.2d 1 (1st Cir. 1986)..........................................................................................12, 13

**Massachusetts Cases:**

Bowen v. Eli Lilly & Co., Inc.,
     408 Mass. 204 (1990) .....................................................................................................10

Danielle International LTD v. Great Atlantic & Pacific Tea Co., Inc.,
     No. 02849, 2004 WL 1588089 (Mass. Super. June 23, 2004) ...........................................8

Epstein v. C.R. Bard, Inc.,
     No. Civ. 03-12297-RWZ, 2004 WL 1598912 (D. Mass. July 19, 2004) ..........................12

Gore v. Daniel O'Connell's Sons, Inc.,
     17 Mass. App. Ct. 645 (1984)..........................................................................................10

International Mobiles Corp. v. Coroon & Black/Fairchild & Ellis, Inc.,
     29 Mass. App. Ct. 215 (1990)..........................................................................................10

Jackson v. Action for Boston Cmty. Dev., Inc.,
     403 Mass. 8 (1988) ...........................................................................................................9

Kent v. Dupree,
     13 Mass. App. Ct. 44 (1982)......................................................................................10, 11

### TABLE OF AUTHORITIES
(continued)

**Massachusetts Cases:**                                                                                      **Page**

Kirley v. Kirley,
    25 Mass. App. Ct. 651 (1988)..............................................................................................11

Levenson v. L.M.I. Realty Corp.,
    31 Mass. App. Ct. 127 (1991)..............................................................................................9

Meng v. Trustees of Boston University,
    44 Mass. App. Ct. 650 (1998)..............................................................................................7

Montlouis v. Pirus Networks, Inc.,
    No. 025364, 2005 WL 1009523 (Mass. Super. Mar. 15, 2005) ..........................................8

Riley v. Presnell,
    409 Mass. 239 (1991) ........................................................................................................10

State Tax Auditing & Research v. Waters Corp.,
    11 Mass. L. Rptr. 560, 2000 WL 782948 (Mass. Super. Apr. 5, 2000) ..............................9

UNO Restaurants, Inc. v. Boston Kenmore Realty Corp.,
    441 Mass. 376 (2004) ........................................................................................................8

White v. Peabody Construction Co., Inc.,
    386 Mass. 121 (1985) ........................................................................................................10

Williams v. Vanaria,
    No. 96-CV-0261, 9658, 2000 WL 795659 (Mass. App. Div. June 13, 2000)...................12

**Federal Statutes:**

28 U.S.C. § 1391................................................................................................................13

28 U.S.C. § 1404..........................................................................................................5, 13

**Massachusetts Statutes:**

G.L.c. 93A, § 9 ..........................................................................................................10, 11

G.L.c. 259, § 1(5)................................................................................................................7

G.L.c. 260, § 2A ....................................................................................................10, 11, 12

G.L.c. 260, § 5A ..........................................................................................................10, 11

## TABLE OF AUTHORITIES
### (continued)

**Federal Rules:**                                                                                    **Page**

Fed. R. Civ. P. 12(b)(6) ........................................................................................................6

v

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

- - - - - - - - - - - - - - - - - - - - - - - - - - x

LAWRENCE SHUTZER,

                    Plaintiff,

             vs.

S. ROTHSCHILD & CO., INC. and S.
ROTHSCHILD MEN'S, INC. and MARK
FRIEDMAN,

                    Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - x

:  Case No.: 1:05-CV-11486

:  Hon. Mark L. Wolf, U.S.D.J.

---

## SUPPLEMENTAL MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'
## MOTION TO DISMISS AND/OR TRANSFER VENUE

---

RIEMER & BRAUNSTEIN LLP
Three Center Plaza
Boston, Massachusetts 02108
(617) 523-9000
Attorneys for Defendants

Of counsel:

HERRICK, FEINSTEIN LLP
2 Park Avenue
New York, NY 10016
(212) 592-1400

In accordance with the Court's Order dated June 28, 2006 (the "Order"), defendants S. Rothschild & Co., Inc. ("SRC"), S. Rothschild Men's, Inc., and Mark Friedman (collectively, "Defendants") respectfully submit this Supplemental Memorandum of Law in Support of Defendants' Motion to Dismiss and/or Transfer Venue and the accompanying Supplemental Affidavit of Mark Friedman ("Friedman Supp. Aff."). For the reasons set forth herein and in Defendants' previously-submitted papers, Defendants respectfully submit that the Court should grant their pending motion in all respects.

## LEGAL ARGUMENT

### POINT I

### PLAINTIFF CONCEDES THAT HIS TORT/FRAUD CLAIMS ARE TIME-BARRED AND, THUS, SHOULD BE DISMISSED

Defendants respectfully note that plaintiff concedes that his fraud and G.L.c. 93A claims are time-barred. See Plaintiff's Opp. Br. at 6. "**Shutzer concedes that the three year [statute] of limitations has, [sic] run with respect to Count IV. (Fraud) as [sic] well as the Statue of Limitations with respect to G.L.c. 93A. (Count V).**" Id. (emphasis added). Plaintiff, who also concedes that this Court has jurisdiction to hear his claims (and, in fact, asked this Court to exercise jurisdiction in this case), thus concedes that the Court should dismiss his tort/fraud claims as barred by the Statute of Limitations.

So they should be. Plaintiff's tort claims accrued, at the latest, in March 2000. (Complaint, ¶¶ 12-17). In fact, the Complaint alleges that Defendants committed all of their tortious and otherwise unlawful conduct in and shortly after March 2000. (Id.) Nonetheless, plaintiff waited until July 14, 2005 -- i.e., more than five years -- to file the Complaint.

1

Accordingly, as plaintiff himself concedes, plaintiff's tort claims (i.e., Counts III, IV, V and VI) are barred by the Statute of Limitations.[1]

## POINT II

### PLAINTIFF ALSO CONCEDES THAT HIS CONTRACT CLAIMS ARE UNSUPPORTED BY ANY WRITING. THUS, THESE CLAIMS, TOO, SHOULD BE DISMISSED AS BARRED BY THE STATUTE OF FRAUDS.

Plaintiff also concedes in this brief that his "employment contract . . . **was not signed**" and, moreover, "**admittedly provided for a three year term**." See Plaintiff's Opp. Br. at 4. The Statute of Frauds, however, renders unenforceable an oral agreement if it is incapable of being performed within one year of its making. See G.L.c. 259, § 1(5); Powers v. Boston Cooper Corp., 926 F.2d 109, 110 (1st Cir. 1991) (applying Massachusetts law and holding that Statute of Frauds rendered plaintiff's alleged contract unenforceable where plaintiff alleged breach of oral employment contract that could not be performed within one year). Moreover, where, as here, a plaintiff claims to be an employee in the absence of any written contract, he is an "at-will" employee and thus subject to dismissal without cause. See Cousin v. Sofono, Inc.,

---

[1]    As previously noted, although styled as a claim for "estoppel," Count III is premised on the allegation that "various promises, commitments and offers were made fraudulently and with the intent that Shutzer rely thereon." (Complaint, ¶ 29). Thus, because it is based on allegations of fraud, Count III is barred by the applicable three-year statute of limitations. See G.L.c. 260, § 2A; cf. Kirley v. Kirley, 25 Mass. App. Ct. 651, 654, rev. denied, 402 Mass. 1104 (1988) (corporate "freeze-out" of minority shareholder held governed by three-year statute of limitations applicable to tort, rather than six-year statute of limitations applicable to breach of contract claims). In any event, Count III is redundant with the common law and statutory fraud claims set forth in Counts IV and V, and should be dismissed for that reason, too.

Count VI, although styled as a claim for "unjust enrichment/quasi-contract," is a thinly-disguised tort claim, because its assertions are based on Defendants' alleged "willful" and "wrongful" misconduct in and after March 2000. See Desmond v. Muffle, 375 F.2d 742, 743 (1st Cir. 1967) (the statute of limitations applicable to unjust enrichment depends upon the "essential nature of plaintiff's claim"). Where, as here, a claim for unjust enrichment is based on allegations of misconduct rather than upon any legally enforceable contract, such a claim is subject to the three-year statute of limitations that applies to torts. See Epstein v. C.R. Bard, Inc., No. Civ. 03-12297-RWZ, 2004 WL 1598912, * 3 (D. Mass. July 19, 2004) (dismissing claim for unjust enrichment under three-year tort statute of limitations where the essential nature of the claim sounded in tort). Accordingly, Count VI is barred by the applicable three-year statute of limitations. See G.L.c. 260, § 2A.

2003 WL 22391233, *8 (D. Mass. 2003) ("**As an employee at-will, plaintiff's employment could be terminated by [the employer] at any time for any, or no, reason at all**") (emphasis added) (citing Jackson v. Action for Boston Cmty. Dev., Inc., 403 Mass. 8, 9 (1988)). Accordingly, Plaintiff's claims for any "breach" of the terms of his at-will "employment" are barred as a matter of law in any event.

In the face of this settled law, plaintiff claims the existence of "partial performance." Plaintiff's alleged "partial performance," however, cannot change the at-will nature of his employment relationship. See Jackson, 403 Mass. at 9. In any event, plaintiff's allegations does not constitute "partial performance" sufficient to vitiate the Statute of Frauds, because any "performance" of the kind alleged by plaintiff is not, in any event, specifically referable to the alleged "oral agreement" which admittedly (i) was "unsigned" and (ii) called for a three-year term. See Rogel v. Collinson, 54 Mass App. Ct. 304, 312-313, 765 N.E.2d 255, 261 (2002) ("This was not enough by itself to constitute sufficient partial performance or detrimental reliance to render the Statute inapplicable"). Accordingly, because plaintiff's contract-related claims are barred by the Statute of Frauds, they should be dismissed.

## POINT III

### UNDER *BRANT*, THE CONVENIENCE OF WITNESSES WEIGHS HEAVILY IN FAVOR OF TRANSFERRING ANY REMAINING CLAIMS TO THE SOUTHERN DISTRICT OF NEW YORK

As set forth in the Order and as pointed out in Defendants' previously-submitted papers (see Defendants' Br. at 14), when analyzing a motion to transfer venue pursuant to 28 U.S.C. § 1404(a), the convenience of the witnesses "is probably the most important factor" in weighing a motion to transfer venue. See Brant Point Corp. v. Poetzsch, 671 F. Supp. 2, 3 (D. Mass. 1987) (quoting 15 Wright, Miller & Cooper, FEDERAL PRACTICE AND PROCEDURE 2D

3

§ 3851 at 415 (1986)). In this matter, the convenience of the witnesses weighs heavily in favor of a transfer of any remaining claims in this matter to New York.

In opposition to Defendants' motion, plaintiff suggests a total of five witnesses located in Massachusetts (i.e., plaintiff, his counsel, and three unidentified employees). Plaintiff's Opp. Br. at 8. Plaintiff does not identify the nature or import of the evidence these unnamed witnesses can be expected to proffer, if any, that bears on the issues in this case. In contrast, Defendants offer the Friedman Supp. Aff., which identifies not less than 2 party witnesses and at least 6 non-party witnesses who live and/or work in and around New York City. These witnesses are within close proximity to the Southern District of New York and, if this matter were transferred, could be compelled to testify. See Brant, 671 F. Supp. 2, 4 (in analyzing convenience, the Court must consider the number of witnesses in the transferor and transferee districts and whether they can be compelled to testify). Since the vast majority of the witnesses identified by defendants are non-parties in the New York metropolitan area, they could not be compelled to testify in Massachusetts.

Moreover, the nature and quality of their anticipated testimony is such that they are essential to addressing the plaintiff's underlying claims and Defendants' opposition thereto. Defendants have identified only three party witnesses who are likely to have relevant testimony: plaintiff, Mr. Friedman and Mr. Kaufman. As between the party witnesses, two of the three witnesses reside and work in New York. Messrs. Friedman and Kaufman can both testify concerning the interaction between SRC and Mimco before and after any alleged "agreement" was reached. They are also expected to offer testimony relating to the performance of SRC's Men's Division during the period in which plaintiff alleges to have generated valuable business for Defendants. In the unlikely event that the plaintiff can make out a *prima facie* case (which

4

for the reasons previously noted plaintiff cannot do), the testimony of these witnesses would be significant in terms of evaluating the parties' credibility and the financial significance of the events at issue. Therefore, considering only the party witnesses, it would be more convenient to litigate this case in New York.

When also considering potential non-party witnesses, Defendants' motion to transfer is even more compelling. Defendants have identified at least 6 non-party witnesses who reside and/or work in close proximity to New York City. The nature of the testimony and documentary evidence that they are expected to provide relates to (i) SRC's financial review of Mimco and the implications of any potential business opportunity between the two companies; (ii) the conversations with Mimco's employees and Mimco's counsel regarding the business opportunities that SRC and Mimco were contemplating and the reasons the parties did not, in fact, consummate any such arrangement; (iii) observations of and conversations with former Mimco employees; (iv) Mimco's motives for pursuing SRC; (v) the performance of SRC's Men's Division during the relevant time period; (vi) Mimco's inability to pay the rent on its New York showroom, and SRC's negotiations directly with the landlord and subsequent execution of a lease; and (vii) the financial arrangements that SRC made in order to obtain letters of credit that were necessary to fulfill certain orders during the period wherein plaintiff alleges that he generated valuable business for Defendants. See Friedman Supp. Aff.

Against this specific list of non-party witnesses who can be compelled to testify in the Southern District of New York, the sole non-party witness identified in plaintiff's opposition to Defendants' motion is Mimco's counsel. Balanced against the large number of non-party witnesses identified by Defendants likely to be called to testify who reside in or near New York,

it is clear that the convenience of the non-party witnesses would best be served by transferring this matter to the Southern District of New York.

For these reasons, in the event that the Court is disinclined to dismiss the Complaint in all respects, Defendants respectfully submit that the Court should transfer any remaining claims to the Southern District of New York.

6

## CONCLUSION

For all of the foregoing reasons, Defendants respectfully request that the Court dismiss the Complaint in all respects. If, however, the Court were disinclined to dismiss the Complaint in its entirety, the Court should transfer any remaining action to the Southern District of New York.

Dated: July 28, 2006

S. ROTHSCHILD & CO., INC., S. ROTHSCHILD MEN'S, INC., and MARK FRIEDMAN

By its attorneys,

/s/ Dennis E. McKenna
Dennis E. McKenna BBO # 556428
RIEMER & BRAUNSTEIN LLP
Three Center Plaza
Boston, Massachusetts 02108
(617) 523-9000

Of counsel:

Paul H. Schafhauser
HERRICK, FEINSTEIN LLP
2 Park Avenue
New York, NY 10016
(212) 592-1400

7

**EXHIBIT B**

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

LAWRENCE SHUTZER                    )
                                   )
                 Plaintiff,        )
                                   )
        v.                         )    CIVIL ACTION NO.
                                   )    05-11486-MLW
S. ROTHSCHILD & CO., INC. and S.   )
ROTHSCHILD MEN'S, INC. and MARK    )
FREIDMAN                           )
                                   )
                 Defendants.       )

MEMORANDUM AND ORDER

WOLF, D.J.                                    September 19, 2006

Plaintiff Lawrence Shutzer ("Shutzer") has brought claims against defendants S. Rothschild & Co., Inc. ("SRC"), S. Rothschild Men's, Inc. ("RMI"), and Mark Friedman ("Friedman"), alleging that the defendants breached their contract with him in March, 2000. RMI is a wholly owned subsidiary of SRC and both are controlled by the same principals. They are collectively referred to as "Rothschild." The defendants have moved to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) or, in the alternative, to transfer venue to the Southern District of New York.

The court has carefully considered the motions and the responses. For the following reasons, the motion to dismiss is being allowed in part and denied in part. Counts IV and V are being dismissed against all of the defendants. All of the counts

1

are being dismissed against defendant Friedman.   The motion to transfer venue is being denied.

The facts alleged in the complaint include the following. Shutzer, a Massachusetts resident, worked for Mimco, Inc. ("Mimco"), a men's outerware company, throughout the 1990s.   In 1999, Friedman, as the director president and principal shareholder of RMI and SRC, met with Shutzer in New York to discuss a possible relationship between Rothschild and Mimco.  Following the meeting, the parties had extensive negotiations relating to a merger between Mimco and SRC.   The parties orally agreed that SRC would purchase all patterns, samples, and other assets owned by Mimco.  In return, SRC would receive an assignment of all rights to Mimco's New York showroom at a below-market rental.    Also, all of the Mimco employees, including Shutzer, would become either SRC or RMC employees.

It is also alleged that on February 15, 2000, the parties further orally agreed that: Shutzer would attempt to obtain as many orders as possible from former Mimco customers for Rothschild; Rothschild would hire all Mimco employees; Shutzer would receive a written employment contract, be included on SRC's payroll, and be paid a sales commission for three years in addition to a salary; SRC would acquire Mimco's New York and Massachusetts offices; for three years, the profits generated by Rothschild's men's division would be shared equally between Shutzer and Rothschild after

2

deducting salaries paid to former Mimco employees; and Shutzer would run Rothschild's men's business.

Shutzer further alleges that throughout 2000, he continued to generate business for Rothschild and marketed and promoted the Rothschild business. However, the defendants failed to meet any of their obligations to Shutzer. As a result, Shutzer alleges the defendants are liable for breach of contract (Count I), breach of the implied covenant of good faith (Count II), estoppel (Count III), fraud (Count IV), violation of Mass. Gen. Laws. Ch. 93A (Count V), and unjust enrichment/quasi-contract (Count VI). Finally, in Count VII, Shutzer asserts a claim for an accounting, from 2000 to the present, alleging that the defendants have refused to give him access to financial records showing the sales and profits on orders that he obtained.

In considering a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court "must accept all well-pleaded facts alleged in the Complaint as true and draw all reasonable inferences in favor of the plaintiff." Day v. Fallon Cmty. Health Plan, Inc., 917 F. Supp. 72, 75 (D. Mass 1996); see also Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993). "'A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" Miranda v. Ponce Fed'l Bank, 948 F.2d 41, 44 (1st Cir.

3

1991) (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). The
court must "neither weigh[] the evidence nor rule[] on the merits
because the issue is not whether the plaintiffs will ultimately
prevail, but whether they are entitled to offer evidence in support
of their claims." Day, 917 F. Supp. at 75.

This "highly deferential" standard of review "does not mean,
however, that a court must (or should) accept every allegation made
by the complainant, no matter how conclusory or generalized."
United States v. AVX Corp., 962 F.2d 108, 115 (1st Cir. 1992). A
court should "eschew any reliance on bald assertions, unsupportable
conclusions, and 'opprobrious epithets.'" Chongris v. Board of
Appeals of Town of Andover, 811 F.2d 36, 37 (1st Cir. 1987)
(quoting Snowden v. Hughes, 321 U.S. 1, 10 (1944)), cert. denied,
107 S. Ct. 3266 (1987).

The plaintiff concedes that his tort claims in Count IV
(Fraud) and Count V (G.L.c. 93A) are time-barred. This conclusion
is correct. Under Massachusetts law, "actions of tort...shall be
commenced only within three (3) years after the cause of action
accrues." Mass. Gen. Laws ch. 260, §2A. The plaintiff filed this
case more than five years after he discovered the cause of harm for
his injury. Therefore, Counts IV and V are being dismissed.

The defendants argue that all of the other counts should be
dismissed as well. Because it is alleged that Friedman acted on
behalf of Rothschild, all of the remaining counts against him are

4

being dismissed.  "A contract made by the authorized agent of a corporation is the corporation's contract."  <u>Dolben v. Gleason</u>, 292 Mass. 511, 514 (1935).  Therefore, "[u]nder Massachusetts law, a high corporate officer may be personally liable for the torts a corporation commits at his direction.  But, the officer ordinarily is not liable for the corporation's breach of contract," unless the officer acted out of actual malice.  <u>Union Mutual Life Insurance Company v. Chrysler Corporation</u>, 793 F.2d 1, 11 (1st Cir. 1986). As explained below, all of the remaining counts in the complaint, except Counts IV and V which are being dismissed, are contract-related.  In addition, the complaint states that Friedman, the director president and principal shareholder of RMI and SRC, was, at all times material to the complaint, "acting on behalf of the corporate Defendants and had the full authority to act on their behalf in his dealings with Shutzer and Mimco."  Complaint ¶22. Therefore, none of the counts against Friedman survive the motion to dismiss.

The corporate defendants argue that the contract-related claims (Counts I and II) should be dismissed because they are subject to the Statute of Frauds.  As explained earlier, Shutzer alleges that he reached an oral agreement with the defendants. However, the Statute of Frauds renders unenforceable an oral agreement if it cannot be performed within one year of its making. Mass. Gen. Laws ch. 259, §1.  <u>See also</u> <u>In re Furst</u>, 914 F.Supp.

734, 738 (D. Mass. 1996)("the Statute of Frauds invalidates an oral joint venture agreement if it can be shown that the agreement is not to be performed within one year from the making thereof.")(quotations and citations omitted). Shutzer alleges the parties orally agreed to a contract for a "three year period." Complaint ¶3. Therefore, the corporate defendants contend that the contract is unenforceable. In addition, they argue that if "no contract exists, there can be no derivative implied covenant of good faith and fair dealing applicable to [the] parties." Mass. Eye & Ear Infirmary v. QLT Phototherapeutics, Inc., 412 F.3d 215, 230 (1st Cir. 2005).

The Statute of Frauds, however, does not provide a proper basis for granting the corporate defendants' motion to dismiss. "Numerous cases state that the affirmative defenses specifically listed in Federal Rule 8(c) [which includes the Statute of Frauds]...and any other defense that is not specified in Rule 12(b), must be asserted in the defendants' answer; as a result of these precedents, most defensive matters cannot be the basis for a motion to dismiss plaintiff's claim." 5 Charles Alan Wright and Arthur R. Miller, Federal Practice and Procedure, §1277, at 626 (2004). The Third Circuit and some other courts have, however, permitted motions to dismiss to be decided on the basis of any affirmative defense. Id. at 628. However, even this broader approach would not result in the dismissal of Shutzer's claims

6

because he has alleged facts which, if proven, would defeat a Statute of Frauds defense.

More specifically, "estoppel, if appropriately applied...would...preclude [the defendant] from asserting the affirmative defense of the Statute of Frauds." Cellucci v. Sun Oil Co., 2 Mass. App. Ct. 722, 728 (1974)). Estoppel precludes a Statute of Frauds defense if the following factors are satisfied:

> (1) A representation or conduct amounting to a representation intended to induce a course of conduct on the part of the person to whom the representation is made. (2) An act or omission resulting from the representation, whether actual or by conduct, by the person to whom the representation is made. (3) Detriment to such person as a consequence of the act or omission."

Palandjian v. Pahlavi, 614 F.Supp. 1569, 1581 (D. Mass. 1985)(quoting Cellucci, 2 Mass. App. Ct. at 728). See also Andrews v. Charon, 289 Mass. 1, 5 (1935)(the "basis for estoppel against setting up the Statute of Frauds is such change of situation or part performance by the party seeking relief as places him in a situation which is a fraud upon him, unless the agreement is fully performed.")(quotation omitted); Hickey v. Green, 14 Mass. App. Ct. 671, 673 (1982)("[a] contract...may be specifically enforced notwithstanding failure to comply with the Statute of Frauds if it is established that the party seeking enforcement, in reasonable reliance on the contract and continuing assent of the party against whom enforcement is sought, has so changed his position that injustice can be avoided only be specific enforcement.").

7

In <u>Palandjian</u>, the parties entered into an oral agreement to develop a holiday resort. <u>Palandjian</u>, 614 F.Supp. at 1571-1572. There was evidence that after the contract was established, the defendant made specific promises to the plaintiff regarding the resort project, reasonably inducing the plaintiff to invest substantial time, money, and other resources in developing the resort. <u>Id</u>. In denying a motion for summary judgment, the court held this evidence to be sufficient to prove estoppel that could defeat a Statute of Frauds defense. <u>Id</u>. at 1580-1581. Similarly, in <u>Cellucci</u>, the court held that the defendant could not prevail on a Statute of Frauds defense because the defendant had misled the plaintiff into thinking it would accept his offer, and the plaintiff had relied on the misrepresentation to his detriment. <u>Cellucci</u>, 2 Mass. App. Ct. at 728-729.

In the instant case, the facts alleged and the reasonable inferences to be drawn from them suggest the following. Shutzer was induced by the defendants to perform substantially to his detriment. Shutzer alleges that the parties reached an agreement as to his role in SRC on February 15, 2000. Part of that agreement was that Shutzer would receive a written employment contract. Although he never received a written employment contract, by March of 2000, the material terms of his employment had been worked out. Shutzer contends that in reliance on them, he delivered millions of dollars of business to the defendants from former Mimco customers

8

and others.   Since the business went to the defendants and not to
Shutzer himself, he did this to his financial detriment.
Therefore, the plaintiff has sufficiently alleged facts which
would, if proven, justify a finding of estoppel that would defeat
defendants' Statute of Frauds defense.

The defendants argue that Shutzer's claims of estoppel (Count
III) and unjust enrichment/quasi contract (Count VI) should be
dismissed because they are each tort claims on which the statute of
limitations period has expired.   As described earlier, under
Massachusetts law, there is a three-year statute of limitations on
tort actions.  Mass. Gen. Laws ch. 260, §2A.  The statute begins to
run when the plaintiff discovered or reasonably should have
discovered the cause of harm for his injury.  Bowen v. Eli Lilly &
Co., Inc., 408 Mass. 204, 205-06 (1990).  In this case, Shutzer
alleges that he became aware of the defendants' harmful conduct in
2000.  He did not file this case until more than five years later.
Therefore, if Counts III and VI are tort claims, they do not
survive defendants' motion to dismiss.  However, the statute of
limitations for contract actions is six years.  Mass. Gen. Laws.
ch. 260, §2.  Therefore, if Counts III and VI are treated as
contract claims, they are not time-barred.

"It is sometimes permissible to grant a motion to dismiss
based on an affirmative defense such as the statute of limitations.
That happens 'when the pleader's allegations leave no doubt that an

9

asserted claim is time-barred.'" Centro-Medico del Turabo, Inc. v. Feliciano de Melecio, 406 F.3d 1,6 (1st Cir. 2005)(quoting La Chapelle v. Berkshire Life Ins. Co., 142 F.3d 507, 509 (1st Cir. 1998)); see also Edes v. Verizon Communications, Inc., 417 F.3d 133, 137 (1st Cir. 2005); Jorge v. Rumsfeld, 404 F.3d 556, 561 (1st Cir. 2005). The allegations in Counts III and V of the complaint in this case do not demonstrate beyond doubt that these claims are time-barred.

"In Massachusetts the statutes of limitation applicable to law actions based on contract and tort are also applicable to suits in equity. Kagan v. Levenson, 334 Mass. 100 (1956). In deciding which statute applies in a given case, it is necessary to determine the essential nature of plaintiff's claim. Kagan v. Levenson, supra." Desmond v. Muffle, 375 F.2d 742, 743 (1st Cir. 1967). In the instant case, the essential nature of both Counts III and VI are contract-related. While Count III references fraudulent action, it alleges that Shutzer reasonably relied to his detriment on the representations made to him. This is an estoppel claim which, as described earlier, is a contract-related theory of recovery. See Palandjian, 614 F.Supp. at 1580-81. Similarly, Count VI, which alleges unjust enrichment/quasi-contract derives from the plaintiff's assertion that he conferred substantial benefit upon the defendants because he was led to believe he was performing pursuant to a contract between the parties. The

10

allegations in Counts III and VI are substantially different from those in which courts have held the claims are primarily tort related. For example, in Epstein v. C.R. Bard, Inc., 2004 WL 1598912, *3 (D. Mass. 2004), it was held the three-year tort statute of limitations applies to the unjust enrichment claim because "the [c]omplaint sounds in tort and makes no mention of any contract." In the instant case, however, the alleged contract is not only mentioned, it is at the heart of the claims. Therefore, since the statute of limitations for contract claims is six years, both Counts III and VI survive. See Mass. Gen. Laws. ch. 260, §2.

The defendants' motion to transfer venue is not meritorious. The party seeking transfer of venue has a heavy burden, because "there is a strong presumption in favor of the plaintiff's choice of forum." Cody v. Ashcraft & Geral, 223 F.3d 1, 11 (1st Cir. 2000). The convenience of witnesses is the most important factor in deciding a motion to transfer. Brant Point Corp. v. Poetzsch, 671 F.Supp. 2,3 (D. Mass. 1987). Under this factor, "the Court must consider not only the number of potential witnesses located in the [two] districts, but also the nature and quality of their testimony." Id.

In the instant case, the convenience of witnesses factor does not tilt in either party's favor. The defendants point to eight witnesses living in the New York area, only three of whom are key witnesses. Defendant Friedman, who negotiated with Shutzer is

11

located in New York.   Also, Daniel A. Swick who resides in New York Jersey and works in New Jersey and New York, had conversations with Mimco's counsel and thus can provide important testimony about whether the parties reached the agreement alleged in the complaint. Finally, 485 Seventh Avenue LLC, SRC's landlord, could potentially refute allegations in the complaint that Mimco paid rent for its New York showroom.

There are five potential minor witnesses living in New York. Stephen Rankel, SRC's former outside accountant, resides in Long Island, New York.   While he could testify on SRC's evaluation of potential business opportunities with Mimco, he never participated in any negotiations with Shutzer, nor has he ever met the plaintiff.   Stephen Kalnick, SRC's former Treasurer and Chief Financial Officer, resides in New Jersey and works in New York.  He could testify to SRC's approach to potential business opportunities with Mimco and SRC's negotiations with the landlord concerning Mimco's alleged showroom, but not to any negotiations with Shutzer. Tom Levis and Fred Conte are both former Mimco and SRC employees residing in the New York area who could testify about Mimco's motive for pursuing business with SRC, but neither had any involvement in the negotiations between the parties, nor were they involved in the events leading up to the termination of the relationship between the plaintiff and the defendants.   Finally, Michael Kaufman, an SRC employee could testify about his

12

observations of and conversations with former Mimco employees, but not about the alleged agreement that is central to this case.

On the other hand, Shutzer, a vital witness, resides in Massachusetts. He represents that he is eighty years old, has limited financial resources, and that as a solo business owner, could not be away from his business for long periods of time. In addition, Shutzer's counsel during his negotiations with the defendants, Paul Levenson, also resides in Massachusetts. The testimony of Levenson and Shutzer is very important to the case because they will testify to the nature of the negotiations and what was agreed upon between Shutzer and the defendants. Finally, when Shutzer began working for RMC, he worked at the RMC offices in Massachusetts. This office had three employees, who could be minor witnesses testifying about Shutzer and the defendants' conduct in 2000.

Therefore, there are key witness located in Massachusetts and New York, and one of the Massachusetts witnesses is elderly and has limited financial resources to travel. Neither party has shown that one venue is significantly more convenient for the bulk of the important witnesses in this case. "Transfer of venue is inappropriate...where its effect merely shifts the inconvenience from one party to another." Holmes Group, Inc. v. Hamilton Breach/Proctor Silex, Inc., 249 F.Supp.2d 12, 16 (D.Mass. 2002). Thus, the defendants have not met their heavy burden to overcome

13

the plaintiff's choice of venue.

The defendants also argue that all of the events at issue in this case took place in New York. However, while the two or three face-to-face meetings took place in New York, Shutzer represents that many of the major negotiations took place during telephone conference calls while Shutzer was in Massachusetts. In addition, according to Shutzer, and not disputed by the defendants, RMC established its executive offices in Massachusetts and three employees worked out of that office. Quotes to customers originated from Massachusetts and customer orders were received in Massachusetts. Since RMC and Shutzer's business after the alleged agreement is relevant to the case, both Massachusetts and New York have a nexus to the dispute.

Finally, from a practical standpoint, the interests of justice do not demand that this case be transferred to New York. The plaintiff is 80 years old and represents his business will suffer if he has to leave Massachusetts for a week. The defendants who are involved in a business with many employees will not suffer a significant inconvenience if some of its employees must make the short trip from New York to Boston. "[I]t is not a hardship to travel from New York to Boston in order to appear for a civil trial." Veryfine Products, Inc. v. Philo Corp., 124 F.Supp.2d 16, 26 (D. Mass. 2000).

14

Accordingly, it is hereby ORDERED that:

1.    The defendants' Motion to Dismiss pursuant to Fed.R.Civ.Proc. 12(b)(6) (Docket No. 7) is ALLOWED with respect to all counts against defendant Friedman and Counts IV and V against all the defendants.    The motion is DENIED with regard to Counts I,II,III,VI, and VII against defendants SRC and SRI.

2.    The defendants' Motion to Transfer Venue (Docket No. 7) is DENIED.

3.    A Scheduling Conference will be held on October 13, 2006, 2006, at 4:00 p.m.    The parties shall comply with the attached Order concerning that conference.

/s/ Mark L. Wolf
UNITED STATES DISTRICT JUDGE

15

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

LAWRENCE SHUTZER

V.

S. ROTHSCHILD & CO. et al

CIVIL ACTION
NO.   05-11486-MLW

### NOTICE OF SCHEDULING CONFERENCE/MOTION HEARING

An initial scheduling conference will be held in Courtroom No.  10  on the  5  floor at 4:00  p.m. on October 13, 2006 , in accordance with Fed. R. Civ. P. 16(b) and Local Rule 16.1.  The court considers attendance of the senior lawyers ultimately responsible for the case and compliance with sections (B), (C), and (D) of Local Rule 16.1 to be of the utmost importance.  Counsel may be given a continuance only if actually engaged in trial.  Failure to comply fully with this notice and with sections (B), (C), and (D) of Local Rule 16.1 may result in sanctions under Local Rule 1.3.  Counsel for the plaintiff is responsible for ensuring that all parties and/or their attorneys, who have not filed an answer or appearance with the court, are notified of the scheduling conference date.

September 20, 2006
Date

By:

/s/ Mark L. Wolf
United States District Judge
/s/ Dennis O'Leary
Deputy Clerk

---

[1] These sections of Local Rule 16.1 provide:

(B) Obligation of counsel to confer.  Unless otherwise ordered by the judge, counsel for the parties shall, pursuant to Fed.R.Civ.P. 26(f), confer no later than twenty-one (21) days before the date for the scheduling conference for the purpose of:

(1) preparing an agenda of matters to be discussed at the scheduling conference,

(2) preparing a proposed pretrial schedule for the case that includes a plan for discovery, and

(3) considering whether they will consent to trial by magistrate judge.

(C) Settlement proposals.  Unless otherwise ordered by the judge, the plaintiff shall present written settlement proposals to all defendants no later than ten (10) days before the date for the scheduling conference.  Defense counsel shall have conferred with their clients on the subject of settlement before the scheduling conference and be prepared to respond to the proposals at the scheduling conference.

(D) Joint statement.  Unless otherwise ordered by the judge, the parties are required to file, no later than five (5) business days before the scheduling conference and after consideration of the topics contemplated by Fed.R.Civ.P. 16(b) and 26(f), a joint statement containing a proposed pretrial schedule, which shall include:

(1) a joint discovery plan scheduling the time and length for all discovery events, that shall

(a) conform to the obligation to limit discovery set forth in Fed. R. Civ. P. 26(b), and

(b) take into account the desirability of conducting phased discovery in which the first phase is limited to developing information needed for a realistic assessment of the case and, if the case does not terminate, the second phase is directed at information needed to prepare for trial; and

(2) a proposed schedule for the filing of motions; and

(3) certifications signed by counsel and by an authorized representative of each party affirming that each party and that party's counsel have conferred:

(a) with a view to establishing a budget for the costs of conducting the full course--and various alternative courses--of the litigation; and

(b) to consider the resolution of the litigation through the use of alternative dispute resolution programs such as those outlined in Local Rule 16.4.

To the extent that all parties are able to reach agreement on a proposed pretrial schedule, they shall so indicate.  To the extent that the parties differ on what the pretrial schedule should be, they shall set forth separately the items on which they differ and indicate the nature of that difference.  The purpose of the parties' proposed pretrial schedule or schedules shall be to advise the judge of the parties' best estimates of the amounts of time they will need to accomplish specified pretrial steps.  The parties' proposed agenda for the scheduling conference, and their proposed pretrial schedule or schedules, shall be considered by the judge as advisory only.

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                Plaintiff(s)

        v.                              CIVIL ACTION
                                        NO. _____

_____
                Defendant(s)

SCHEDULING ORDER

WOLF, D.J.


        This case is governed procedurally by the 1992 Amendments to
the Local Rules of the United States District Court for the
District of Massachusetts (the "Local Rules"), which implement the
District's Civil Justice Expense and Delay Reduction Plan. Counsel
must, therefore, comply with the relevant Local Rules in the
litigation of this case.

        It is hereby ORDERED pursuant to Fed. R. Civ. P. 16(b) and
Local Rule 16(f) that:

[ ]  1.    _____ shall respond to the Complaint by
_____.


[ ]  2.    Any proposed party who has not yet been served shall be
served by_____.    Counsel shall within 14 days
thereafter file a return of service or a statement that service has
not been accomplished and that the claims against the previously
named proposed party shall be dismissed without prejudice.

[ ]  3.    Any Motion to Amend the pleadings, or any Motion to File
additional pleadings, shall be filed by_____, and
responses shall be filed as required by the applicable provisions
of the Federal Rules of Civil Procedure.

[ ]  4.    The parties shall by_____ make the
automatic document disclosure required by Local Rule 26.2(A) and,
if applicable, disclose the information required by Local Rule 35.1

[ ]   5.   The parties shall by_____ make the disclosure authorized by Local Rule 26.1(B)(1) and (2).

[ ]   6.   All dispositive motions except motions for summary judgment shall be filed by_____ and responses shall be filed fourteen days thereafter pursuant to Local Rule 7.1.

[ ]   7.   Discovery shall initially be limited to the issue(s) of

_____,

and shall be complete by _____.

[ ]   8.   Counsel for the parties shall meet at least once to explore the possibility of settlement and report to the court by _____ the status and prospects for settlement.

      If the case is not settled, the parties shall report whether they wish to participate in mediation to be conducted by a magistrate judge or attorney on the Court's panel of mediators.

[ ]   9.   A settlement conference, which must be attended by trial counsel with full settlement authority or with their clients, shall be held on _____, at _____.

[ ]   10.  A status and case management conference will be held by Magistrate Judge _____ on a date to be scheduled by him in _____.

[ ]   11.  Plaintiff(s)   and/or   Counterclaim   or   Third Party Plaintiff(s) shall by_____ designate experts and disclose the information described in Fed. R. Civ. P. 26(a)(2), concerning each expert.  Each other party shall by_____ designate expert(s) and disclose the information described in Fed. R. Civ. P. 26(a)(2).

[ ]   12.  All discovery shall be complete by_____.

[ ]   13.  Counsel for the parties shall confer and, by_____ _, file a report as to the prospects for settlement and whether either party feels there is a proper basis for filing a motion for summary judgment.

[ ]   14.  A scheduling conference will be held on_____ at _____ and must be attended by trial counsel with full settlement authority or with their client(s). If appropriate, a schedule for filing motions for summary judgment will be established at this conference.

[ ]   15.  A final pretrial conference will be held on_____ _at_____ and must be attended by trial counsel with full settlement authority or with their client.   Counsel shall be prepared to commence trial as of the date of the final pretrial conference.

2

[ ]   16.   Trial shall commence on_____ .

[ ]   17.   This case is hereby referred to Magistrate Judge
            for all pretrial proceedings, including reports and
recommendations concerning any dispositive motions.

     All provisions and deadlines contained in this Order having
been established with the participation of the parties to this
case, any requests for modification must be presented to the judge
or magistrate judge, if referred for case management proceedings.
Any requests for extension will be granted only for good cause
shown supported by affidavits, other evidentiary materials, or
reference to pertinent portions of the record.  The request shall
be made by motion and shall contain the reasons for the request, a
summary of the discovery which remains to be taken, and a date
certain when the requesting party will complete the additional
discovery.
     Counsel are encouraged to seek an early resolution of this
matter.  Additional case management conferences may be scheduled by
the Court or upon the request of counsel.


                              By the Court,
                              DENNIS P. O'LEARY


_____          _____

Date                               Deputy Clerk


                                   3

**EXHIBIT C**

# HERRICK

NEW YORK
NEWARK
PRINCETON

PAUL H. SCHAFHAUSER
PARTNER
Direct Tel:   973.274.2098
Direct Fax:   973.274.6414

Email:  pschafhauser@herrick.com

November 21, 2006

BY FEDERAL EXPRESS

Lawrence Slater, Esq.
270 Union Street
Suite 202
Lynn, MA  01901

      Re:    Lawrence Shutzer v. S. Rothschild & Co., Inc., et al.
              Civil Action No.: 05-11486

Dear Mr. Slater:

      I enclose a check in the amount of $2,362.50, which represents payment of the legal fees and costs set forth in paragraph 13 of your Affidavit to the Court dated November 15, 2006.

              Very truly yours,

              Paul H. Schafhauser

HERRICK, FEINSTEIN LLP
A New York limited
liability partnership
including New York
professional corporations

HF 2830094v.1 #04916/0046 11/21/2006
ONE GATEWAY CENTER, NEWARK, NJ 07102 • TEL 973.274.2000 • FAX 973.274.2500 • www.herrick.com

ORIGINAL DOCUMENT PRINTED ON CHEMICAL REACTIVE PAPER WITH MICROPRINTED BORDER

**HERRICK, FEINSTEIN LLP**
ATTORNEYS AT LAW
2 PARK AVENUE
NEW YORK, NY 10016

Bank of America

52-153/112

83454

PAY TWO THOUSAND THREE HUNDRED SIXTY-TWO DOLLARS & FIFTY CENTS

DATE
11/21/06

AMOUNT
$2,362.50

TO THE
ORDER    LAWRENCE SLATER, ESQ
OF

AUTHORIZED SIGNATURE

THIS DOCUMENT CONTAINS HEAT SENSITIVE INK. TOUCH OR PRESS HERE - THE IMAGE DISAPPEARS WITH HEAT.

⑈083454⑈ ⑆011201539⑆000080 221857⑈